## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

TABATHA JACKSON, et al.,

                  **Plaintiffs,**

    **-vs-**

CUYAHOGA COUNTY, et al.,

                  **Defendants.**

**CASE NO. 1:20-CV-02649**

**JUDGE PAMELA A. BARKER**

**MEMORANDUM OF OPINION AND ORDER**

Pending before the Court are the following three Motions: (1) Defendant Kenneth Mills's Motion to Dismiss; (2) Defendants Clifford Pinkney's and Eric Ivey's Motion for Judgment on the Pleadings, and (3) Defendants Cuyahoga County's, Ivey's, Pinkney's, and Randy Pritchett's Motion to Strike Class Allegations.  (Doc. Nos. 6, 10, 11.)  Plaintiffs filed Briefs in Opposition to each Motion in January and February 2021, to which Defendants replied in February and March 2021.  (Doc. Nos. 9, 13, 15, 17.)  For the following reasons, the Motion to Dismiss, the Motion for Judgment on the Pleadings, and the Motion to Strike the Class Allegations are each GRANTED.  However, Plaintiffs are GRANTED 14 days to amend their Complaint with respect to their proposed monetary relief subclass definition only.

## I.    Background

Plaintiffs Tabatha Jackson and Phyllis Davis ("Jackson," "Davis," or, collectively, "Plaintiffs") filed this putative class action pursuant to 42 U.S.C. § 1983.  (Doc. No. 1-1.)  According to the Complaint, both Plaintiffs are residents of Cuyahoga County and African American women.  (*Id.* at ¶¶ 1, 2.)  Plaintiffs allege that, "[a]t all relevant times," they were "held in the Cuyahoga County Corrections Center," but do not specify when or for how long they were held at the Cuyahoga County

Corrections Center ("CCCC"). (*Id.*) This putative class action, as well as Plaintiffs' individual claims, arise out of alleged harm suffered by Plaintiffs and others while at the Cuyahoga County Corrections Center ("CCCC"). (*Id.* at ¶¶ 17, 23.)

Plaintiffs bring their claims against five defendants: Cuyahoga County, Clifford Pinkney ("Pinkney"), Kenneth Mills ("Mills"), Eric Ivey ("Ivey"), and Randy Pritchett ("Pritchett"). (*Id.* at PageID# 6-7.) Plaintiffs bring this action against Pinkney, Mills, Ivey, and Pritchett in their individual, rather than official, capacities. (*Id.*)

Plaintiffs allege that Defendant Cuyahoga County ("Cuyahoga County") is an Ohio political subdivision responsible for the CCCC. (*Id.* at ¶ 3.) Plaintiffs allege that Cuyahoga County "is a 'person' under 42 U.S.C. § 1983 and is responsible for the conduct of its agents, employees and officials pursuant to the doctrine of *respondeat superior*." (*Id.*)

Plaintiffs allege that Defendant Pinkney was the Cuyahoga County Sheriff until August 2019. (*Id.* at ¶ 4.) As the former sheriff, Plaintiffs allege that, at all relevant times, Pinkney "was responsible for the Cuyahoga County Corrections Center's operation and was acting under color of state law." (*Id.*)

Defendant Mills was Cuyahoga County's director of regional corrections until he resigned in November 2018 due to his impending termination. (*Id.* at ¶ 5.) Plaintiffs allege that "[a]t all relevant times, [Mills] was responsible for the Cuyahoga County Corrections Center's operation and was acting under color of state law." (*Id.*)

Defendant Ivey was the warden of CCCC from 2017 until February 2019, when he was demoted to associate warden due to an alleged nepotism violation. (*Id.* at ¶ 6.) According to Plaintiffs, Ivey resigned as associate warden in the fall of 2019 after he "pleaded guilty to falsification

2

and obstruction of justice in connection with the death of an inmate" at CCCC. (*Id.*) Plaintiffs allege that "[a]t all relevant times, [Ivey] was responsible for the Cuyahoga County Corrections Center's operation and was acting under color of state law." (*Id.*)

Defendant Pritchett is a corrections officer at CCCC. (*Id.* at ¶ 7.) According to Plaintiffs, Pritchett was, at all relevant times, in uniform and acting under color of state law. (*Id.*)

## A. Plaintiffs' Class Allegations

Plaintiffs bring a single class claim against Defendants Cuyahoga County, Pinkney, Mills, and Ivey, pursuant to the Eighth and Fourteenth Amendments. (*Id.* at ¶ 20.) In Class Claim One, Plaintiffs allege that "the conditions in the Cuyahoga County Corrections Center in Cleveland, Ohio are unsanitary, inhumane and unconstitutional." (*Id.* at ¶ 11.) Plaintiffs allege that "Defendants Cuyahoga County, Pinkney, Mills and Ivey overcrowded the Cuyahoga County Corrections Center and forced inmates to sleep in noisy conditions and on thin mats approximately two feet wide, making sleeping, a basic human need, difficult." (*Id.* at ¶ 12.) Plaintiffs also allege that the Defendants served CCCC inmates spoiled food on moldy trays and that some of the food had dead or alive bugs in it. (*Id.*) Plaintiffs allege that the Defendants provided cloudy, inconsumable water to the inmates, that urine and feces polluted the floors of the CCCC, and that the CCCC was infested with bugs, including cockroaches. (*Id.* at ¶¶ 13-15.) According to Plaintiffs, every female CCCC inmate, including Jackson and Davis, had to live in these "unsanitary, inhumane and unconstitutional conditions." (*Id.* at ¶ 17.)

Plaintiffs seek to establish two subclasses. (*Id.* at ¶ 23.) The first is an injunctive relief subclass comprised of:

> All female inmates who are currently held or who may be in the future held at the Cuyahoga County Corrections Center and subjected to the aforementioned unsanitary,

inhumane and unconstitutional conditions that Defendants Cuyahoga County, Pinkney, Mills and Ivey negligently, intentionally, maliciously, willfully, wantonly, and/or recklessly created, maintained and/or allowed to exist pursuant to their policies, practices and/or customs.  Defendants Cuyahoga County, Pinkney, Mills and Ivey's policy, practice and/or custom includes the failure to adequately train, supervise, monitor and discipline Cuyahoga County Corrections Center personnel who engage in constitutional violations.

(*Id.* at ¶ 23a.)

