## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| TABATHA JACKSON, et al., | CASE NO. 1:20-CV-02649 |
| Plaintiffs, | |
| -vs- | JUDGE PAMELA A. BARKER |
| CUYAHOGA COUNTY, et al., | |
| Defendants. | MEMORANDUM OPINION AND ORDER |

Pending before the Court is Defendant Cuyahoga County's Motion to Strike Class Allegations, filed on June 16, 2021.[1]  (Doc. No. 21.)  Plaintiffs filed a Reply in Support of New Proposed Monetary Relief Subclass.  (Doc. No. 25.)  Defendant did not file a Reply in Support of its Motion to Strike.  For the following reasons, Defendant's Motion is denied.

## I.    Background

The Court previously set forth the background of this case in its 5/20/2021 Memorandum Opinion and Order.  (Doc. No. 18.)  Therefore, the Court will only briefly recount the relevant background here.  Plaintiffs Tabatha Jackson and Phyllis Davis ("Jackson," "Davis," or, collectively, "Plaintiffs") filed a putative class action in the Cuyahoga County Court of Common Pleas on October 23, 2020 against Defendant Cuyahoga County ("Cuyahoga County," or "Defendant").  (See Doc. No. 1.)  Defendant removed the case to this Court.  (Id.)  On May 20, 2021, this Court struck Plaintiffs' original proposed monetary relief subclass as impermissibly fail-safe.  (Doc. No. 20, PageID# 285.)

---

[1] In its Motion, Cuyahoga County also moved to dismiss former defendants Eric Ivey and Clifford Pinkney, who were previously dismissed from this case pursuant to the Court's 5/20/2021 Memorandum Opinion and Order.  (See Doc. Nos. 21, 18.)  Plaintiffs subsequently filed—and the Court ordered—a Notice of Dismissal of Ivey and Pinkney with prejudice from this matter.  (See ECF Docket Entry 6/23/2021.)  Therefore, to the extent Cuyahoga County moves to dismiss Ivey and Pinkney from this matter, such a motion is moot, and the Court will only address Cuyahoga County's Motion to Strike Class Allegations.

However, the Court granted Plaintiffs' request for leave to amend the definition of their proposed monetary relief subclass.  (*Id.*)

Plaintiffs filed their Amended Complaint on June 3, 2021.  (Doc. No. 20.)  Plaintiffs allege that Cuyahoga County is an Ohio political subdivision responsible for the Cuyahoga County Corrections Center (the "CCCC").  (*Id.* at ¶ 3.)  Plaintiffs allege that Cuyahoga County "is a 'person' under 42 U.S.C. § 1983 and is responsible for the conduct of its agents, employees and officials pursuant to the doctrine of *respondeat superior*."  (*Id.*)  Plaintiffs allege that the "conditions in the Cuyahoga County Corrections Center in Cleveland, Ohio are unsanitary, inhumane and unconstitutional." (*Id.* at ¶ 11.)  Plaintiffs allege that Defendant "overcrowded the Cuyahoga County Corrections Center and forced inmates to sleep in noisy conditions and on thin mats approximately two feet wide, making sleeping, a basic human need, difficult."  (*Id.* at ¶ 12.)  Plaintiffs also allege that Defendant served CCCC inmates spoiled food on moldy trays and that some of the food had dead or alive bugs in it.  (*Id.*)  Plaintiffs allege that the Defendant provided cloudy, inconsumable water to the inmates, that urine and feces polluted the floors of the CCCC, and that the CCCC was infested with bugs, including cockroaches.  (*Id.* at ¶¶ 13-15.)  According to Plaintiffs, every female CCCC inmate, including Jackson and Davis, had to live in these "unsanitary, inhumane and unconstitutional conditions." (*Id.* at ¶ 17.)  Plaintiffs bring a single class claim against Cuyahoga County, pursuant to the Eighth and Fourteenth Amendments.  (*Id.* at ¶ 20.)

In their Amended Complaint, Plaintiffs propose the following class definition:

All female detainees or prisoners who were held at the Cuyahoga County Corrections Center from October 23, 2018 until October 23, 2020.  This Subclass seeks economic, non-economic, nominal and punitive monetary damages.

(*Id.* at ¶23b.)

Defendant filed its Motion to Strike Plaintiffs' amended class definition on June 16, 2021, to which Plaintiffs replied on June 23, 2021.  (Doc. Nos. 21, 25.)  Defendant did not file a Reply in Support of its Motion to Strike.

## II.     Standard of Review

Fed. R. Civ. P. 23 governs class actions brought in federal court.  "To obtain class certification, a claimant must satisfy two sets of requirements: (1) each of the four prerequisites under Rule 23(a), and (2) the prerequisites of one of the three types of class actions provided for by Rule 23(b)."  *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945-46 (6th Cir. 2011).  Plaintiffs seek to bring their class claim on behalf of two subclasses, an injunctive relief subclass pursuant to Fed. R. Civ. P. 23(b)(2) and a monetary relief subclass pursuant to Fed. R. Civ. P. 23(b)(3).  (Doc. No. 1-1, ¶ 23.)