The second subclass is a monetary relief subclass comprised of:

All female inmates who were held at the Cuyahoga County Corrections Center and subjected to the aforementioned unsanitary, inhumane and unconstitutional conditions that Defendants Cuyahoga County, Pinkney, Mills and Ivey negligently, intentionally, maliciously, willfully, wantonly, and/or recklessly created, maintained and/or allowed to exist pursuant to their policies, practices and/or customs from the time the conduct began through the time of judgment.  Defendants Cuyahoga County, Pinkney, Mills and Ivey's policy, practice and/or custom includes the failure to adequately train, supervise, monitor and discipline Cuyahoga County Corrections Center personnel who engage in constitutional violations.  This Subclass seeks economic, noneconomic, nominal and punitive monetary damages.

(*Id.* at ¶ 23b.)

Plaintiffs attach the United States Marshals Service's October 30 – November 1, 2018 CCCC quality assurance report to their Complaint.  (*Id.* at ¶ 27.)  Plaintiffs "expressly incorporate[ ]" the report "by reference" in their Complaint.  (*Id.*)  According to Plaintiffs, the U.S. Marshals report describes "the Cuyahoga County Corrections Center [as] 'one of the worst [jails] in the country.'" (*Id.* at ¶ 28.)

## B.    Plaintiffs' Individual Allegations

In addition to Plaintiffs' Class Claim One, Plaintiffs bring three individual claims.  (*See* Doc. No. 1-1.)  Plaintiffs also incorporate the U.S. Marshals report throughout each of their individual claims one through three.  (*Id.* at ¶¶ 52, 72, 93.)

4

Plaintiffs bring Individual Claim One against Defendants Cuyahoga County, Mills, Pinkney, and Ivey, on the Plaintiffs' individual behalf. (*Id.* at ¶¶ 42-45.) Individual Claim One is identical to their classwide conditions of confinement claim discussed *supra*. Plaintiffs allege that Cuyahoga County, Mills, Pinkney, and Ivey subjected Plaintiffs to the same deplorable conditions listed above. (*Id.* at ¶¶ 42-47.)

Plaintiffs bring Individual Claim Two against Defendants Cuyahoga County, Mills, Pinkney, and Ivey. (*Id.* at ¶ 58.) Plaintiffs allege that Cuyahoga County, Mills, Pinkney, and Ivey were deliberately indifferent to Jackson's and Davis's medical needs. (*Id.* at ¶¶ 58, 65.) Jackson alleges that, immediately prior to arriving at CCCC, she underwent surgery to treat gunshot wounds to her back, stomach, and arm, and was using a wheelchair. (*Id.* at ¶ 59-60.) According to Jackson, Defendants "were deliberately indifferent" to her medical needs because "they took her wheelchair from her and placed her in [the] general population." (*Id.* at ¶ 61.) Jackson alleges that she "was constantly falling over" because Defendants deprived her of her wheelchair. (*Id.* at ¶ 62.) Jackson also alleges that Defendants did not give her "the medication she was prescribed to treat her gunshot wounds." (*Id.* at ¶ 63.) Jackson alleges that her gunshot wounds and her physical condition due to the wounds constituted serious medical needs. (*Id.* at ¶ 64.)

Davis alleges that when she arrived at CCCC, she "advised intake that she was prescribed Xanax to treat anxiety," as well as Abilify, an anti-depressant. (*Id.* at ¶¶ 65, 70.) Davis alleges that she had been prescribed Xanax for eight years by the time she was booked into CCCC. (*Id.* at ¶ 66.) Davis alleges that the Defendants did not give her either Xanax or Abilify while she was detained in CCCC. (*Id.* at ¶¶ 67, 71.) Davis alleges that because Defendants failed to treat her with Xanax, she

5

"passed out and hit her head on the concrete floor," and also "had a seizure and bit her tongue in half . . . ."  (*Id.* at ¶¶ 68, 69.)

Jackson alone brings Individual Claim Three against Defendants Cuyahoga County, Mills, Pinkney, Ivey, and Pritchett.  (*Id.* at ¶ 84.)  Jackson alleges that Defendant Randy Pritchett "used excessive and unconstitutional force" on Jackson on December 10, 2018.  (*Id.* at ¶ 84.)  According to Jackson, Pritchett grabbed Jackson by her arms and slammed her, stomach side down, onto a desk.  (*Id.* at ¶ 85.)  Pritchett then threw Jackson into a steel pole and forcefully handcuffed her.  (*Id.* at ¶ 86.)  Jackson alleges that Pritchett knew Jackson had suffered gunshot wounds to her back, stomach, and arm, and required use of a wheelchair because of her wounds.  (*Id.* at ¶ 87.)  Jackson alleges that she suffered anxiety and nightmares following Pritchett's use of excessive force.  (*Id.* at ¶ 88.)  As a result of her anxiety and nightmares, Jackson was prescribed Prosasin and Visteral.  (*Id.*)

Plaintiffs filed their Complaint in the Cuyahoga County Court of Common Pleas on October 23, 2020.  (Doc. No. 1-1.)  On November 25, 2020, Defendants Cuyahoga County, Pinkney, Ivey, and Pritchett filed a Notice of Removal in this Court.  (Doc. No. 1.)

## II.    Mills's Motion to Dismiss and Pinkney's and Ivey's Motion for Judgment on the Pleadings

Mills's Motion and Pinkney's and Ivey's Motion are substantively identical.  (*See* Doc. Nos. 6, 11.)  Each defendant, in his individual capacity, moves the Court to dismiss Plaintiffs' individual-capacity claims against him.  (Doc. Nos. 6, 11.)  Therefore, the Court will address these Motions together.  For the reasons discussed below, the Court dismisses all individual-capacity claims against Mills, Pinkney, and Ivey.

### A.  Standard of Review

Mills moves to dismiss the Plaintiffs' Complaint for failure to state a claim under Fed. R. Civ.

P. 12(b)(6).  Pinkney and Ivey move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).[1]

The same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies

to a Rule 12(c) motion for judgment on the pleadings.  *See Roth v. Guzman*, 650 F.3d 603, 605 (6th

Cir. 2011).