Rule 23(a) requires that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

Rule 23(b)(2) and Rule 23(b)(3) require, respectively, that:

> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:

> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

3

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

"Rule 23 does not set forth a mere pleading standard," and "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  In addition, "certification is proper only if 'the trial court is satisfied, after a rigorous analysis,'" that all prerequisites have been satisfied. *Id.* at 350-51 (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982)).  Pursuant to Rule 23(c)(1)(A), courts should make such a determination "[a]t an early practicable time."  "Either party may freely move for resolution of the class-certification question at any stage of the proceedings, and the class action allegations may be stricken prior to a motion for class certification where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Rikos v. Procter & Gamble Co.*, No. 1:11-cv-226, 2012 WL 641946, at *3 (S.D. Ohio Feb. 28, 2012).

A court may strike class action allegations prior to a motion for class certification "where the complaint itself demonstrates that the plaintiff cannot meet the requirements for maintaining a class action." *Johnson v. Geico Choice Ins. Co.*, No. 1:18-cv-1353, 2018 WL 6445617, at *4 (N.D. Ohio Dec. 10, 2018) (citing *Pilgrim*, 660 F.3d at 949 (6th Cir. 2011); *see also Meyers v. Ace Hardware, Inc.*, 95 F.R.D. 145, 150 (N.D. Ohio 1982); Fed. R. Civ. P. 23(c)(1) (the court must, "[a]t an early practicable time," determine "whether to certify the action as a class action.")  However, the Sixth Circuit also noted that district courts still have a duty to "engag[e] in a 'rigorous analysis' of the question, and 'sometimes it may be necessary for the court to probe behind the pleadings before

coming to rest on the certification question.'" *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (quoting *Falcon*, 457 U.S. at 161).

### III.    Analysis

The Court believes that it can only conduct a "rigorous analysis" of whether Plaintiffs' proposed amended class definition meets the Fed. R. Civ. P. 23 requirements upon a fully-briefed motion for class certification. *Pilgrim*, 660 F.3d at 949. Thus, the Court concludes that it is premature to strike Plaintiffs' proposed class definition. The Court may only strike class allegations before a class certification motion when the complaint itself shows that the potential class cannot meet certification requirements under Fed. R. Civ. P. 23. *Kasper v. Ford Motor Co.*, No. 1:18-cv-2895, 2019 WL 1317921, at *3 (N.D. Ohio Mar. 22, 2019) (citing *Johnson v. Geico Choice Ins. Co.*, No. 1:18 CV 1353, 2018 WL 6445617, at *4-5 (N.D. Ohio Dec. 10, 2018) (citing *Pilgrim*, 660 F.3d at 949)). The Court concludes that Cuyahoga County fails to show that Plaintiffs' class allegations suffer from an *irreparable* defect that renders class certification inappropriate.

Cuyahoga County asserts that Plaintiffs' proposed amended class definition cannot satisfy the "commonality" and "typicality" requirements of Fed. R. Civ. P. 23(a) or the "predominance" and "superiority" requirements of Fed. R. Civ. P 23(b). (Doc. No. 21, PageID# 367.) Indeed, there is no doubt that Plaintiffs' proposed amended class definition is broad. However, Plaintiffs' proposed amended class definition is not irreparably defective, as in *Glass v. Tradesmen Int'l*, 505 F. Supp. 3d 747, 769 (N.D. Ohio 2020), or *Oom v. Michaels Cos., Inc.*, No. 1:16-cv-257, 2017 WL 3048540, at *5 (W.D. Mich. July 19, 2017).

In *Glass*, no amount of discovery would alter the defect in the plaintiff's proposed class definition, because the plaintiff could not impose Ohio law on putative class members who suffered

5

no injury in Ohio.  *Glass*, 505 F. Supp. 3d at 769.  However, in this case, discovery may reveal that the conditions alleged in Plaintiffs' Complaint were pervasive throughout female housing at CCCC between October 23, 2018 and October 23, 2020 and that common policies and procedures were implemented that allowed such conditions to proliferate.  Unlike in *Glass*, discovery in the instant matter may support a finding that Plaintiffs meet the Fed. R. Civ. P. 23 requirements.  Thus, it is premature to strike Plaintiffs' proposed amended class definition.  *See Doe v. City of Memphis*, 928 F.3d 481, 497 (6th Cir. 2019) (reversing district court's decision to strike class allegations when plaintiffs had not yet had an opportunity for "meaningful discovery").