Under Fed. R. Civ. P. 12(b)(6), the Court accepts the plaintiff's factual allegations as true and

construes the Complaint in the light most favorable to the plaintiff.  *See Gunasekara v. Irwin*, 551

F.3d 461, 466 (6th Cir. 2009).  In order to survive a motion to dismiss under this Rule, "a complaint

must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic

recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a

speculative level.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009)

(quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 167 L.Ed.2d

929 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief

above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough

---

[1] Plaintiffs argue that Pinkney's and Ivey's Motion is premature because not all defendants in this matter—*i.e.*, Defendant Mills—have filed an answer and, therefore, the pleadings are not yet closed.  (Doc. No. 15, PageID# 227.)  However, the Court may, in its discretion, construe Fed. R. Civ. P. 12(c) motions as Fed. R. Civ. P. 12(b)(6) motions.  *Horen v. Board of Educ. of Toledo City Schools*, 594 F. Supp. 2d 833, 840-41.  The standard of review is the same for Fed. R. Civ. P. 12(c) and Fed. R. Civ. P. 12(b)(6) motions and, thus, a party will not be prejudiced if a court treats a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) as a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Id.* (citing *Jung v. Association of American Medical Colleges*, 339 F.Supp.2d 26, 35-36 (D.D.C.2004)).  Accordingly, the Court may consider Pinkney's and Ivey's Motion by construing it as a Fed. R. Civ. P. 12(b)(6), rather than a Fed. R. Civ. P. 12(c), motion.  *Id.*  Doing so is appropriate because it does "not serve a useful purpose" to dismiss Pinkney's and Ivey's Motion now, only to have them refile a nearly identical motion after the Court dismisses Mills.  *Id.*  Moreover, Pinkney and Ivey pleaded failure to state a claim as an affirmative defense in their Answer.  *See Prade v. City of Akron*, No. 5:14-CV-188, 2015 WL 2169975, at *2 (N.D. Ohio May 8, 2015).  Finally, Plaintiffs have not identified any prejudice that would arise from consideration of Pinkney's and Ivey's Motion at this point in the litigation.  *Id.*  Accordingly, the Court will decide Pinkney's and Ivey's Motion now.

facts to state a claim to relief that is plausible on its face.'"  *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting in part *Twombly*, 550 U.S. at 555-56, 127 S.Ct. 1955).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.'  Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Gunasekera*, 551 F.3d at 466 (quoting in part *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)) (quoting *Twombly,* 127 S.Ct. at 1964).  Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937.

### B.     Analysis

#### 1.     *Monell* Liability

In their Class Claim and all three of their Individual Claims, Plaintiffs attempt to assert liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), against Mills, Pinkney, and Ivey in their individual capacities.  (*See, e.g.,* Doc. No. 1-1, ¶¶ 23-24, 49-50, 74-75, 91-92.)  The Court

agrees with Mills, Pinkney, and Ivey that Plaintiffs' attempt to bring *Monell* claims against them in their individual capacities fails.

In *Monell*, the Supreme Court concluded that Congress intended "municipalities and other local government units to be included among those persons to whom § 1983 applies." *Monell*, 436 U.S. at 690; *see also Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 120-21 (1992) ("Section 1983 provides a remedy against "any person" who, under color of state law, deprives another of rights protected by the Constitution. In *Monell*, the Court held that Congress intended municipalities and other local government entities to be included among those persons to whom § 1983 applies."). Plaintiffs' individual *Monell* claims against Mills, Pinkney, and Ivey cannot stand. *Id.* In other words, a *Monell* claim is one brought against a municipality or other local governmental entity—not an individual—for a governmental custom, policy, or practice that results in alleged constitutional injury. *Monell*, 436 U.S. at 690-91; *see also Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) ("A plaintiff who sues a *municipality* for a constitutional violation under § 1983 must prove that the *municipality's* policy or custom caused the alleged injury.") (emphasis added). Accordingly, to the extent that Plaintiffs purport to allege *Monell* claims against Mills, Pinkney, and Ivey in their individual capacities throughout the Complaint, such claims are dismissed.

### 2. Class Claim One and Individual Count One: Conditions of Confinement

In their Class Claim One and Individual Count One, Plaintiffs allege that Mills, Pinkney, and Ivey are liable in their individual capacities for the unconstitutional conditions of confinement at CCCC. (Doc. No. 1-1, ¶¶ 18-56.) Plaintiffs allege that Mills, Pinkney, and Ivey, as supervisors at

CCCC, violated the Eighth and Fourteenth Amendments of the Constitution[2] and "deliberately ignored conditions of confinement [within CCCC] that failed to meet contemporary requirements of minimal decency."  (*Id.* at ¶¶ 22, 26, 42, 46.)  The Court concludes that these claims fail for two reasons.  First, Plaintiffs do not allege sufficient facts regarding Mills's, Pinkney's, and Ivey's conduct to state a claim for relief against them in their individual capacities.  Second, even assuming *arguendo* that Plaintiffs allege sufficient factual allegations, Plaintiffs nevertheless fail to plead plausible individual-capacity supervisory liability claims under § 1983.

To state an individual-capacity claim against a government official, "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights."  *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002); *see also Fluker v. Cuyahoga County, et al.*, No. 1:19-cv-0318, 2019 WL 3718619, at *6 (N.D. Ohio Aug. 7, 2019).  Taking Plaintiffs' allegations in Class Claim One and Individual Claim One as true, the Court concludes that Plaintiffs fail to state an individual-capacity claim against Mills, Pinkney, or Ivey.  Critically, Plaintiffs plead no facts whatsoever that suggest that, or how, or when, Mills, Pinkney, or Ivey were personally involved in, or responsible for, the alleged harm Plaintiffs suffered as a result of the conditions in CCCC.  Plaintiffs assert several conclusory allegations that Mills, Pinkney, and Ivey "overcrowded" the CCCC, "served" CCCC inmates spoiled food and cloudy water, "allowed" human urine and feces to remain on the CCCC floors, and "allowed" the CCCC to be infested with bugs.  (Doc. No. 1-1, ¶¶

---

[2] The Court observes that Plaintiffs' Complaint alleges so little factual detail, it is unclear whether Plaintiffs were pretrial detainees or postconviction inmates during their time in CCCC.  "While a pretrial detainee does not enjoy protection of the Eighth Amendment, the Eighth Amendment rights of prisoners are analogous to pretrial detainees' due process rights under the Fourteenth Amendment."  *Barber v. City of Salem*, 953 F.2d 232, 235 (6th Cir. 1992).  In other words, though legally analyzed the same, if Plaintiffs were pretrial detainees and not postconviction inmates, Plaintiffs must seek relief under the Fourteenth, not the Eighth, Amendment.

12-16.)  However, aside from these conclusory allegations, Plaintiffs offer no facts that plausibly connect Mills's, Pinkney's, or Ivey's own conduct with the alleged squalid conditions in CCCC.