In *Oom*, the court concluded that the plaintiffs' proposed class definition was fail-safe and that the plaintiffs failed to present a viable alternative class definition.  *Oom*, 2017 WL 3048540, at *5.  The plaintiffs proposed two classes: a Michigan class and a Nationwide class.  *Id.* at *3.  Both classes included customers who purchased premium custom framing products, either in Michigan or elsewhere across the United States, but instead received cheap substitute framing products.  *Id.*  The *Oom* court concluded such a definition was fail-safe and further conjectured that there was no way to modify the class definitions that avoided the fail-safe problem without also rendering the classes overinclusive.  *Id.* at *5.  The court reasoned that if the plaintiffs defined the class as any customer in Michigan or the United States who purchased the premium product, such a class would be over-inclusive because "it would include all individuals who purchased preservation mounting, even if they received such mounting."  *Id.*  However, the *Oom* court's alternative class definition was significantly broader than Plaintiffs' proposed amended class definition.  In *Oom*, the alternative class definition would have swept in *any* customer in either Michigan *or* across the entire country who purchased a premium custom framing product.  *Id.*  While Plaintiffs' proposed amended class

6

definition is indeed broad, it is not as over-broad as in *Oom*.  Plaintiffs' proposed amended class definition only includes female inmates held at a single county jail facility in a two-year span.  While Plaintiffs may need to further narrow or refine their class definition at the end of discovery, the Court concludes it is premature to strike Plaintiffs' proposed amended class definition as irreparably defective at this time.

Cuyahoga County also reiterates its argument previously set forth in its original motion to strike and directs the Court to the cases cited therein.  (Doc. No. 21, PageID# 367, citing Doc. No. 10-1, PageID# 173-74.)  However, most of the cases Cuyahoga County cited in its original motion address motions for class certification or decertification.  (Doc. No. 10-1, PageID# 173-74.)  Thus, most of Cuyahoga County's cited cases support the Court's position that a fully briefed motion to certify is a more appropriate vehicle for deciding whether Plaintiffs' proposed amended class definition satisfies Fed. R. Civ. P. 23's requirements.

Only two of Cuyahoga County's cited cases, *Moon v. County of Orange*, No. SACV 19-258 JVS, 2020 WL 2332164, at *8 (C.D. Cal. Mar. 18, 2020) and *Schilling v. Kenton Cnty., Ky.*, No. 10–143–DLB, 2011 WL 293759, at *6 (E.D. Ky. Jan. 27, 2011), address motions to strike class allegations.  *Moon*, which comes from a district outside of this Circuit, is not especially persuasive. In *Moon*, the plaintiffs' Complaint included two classes: a "telephone class" (which included three subclasses) and a "prisoner equitable class" (which included a conditions of confinement claim). *Moon*, 2020 WL 2332164, at *6.  The majority of the district court's analysis of the motion to strike class allegations addressed the three telephone subclasses, only the first of which is relevant to the instant matter.  *Id.* at *6-8.  The plaintiffs' first subclass included "[a]ll inmates whose calls to their

attorneys were recorded or monitored" over a two-year period in Orange County jails.  *Id.* at *6. However, the court's analysis of the first subclass is somewhat puzzling:

> In regards to the first sub-class, the SAC alleges that OCSD maintained "a list of more than 1000 attorneys for the precise purpose of ensuring that their calls with inmates were not recorded or monitored." SAC ¶ 49. The SAC does not allege that the attorney-plaintiffs attempted to get on that list of attorneys, but rather that the attorneys were not aware of the list and/or advised of its existence. Therefore, as defined, the first subclass includes persons whose calls were never recorded or monitored, and who thus have no injury and no standing.

*Id.* at *7.  After analyzing the other two subclasses, the court returned to its analysis of the first subclass a few paragraphs later.  *Id.* at *8.  The court concluded that the first subclass's allegations should be struck as overbroad because "no class may be certified if it includes members that lack standing."  *Id.*  However, it is unclear how exactly the plaintiffs lacked standing: the first subclass included all inmates whose calls with their attorneys were recorded, but the court concluded that the subclass included individuals whose calls were not recorded.  *Id.* at *6-8.  Moreover, the *Moon* court struck the plaintiffs' putative conditions of confinement class claim without any analysis.  *Id.* at *8. The Court declines Cuyahoga County's invitation to rely on this unpublished, out-of-Circuit case.

Moreover, the Court previously observed that *Schilling* was somewhat of an outlier in its striking of class allegations at the pleading stage.  *See Jackson v. Cuyahoga County*, 1:20-CV-02649, 2021 WL 2018853, at *14 (May 20, 2021) (collecting cases).  The Court believes, for the reasons previously articulated in its May 20, 2021 Memorandum Opinion and Order, that it is more prudent to exercise caution and avoid striking Plaintiffs' class definition prior to a fully briefed motion to certify.  *Id.*

Additionally, Cuyahoga County asserts that "[m]any inmates never encountered the nine conditions identified in the Amended Complaint" or "inevitably encountered only mild versions of

8

theirs [sic] conditions."  (Doc. No. 21, PageID#369.)  Such an assertion further illustrates why discovery is appropriate in this case.  Cuyahoga County relies only on its own assertions to support its argument that many inmates did not suffer constitutional deprivations.  The Court declines to take Cuyahoga County's word on the matter at this time and believes these issues can await discovery. *See Kasper*, 2019 WL 1317921, at *3 (declining to take the defendant at its own word as to the potential class's ascertainability and concluding that discovery was appropriate).

## IV.    Conclusion

Accordingly, for the reasons set forth above, Defendant Cuyahoga County's Motion to Strike Class Allegations is denied.

**IT IS SO ORDERED.**

                                              *s/Pamela A. Barker*
                                              PAMELA A. BARKER
Date:  August 19, 2021              U. S. DISTRICT JUDGE

9