Moreover, Plaintiffs do not attempt to distinguish Mills's, Pinkney's, or Ivey's conduct from one another's conduct.  (*Id.*)  Instead, Plaintiffs lump Mills, Pinkney, and Ivey together, utilizing categorial references to all defendants throughout the entire Complaint, including Class Claim One and Individual Claim One.  (*Id.*)  The Plaintiffs' categorical references to the defendants throughout the Complaint are insufficient to allege specific actions on Mills's, Pinkney's, and Ivey's parts.  *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (affirming district court's dismissal of individual-capacity claims against two defendants because the complaint made "only categorical references to 'Defendants.'").

Plaintiffs assert that they "have alleged facts that are sufficient to state a viable claim against" Mills, Pinkney, and Ivey, for their roles "in depriving the Plaintiffs of rights guaranteed under the federal constitution . . . ," and then proceed to reassert their allegations related to the conditions within the CCCC.  (Doc. No. 9, PageID# 148, Doc. No. 15, PageID# 232.)  This is not persuasive.  The Court accepts the factual allegations regarding the conditions within CCCC as true.  However, Plaintiffs fail to allege *any* facts that suggest how Mills, Pinkney, or Ivey played a role in creating and/or sustaining those allegedly unconstitutional conditions.  To state a claim against the moving defendants, Plaintiffs have an obligation to plead *how* the moving defendants caused the Plaintiffs' alleged constitutional harm.  *See Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right.").  Plaintiffs' conditions of confinement claims against

11

Mills, Pinkney, and Ivey amounts to no more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," which fails to satisfy the pleading standard under Rule 8. *Iqbal*, 556 U.S. at 678.

Plaintiffs nevertheless assert that Mills, Pinkney, and Ivey are liable in their individual capacities by virtue of their roles as supervisors at the CCCC. This argument is without merit. It is well established that personal liability under § 1983 cannot be imposed on supervisors solely on the basis of *respondeat superior*. *See Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (stating that it is "well settled that 'government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior*'") (quoting *Iqbal*, 556 U.S. at 676). *See also Heyerman v. Cnty of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012); *Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999). As the Sixth Circuit has explained:

> For individual liability on a failure-to-train or supervise theory, the defendant supervisor must be found to have "'encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). **A plaintiff must demonstrate that the defendant supervisor "'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'"** *Id.* (quoting *Shehee*, 199 F.3d at 300). A mere failure to act will not suffice to establish supervisory liability. *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006).

*Essex v. Cnty. of Livingston*, 518 Fed. App'x 351, 355 (6th Cir. 2013) (emphasis added). Because "[s]upervisors are often one step or more removed from the actual conduct of their subordinates . . . the law requires more than an attenuated connection between the injury and the supervisor's alleged wrongful conduct." *Peatross*, 818 F.3d at 241.

The Sixth Circuit recently addressed pleading standards relating to individual-capacity supervisory liability claims in *Moderwell v. Cuyahoga Cnty., et al.*, --- F.3d ---, 2021 WL 1897949, at *8 (6th Cir. 2021). In that case, the plaintiff brought individual-capacity supervisory liability

claims, among others, against several CCCC executives on behalf of the estate of a detainee who committed suicide while held in CCCC. *Id.* at \*2. The district court denied the CCCC executives' motion for judgment on the pleadings with respect to the plaintiff's supervisory liability claims, *Id.* at \*8. On appeal, the CCCC executives argued that they could not be held liable via *respondeat superior* simply because their subordinates violated the decedent's constitutional rights. *Id.* The Sixth Circuit rejected the CCCC executives' argument and affirmed the decision of the district court. *Id.* Central to the Sixth Circuit's reasoning was the fact that, in the complaint, the plaintiff specifically alleged that the CCCC executives "*personally* devised and implemented the regionalization plan—an unconstitutional policy that created an unreasonable risk of suicide, . . . *knowingly acquiesced* in unconstitutional policies, including the use of solitary confinement as a punishment for minor infractions, the conditions of the Red Zone, and the denial of food as a punishment, . . . and [ ] abandoned their duties by failing to enact policies to prevent suicide, to provide adequate healthcare, to ensure appropriate supervision, and to train CCCC's correctional officers . . . ." *Id.* (internal citations omitted) (emphasis added). According to the Sixth Circuit,

> As to whether they knowingly acquiesced in the unconstitutional conduct of a subordinate, the Executive Defendants argue that Warden Ivey acted unconstitutionally without their knowledge. However, the Executive Defendants' involvement in, and knowledge of, Ivey's unconstitutional conduct requires "facts to be fleshed out during discovery." *Guertin*, 912 F.3d at 927. Drawing all inferences in Plaintiff's favor, the Amended Complaint alleges that, in response to the severe overcrowding knowingly caused by the Executive Defendants, Ivey implemented unconstitutional policies. The Amended Complaint further alleges that the Executive Defendants were on notice of the "insufficient and inedible food" and the "life-or-death" conditions at CCCC. (R. 55 at PageID## 293, 295-296.) They also allegedly "knew of a custom, propensity, and pattern" of prison officials "failing and/or refusing to provide prompt and competent access to and delivery of medical and mental health assessment, evaluation, care, intervention, referral, and treatment, to detainees." (*Id.* at PageID## 304-05.) At summary judgment, Plaintiff's burden will be to present facts showing that the Executive Defendants knew about the unconstitutional conduct and "did more than play a passive role in the alleged violations or show mere tacit approval

13

of the goings on." *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Peatross*, 818 F.3d at 243. But this burden is not on Plaintiff at the pleading stage. *See Hart*, 973 F.3d at 638 n.4 (explaining that "[a] complaint need not set down in detail all the particularities of a plaintiff's claim against the defendant." (quoting *Dunn v. Tennessee*, 697 F.2d 121, 125 (6th Cir. 1982))).

*Id.*

By contrast, in the instant case, Plaintiffs do not plausibly allege any specific conduct on Mills's, Pinkney's, or Ivey's parts that they implicitly authorized, approved, or knowingly acquiesced in the allegedly unconstitutional conduct at issue. *Heyerman*, 680 F.3d at 648; *Cf. Coley v. Lucas Cnty., Ohio*, 799 F.3d 530, 542 (6th Cir. 2015) (concluding that the plaintiff sufficiently alleged a county sheriff's knowing acquiescence in unconstitutional conduct by alleging that the sheriff intentionally covered up his subordinates' unconstitutional conduct to federal investigators). Rather, Plaintiffs contend that Mills, Pinkney, and Ivey are individually liable for the conditions at CCCC simply because they were supervisors.[3] (Doc. No. 9, PageID# 147, Doc. No. 15, PageID# 230.) As explained in *Moderwell*, while Plaintiffs "need not set down in detail" all of the particularities of their claims against the moving defendants, Plaintiffs must at least allege *some* facts related to their individual capacity supervisory liability claims against Mills, Pinkney, and Ivey. *Moderwell*, 2021 WL 1897949, at *8. As written, Plaintiffs' Complaint fails to do so.

---

[3] In their briefing, Plaintiffs appear to conflate official capacity claims with individual capacity claims, as against these Defendants. As discussed *supra*, however, official capacity claims are governed by the standards set forth in *Monell* and are not applicable to the individual capacity claims asserted in Class Claim One and Individual Claim One of the Complaint. Moreover, to the extent that Plaintiffs argue in their Oppositions that they also seek to bring *official*-capacity claims against Mills, Pinkney, and Ivey, such arguments fail. (*See* Doc. No. 9, PageID# 147, Doc. No. 15, PageIDE 230.) Plaintiffs may not amend their Complaint through their Opposition to include an official-capacity claim against Mills. *See Waskul v. Washtenaw Cnty. Community Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020) (concluding that plaintiffs cannot amend their complaints in opposition briefs). Additionally, even if Plaintiffs had pleaded an official-capacity claim against Mills, Pinkney, and Ivey, such official-capacity claims would be "merely another name for a claim against" Cuyahoga County. *Essex*, 518 Fed. App'x at 354.

14

Accordingly, and for all the reasons set forth above, the Court dismisses Class Claim One and Individual Claim One as to Mills, Pinkney, and Ivey in their individual capacities.

### 3. Individual Count Two: Deliberate Medical Indifference

In Individual Claim Two, Plaintiffs allege that Mills, Pinkney, and Ivey deprived them of the right to receive adequate medical care and attention as jail inmates, in violation of the Eighth and Fourteenth Amendments. (Doc. No. 1-1, ¶ 58.) Plaintiffs allege that Mills, Pinkney, and Ivey were deliberately indifferent to Plaintiffs' medical needs, including Jackson's need to use a wheelchair and Davis's need to treat her depression and anxiety. (*Id.* at ¶¶ 61, 71.) The Court concludes that Plaintiffs' deliberate medical indifference claim fails for the same reasons that Plaintiffs' Class Claim One and Individual Claim One fail, namely that Plaintiffs' Complaint is insufficient and also that Plaintiffs fail to plead individual supervisory liability under § 1983.

To state an individual-capacity claim against a government official, "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights." *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002); *see also Fluker v. Cuyahoga County, et al.*, No. 1:19-cv-0318, 2019 WL 3718619, at *6 (N.D. Ohio Aug. 7, 2019). A prison official's deliberate indifference violates an inmate's rights "[w]hen the indifference is manifested by . . . prison guards in intentionally denying or delaying access to medical care" for a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). As discussed *supra*, aside from the conclusory allegation that Mills, Pinkney, or Ivey were deliberately indifferent to Plaintiffs' medical needs, Plaintiffs fail to allege how these three defendants were involved in the decisions to deprive Jackson of her wheelchair or Davis of her medications. Plaintiffs' factual allegations are insufficient to plead a plausible

deliberate indifference to medical needs claim against Mills, Pinkney, or Ivey in their individual capacities. *Id.*

Second, even assuming *arguendo* that Plaintiffs pleaded sufficient factual allegations to state a plausible deliberate indifference to medical needs claim, Plaintiffs' claim nevertheless fails because personal liability under § 1983 cannot be imposed on supervisors solely on the basis of *respondeat superior*. *Shehee*, 199 F.3d at 300. Plaintiffs do not allege that either Mills, Pinkney, or Ivey personally engaged in the allegedly unconstitutional conduct, including depriving Jackson of her wheelchair or Davis of her medications. Moreover, Plaintiffs do not plausibly allege any specific conduct on the moving defendants' parts that they implicitly authorized, approved, or knowingly acquiesced in the allegedly unconstitutional conduct. *Cf. Coley*, 799 F.3d at 542. Accordingly, the Court dismisses Individual Count Two as to Mills, Pinkney, and Ivey in their individual capacities.

### 4.      Individual Count Three: Excessive Force

In Individual Count Three, Jackson alone alleges that on December 10, 2018, Defendant Pritchett used excessive and unconstitutional force against her when he grabbed her by the arms and slammed her stomach side down onto a desk, threw her into a steel pole, and then forcefully handcuffed her, despite knowing that Jackson had been shot in the back, stomach, and arm and required the use of a wheelchair. (Doc. No. 1-1, ¶¶ 84-86.) Jackson alleges that as a direct and proximate result of Mills's, Pinkney's, and Ivey's actions and inactions, Jackson suffered injuries and damages stemming from Pritchett's use of excessive force. (*Id.* at ¶¶ 95-97.)

The Court concludes that, for the same reasons discussed *supra*, Plaintiff Jackson's individual-capacity Excessive Force claim against Mills, Pinkney, and Ivey is "too thin and generalized." *Moderwell v. Cuyahoga Cnty., et al.*, No. 1:19-cv-613, 2020 WL 4726456, at *4 (N.D.

16

Ohio Aug. 14, 2020), *aff'd*, --- F.3d ---, 2021 WL 1897949 (6th Cir. 2021) (dismissing the plaintiff's excessive force claim against certain CCCC supervisors because the plaintiff failed to identify a specific defendant or allege how the CCCC executives particularly "were involved in the decision to isolate" the decedent in disregard of his known medical and psychological needs); *see also Frazier*, 41 F. App'x at 764.

In particular, Jackson's excessive force individual capacity claim against Mills is especially implausible. Plaintiffs' Complaint is almost entirely devoid of any dates whatsoever. Indeed, the Court does not know when Plaintiffs were detained in CCCC, or for how long. The only specific date that Plaintiffs plead is December 10, 2018, when which Pritchett allegedly used excessive force against Jackson. (Doc. No. 1-1, ¶ 84.) However, according to Plaintiffs' own Complaint, Mills resigned as CCCC supervisor sometime in November 2018, at least several days before Pritchett allegedly used excessive force against Jackson. (*Id.* at ¶ 5.) Jackson pleads no other facts to suggest that Mills—who was no longer a supervisor—was *personally* involved in Pritchett's alleged use of excessive force against Jackson on December 10, 2018. Based on Plaintiffs' own Complaint, it is implausible that Mills was personally involved in or at least authorized, approved, or knowingly acquiesced in Pritchett's alleged unconstitutional use of excessive force against Jackson on December 10, 2018.

Further, because personal liability under § 1983 cannot be imposed upon Mills, Pinkney, and Ivey solely on the basis of *respondeat superior*, Jackson's excessive force claim also fails against the moving defendants because she does not plead any factual allegations that suggest how and when the moving defendants were personally involved in, or responsible for, her alleged injuries. *See Shehee*,

17

199 F.3d at 300.  Accordingly, the Court dismisses Individual Count Three as to Mills, Pinkney, and Ivey in their individual capacities.

For the above reasons, the Court concludes that Plaintiffs fail to state any individual-capacity claims for which relief can be granted against Mills, Pinkney, or Ivey.  Accordingly, the Court grants Mills's Motion and dismisses all individual-capacity claims asserted against him.  Because the Court dismisses all claims with prejudice against Mills, the Court need not decide whether he is entitled to qualified immunity.  Additionally, the Court grants Pinkney's and Ivey's Motion and dismisses all individual-capacity claims asserted against them.

## III.    Cuyahoga County's Motion to Strike Class Allegations

### A.    Standard of Review

The Court now addresses the final pending motion, Defendant Cuyahoga County's Motion to Strike Plaintiffs' Class Allegations pursuant to Fed. R. Civ. P. 12(f) and 23.[4]  Fed. R. Civ. P. 23 governs class actions brought in federal court.  "To obtain class certification, a claimant must satisfy two sets of requirements: (1) each of the four prerequisites under Rule 23(a), and (2) the prerequisites of one of the three types of class actions provided for by Rule 23(b)."  *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945-46 (6th Cir. 2011).  Plaintiffs seek to bring their class claim on behalf of two subclasses, an injunctive relief subclass pursuant to Fed. R. Civ. P. 23(b)(2) and a monetary relief subclass pursuant to Fed. R. Civ. P. 23(b)(3).  (Doc. No. 1-1, ¶ 23.)

Rule 23(a) requires that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses

---

[4] Defendants Cuyahoga County, Ivey, Pinkney, Pritchett all moved to strike Plaintiffs' class allegations.  (Doc. No. 10.)  However, the Court has dismissed Defendants Pinkney and Ivey from this matter.  Moreover, Plaintiffs did not bring their class claim against Defendant Pritchett.  (Doc. No. 1-1, PageID# 9.)  Thus, for the sake of clarity, the Court will refer to the motion as Defendant Cuyahoga County's Motion to Strike Class Allegations.

of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

Rule 23(b)(2) and Rule 23(b)(3) require, respectively, that:

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

"Rule 23 does not set forth a mere pleading standard," and "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). In addition, "certification is proper only if 'the trial court is satisfied, after a rigorous analysis,'" that all prerequisites have been satisfied. *Id.* at 350-51 (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982)). Pursuant to Rule 23(c)(1)(A), courts should make such a determination "[a]t an early practicable time." "Either party may freely move for resolution of the class-certification question at any stage of the proceedings, and the class action allegations may be stricken prior to a motion for class certification where the complaint itself

demonstrates that the requirements for maintaining a class action cannot be met." *Rikos v. Procter & Gamble Co.*, No. 1:11-cv-226, 2012 WL 641946, at *3 (S.D. Ohio Feb. 28, 2012).

A court may strike action allegations prior to a motion for class certification "where the complaint itself demonstrates that the plaintiff cannot meet the requirements for maintaining a class action." *Johnson v. Geico Choice Ins. Co.*, No. 1:18-cv-1353, 2018 WL 6445617, at *4 (N.D. Ohio Dec. 10, 2018) (citing *Pilgrim*, 660 F.3d at 949 (6th Cir. 2011); *see also Meyers v. Ace Hardware, Inc.*, 95 F.R.D. 145, 150 (N.D. Ohio 1982); Fed. R. Civ. P. 23(c)(1) (the court must, "[a]t an early practicable time," determine "whether to certify the action as a class action."). However, the Sixth Circuit also noted that district courts still have a duty to "engag[e] in a 'rigorous analysis' of the question, and 'sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.'" *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (quoting *Falcon*, 457 U.S. at 161).

## B. Plaintiffs' Fed. R. Civ. P. 23(b)(2) Injunctive Relief Subclass

For the following reasons, the Court concludes that Plaintiffs lack standing to seek injunctive relief in the instant matter and, therefore, Plaintiffs' putative class claim for injunctive relief fails.

To support Article III standing, a party must show that:

> she "suffered an 'injury in fact,'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations omitted), and she must do so for each form of relief, *Lewis v. Casey*, 518 U.S. 343, 358 n.6, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) ("[S]tanding is not dispensed in gross."). In the context of claims for injunctive or declaratory relief, "a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized," and that "threat must be actual and imminent, not conjectural or hypothetical[.]" *Summers v. Earth Island Inst.*, 555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009). "[P]ast exposure to illegal conduct . . . unaccompanied by any continuing, present adverse effects," will not suffice to establish "a present case or controversy." *Lyons*, 461 U.S. at 102, 103 S.Ct. 1660 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)).

20

*Sumpter v. Wayne Cnty.*, 868 F.3d 473, 490-91 (6th Cir. 2015). Though a party may have "standing to sue under § 1983 for past harms, he must demonstrate *separate standing to seek* declaratory or *injunctive relief* focused on *prospective* harm." *Barber v. Miller*, 809 F.3d 840, 849 (6th Cir. 2015) (emphasis added). To do so, a party must "show that the 'threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur.'" *Id.* (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). *See also Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 95 F. Supp. 2d 723, 730 (". . . [I]t is possible to have standing to assert a claim for damages to redress past injury, while, at the same time, not have standing to enjoin the practice that gave rise to those damages. This may be so even if the practice is likely to continue.").

Additionally, "[t]hreshold individual standing is a prerequisite for all actions, including class actions." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998). "A potential class representative must demonstrate individual standing vis-[a]-vis the defendant; he cannot acquire such standing merely by virtue of bringing a class action." *Id.*; *see also Williams v. City of Cleveland*, 907 F.3d 924, 933 (6th Cir. 2018) (concluding that the plaintiff lacked standing to seek class-wide injunctive relief against the municipal jail because she was not in custody at the time she filed her complaint).

In *Sumpter v. Wayne Cnty.*, the Sixth Circuit concluded that the plaintiff lacked standing to seek injunctive relief because she "did not present an actual case or controversy at the time she filed her complaint." *Sumpter*, 868 F.3d at 490. The *Sumpter* plaintiff claimed that she was subjected to four allegedly unconstitutional strip searches while incarcerated in the Wayne County jail. *Id.* at 491. However, she left the jail before she filed her claim for injunctive relief. *Id.* The court concluded that it must assume that the plaintiff would follow the law in the future, thereby avoiding incarceration

21

and further exposure to the challenged conduct.  *Id.*  Additionally, the court noted that the jail revised its policy to disallow such strip searches after the plaintiff's release, rendering the threat of harm even more remote.[5]  *Id.*  Thus, the Sixth Circuit concluded that while the plaintiff alleged prior injuries, she "failed to establish standing to seek injunctive or declaratory relief."  *Id.*; *see also Williams*, 907 F.3d at 933.

Here, Plaintiffs' allegations of misconduct relate entirely to alleged conduct that occurred during their incarceration in CCCC.  (*See* Doc. No. 1-1, ¶¶ 1-2.)  Plaintiffs do not allege that they are currently incarcerated in CCCC or that they filed their Complaint while incarcerated in CCCC.  The Court assumes that Plaintiffs do not intend to return to CCCC.  *See Sumpter*, 868 F.3d at 491; *Williams*, 907 F.3d at 933.  Plaintiffs do not allege an "actual and imminent" threat of future injury. *Id.*  Thus, Plaintiffs cannot establish standing to seek injunctive relief.  *Id.*  Because individual standing is a prerequisite "for all actions, including class actions," Plaintiffs' attempt to seek class-wide injunctive relief fails.  *Fallick*, 162 F.3d at 423.  *See also Timoneri v. Speedway, LLC*, 186 F. Supp. 3d 756, 760-61 (N.D. Ohio 2016) (concluding the plaintiff lacked standing to bring class action because he suffered no injury and did not allege that he was at risk of future injury); *Foley v. LG Electronics, Inc.*, No. 1:16-cv-1479, 2017 WL 2691790, at *3 (N.D. Ohio June 22, 2017) (dismissing plaintiff's putative class action claims for lack of standing).  Moreover, Plaintiffs' attempt to bring a

---

[5] Plaintiffs attempt to distinguish their injunctive relief claim from *Sumpter* (as well as *Williams*) by pointing out that the *Sumpter* court acknowledged that Wayne County ended its allegedly unconstitutional strip search policy, thereby rendering future harm from such a policy even more remote.  According to Plaintiffs, they make no such analogous allegation that Cuyahoga County suspended the policies that led to the allegedly unconstitutional conditions of confinement.  This is unpersuasive.  In *Sumpter*, the Sixth Circuit found that its conclusion as to the plaintiff's lack of standing was further bolstered by the fact that Wayne County ended its strip search policy.  *Sumpter*, 868 F.3d at 491. However, *Sumpter* did not *exclusively* rely on Wayne County's discontinuation of the offending policy to conclude that the plaintiff lacked standing.  *Id.*  Rather, the threat of harm was rendered sufficiently remote because the plaintiff was not detained when she filed suit and the court presumed that she would abide by the law, thereby avoiding future detention and/or incarceration.  *Id.*; *see also Williams*, 907 F.3d at 933 (concluding same).

class action claim for injunctive relief does not cure their standing dilemma because Plaintiffs did not have "a live, actionable claim for injunctive relief at the time [they] filed suit." *Williams*, 907 F.3d at 934 (quoting *Sumpter*, 868 F.3d at 491).

Plaintiffs' citation to *Hiatt v. Cnty. of Adams* is not persuasive.  In *Hiatt*, the court granted the three named plaintiffs' unopposed motion to certify a class seeking injunctive and declaratory relief. *Hiatt v. Cnty of Adams*, 155 F.R.D. 605, 607 (S.D. Ohio 1994).  When the *Hiatt* plaintiffs filed their complaint, all three "were incarcerated in the Adams County Jail." *Id.*  Thus, *Hiatt* is distinguishable from the instant matter.  Likewise, *Gerstein v. Pugh*, cited by the *Hiatt* court, is equally unhelpful to Plaintiffs "because the complaining parties had a live, actionable claim for injunctive relief at the time they filed suit—which is to say, they had standing." *Sumpter*, 868 F.3d at 491 (citing *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975)).

No amount of potential discovery would cure Plaintiffs' lack of standing to pursue injunctive relief against Cuyahoga County.  Accordingly, the Court grants Cuyahoga County's Motion to Strike Plaintiffs' injunctive relief subclass.

### C.    Plaintiffs' Fed. R. Civ. P. 23(b)(3) Monetary Relief Subclass

#### 1.    Ascertainability of the Class

"Before a court may certify a class pursuant to Rule 23, the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) (internal citation omitted).  A class definition is "impermissible where it is a 'fail-safe' class, that is, a class that cannot be defined until the case is resolved on its merits."

*Id.* A fail-safe class "includes *only* those who are *entitled* to relief." *Id.* Fail-safe classes are prohibited for at least two reasons:

> First, as a conceptual matter, they create a one-way ratchet in plaintiffs' favor. If the named plaintiffs prevail on the merits, the other class members benefit, as they are then included in the class. But, if the named plaintiffs lose, the absent class members are not bound, as they are then not included in the class. . . . Second, as a practical matter, fail-safe classes create workability issues, as the general rule in a class action is that the class determination occurs first, before a merits determination, not after that determination.

*Couch v. Certified Flooring Installation, Inc.*, 439 F. Supp. 3d 964, 978 (S.D. Ohio 2020) (citing *Young*, 693 F.3d at 538); *see also Schilling v. Kenton Cnty., Ky*, No. 10-143-DLB, 2011 WL 293759, *5 (E.D. Ky, Jan. 27, 2011) ("The class definition should avoid subjective standards such as the plaintiff's state of mind or terms that depend on a merits adjudication. A class definition is therefore too general where it requires the Court to determine whether an individual's constitutional rights have been violated in order to ascertain membership in the class itself.").

The Court concludes that Plaintiffs' proposed monetary relief subclass is an impermissible fail-safe class. Plaintiffs' proposed subclass includes "[a]ll female inmates who were held at the Cuyahoga County Corrections Center and subjected to the aforementioned unsanitary, inhumane and unconstitutional conditions that Defendants Cuyahoga County, Pinkney, Mills and Ivey negligently, intentionally, maliciously, willfully, wantonly, and/or recklessly created, maintained and/or allowed to exist pursuant to their policies, practices and/or customs from the time the conduct began through the time of judgment." (Doc. No. 1-1, ¶ 23b.) According to Plaintiffs, a female inmate is a class member if she was subjected to "unconstitutional conditions." (*Id.*) A female inmate is not a class member if she was not subjected to "unconstitutional conditions." (*Id.*) In other words, if an inmate is a class member, it necessarily means that she was subjected to "unconstitutional conditions" and

thus has a claim for relief. Plaintiffs' proposed definition also asks the Court to make a merits determination as to the culpability of Cuyahoga County's conduct at the outset of the action. (*Id.*) This proposed definition improperly requires the Court to make legal determinations that certain female CCCC inmates were subjected to conditions of confinement that rise to the level of constitutional violations and also that Cuyahoga County is culpable in its conduct, which is impossible to do without evaluating each inmate's individual circumstances.[6] *Schilling*, 2011 WL 293759, at * 6.

While the Court concludes that Plaintiffs' proposed monetary relief subclass definition is impermissibly fail-safe, the Court is also mindful that courts must "exercise caution when striking class action allegations based solely on the pleadings, because class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Progressive Health and Rehab Corp. v. Quinn Medical, Inc.*, 323 F.R.D. 242, 246 (S.D. Ohio 2017). The fail-safe problem "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis." *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 WL 1814076, at *6 (S.D. Ohio May 7, 2014) at *9 (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 814 (7th Cir. 2012)) (observing that the task of defining a class that is not overinclusive on one hand, but not fail-safe on the other "is more of an art than a science"); *see also Glass v. Tradesmen Int'l LLC,* --- F.Supp.3d ----, 2020 WL 7129594, at *14 n.5 (N.D. Ohio Dec. 2, 2020).

---

[6] In their Opposition, Plaintiffs emphasize the phrase "to the aforementioned" in an attempt to avoid the fail-safe problem. (Doc. No. 14, PageID# 222.) Plaintiffs' attempt is unavailing. Plaintiffs plainly describe the "aforementioned" conditions as "unconstitutional." For the reasons discussed above, this is impermissibly fail-safe.

While Cuyahoga County urges the Court to rely on *Schilling v. Kenton Cnty., Ky.* and flatly deny Plaintiffs' class certification at the pleading stage, the Court is not persuaded that doing so is prudent at this juncture. Indeed, *Schilling* seems to be somewhat of an outlier in this regard. The Court identified several other cases where courts generally exercised caution in striking class allegations prior to a fully-briefed motion to certify. *See, e.g., Montanez v. Voss Indus., LLC,* No. 1:18-cv-1378, 2019 WL 2330511, at *7 (N.D. Ohio May 31, 2019) (concluding that, at the pleadings stage, the court "cannot say that factual development will fail to cure any alleged defect in the pleadings"); *Healey v. Jefferson Cnty. Ky. Louisville Metro Gov't.*, No. 3:17-cv-71-DJH, 2018 WL 1542142, at *7 (W.D. Ky Mar. 29, 2018) (finding that, at the pleading stage, it would not be impossible "for Plaintiffs to eventually satisfy Rule 23(a)'s prerequisites"); *Legrand v. Intellicorp Records, Inc.*, No. 1:15-cv-2091, 2016 WL 1161817, at *4 (N.D. Ohio Mar. 24, 2016) (finding that, at the pleading stage, the court could not conclude as a matter of law that individual issues would predominate over common issues, and concluding "[a]s is generally the case, this balance can be better evaluated after discovery."); *Eliason v. Gentek Bldg. Prod., Inc.*, No. 1:10-cv-02093, 2011 WL 3704823, at *3 (N.D. Ohio Aug. 23, 2011 ("'A motion to strike class allegations is not a substitute for class determination and should not be used in the same way.'") (quoting *Faktor v. Lifestyle Lift*, No. 1:09-cv-511, 2009 WL 1565954, at *2 (N.D. Ohio June 3, 2009)); *Geary v. Green Tree Serv., LLC*, No. 2:14-cv-00522, 2015 WL 1286347, at *17 (S.D. Ohio Mar. 20, 2015) ("The Court deems it prudent to assess the propriety of class certification in the context of a fully briefed class certification motion rather than in the context of a motion to strike class claims at the pleading stage.").

Nevertheless, the Court concludes that Plaintiffs' proposed definition of its monetary relief subclass, as currently written, is problematic for all of the reasons discussed above. Accounting for

the possibility that the Court might reach such a conclusion, Plaintiffs request permission to amend their monetary relief subclass definition so that this case may proceed on its merits.  (Doc. No. 14, PageID# 222.)  Accordingly, the Court will strike Plaintiffs' current proposed monetary relief subclass definition but grant Plaintiffs' request for leave to amend the definition of their proposed monetary relief subclass only.  *See Sauter*, 2014 WL 1814076, at *6.  Plaintiffs shall have 14 days to file an amended complaint that incorporates a revised monetary relief subclass definition.  Cuyahoga County shall have 14 days from the date of filing of Plaintiffs' amended complaint to file any opposition and/or motion to strike thereto.  Plaintiffs shall then have 7 days from the date of filing of any opposition in which to file a reply in support of their revised class definition.

### 2.    Remaining Fed. R. Civ. P. 23 Factors

Because the Court strikes the Plaintiffs' current proposed class definition as impermissibly fail-safe, the Court declines to address the remaining Fed. R. Civ. P. 23(a) or 23(b)(3) factors at this time.

## IV.    Conclusion

Accordingly, for the reasons set forth above, Defendant Mills's Motion to Dismiss (Doc. No. 6) and Defendants Pinkney's and Ivey's Motion for Judgment on the Pleadings (Doc. No. 11) are GRANTED.  Mills, Pinkney, and Ivey are dismissed from this matter.  Defendant Cuyahoga County's Motion to Strike Class Allegations (Doc. No. 10) is GRANTED.  Plaintiffs are GRANTED 14 days in which to file an amended complaint that incorporates a new proposed monetary relief subclass definition.  Defendant Cuyahoga County is GRANTED 14 days from the date of filing of Plaintiffs' amended complaint to file any opposition and/or motion to strike the new monetary relief subclass

definition.  Plaintiffs are GRANTED 7 dates from the date of filing of Defendant's Opposition in which to file any reply in support of their new proposed definition.

**IT IS SO ORDERED.**

 *s/Pamela A. Barker*  
PAMELA A. BARKER  
Date:  May 20, 2021                                    U. S. DISTRICT JUDGE