# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| TABATHA JACKSON, et al., ) | |
| ) | CASE NO.: 1:20-cv-02649 |
| Plaintiff, ) | |
| ) | |
| vs. ) | JUDGE: CHARLES E. FLEMING |
| ) | |
| CUYAHOGA COUNTY, OHIO, et al. ) | |
| ) | |
| Defendants. ) | |

---

## DEFENDANTS CUYAHOGA COUNTY AND SUBPEONAED NON-PARTY ARMOND BUDISH'S MOTION TO QUASH SUBPEONA AND FOR A PROTECTIVE ORDER

---

Pursuant to Fed.R.Civ.P. 26(c), 30(d)(3) and 45(d), Defendant Cuyahoga County and its County Executive, Subpoenaed Non-Party Armond Budish, respectfully move for a protective order quashing or modifying a premature and overly burdensome deposition subpoena[1] served on Mr. Budish for a deposition on May 19, 2022.

A Memorandum in Support follows.

---

[1] Attached as Exhibit 1.

1

        Respectfully submitted,

        MICHAEL C. O'MALLEY, Prosecuting Attorney of Cuyahoga County, Ohio

By:   /s/ *Michael J. Stewart*
       Michael J. Stewart (0082257)
       mjstewart@prosecutor.cuyahogacounty.us
       Phone: (216) 443-6673
       Brendan D. Healy (0081225)
       bhealy@prosecutor.cuyahogacounty.us
       Phone: (216) 698-6447
       Jillian Eckart (0088770)
       jeckart@prosecutor.cuyahogacounty.us
       Phone: (216) 443-7618
       CUYAHOGA COUNTY PROSECUTOR'S OFFICE
       The Justice Center, Courts Tower
       1200 Ontario Street, 8th Floor
       Cleveland, OH 44113
       Fax: (216) 443-7602

       *Attorneys for Defendant Cuyahoga County and Randy Pritchett and Subpoenaed Non-Party Armond Budish*

## MEMORANDUM IN SUPPORT

### I. INTRODUCTION

Defendant Cuyahoga County and Subpoenaed Non-Party County Executive Armond Budish respectfully move for an order quashing a deposition subpoena served on the County Executive at his home for a deposition scheduled for May 19, 2022. This is the first deposition that Plaintiffs have sought in this matter and, other than an initial set of document requests under Fed.R.Civ.P. 34, the first discovery of any kind undertaken by Plaintiffs.

Under prevailing caselaw, to prevent harassment, and preserve the operation of the governmental decision-making process, Plaintiffs are obligated to exhaust other discovery options before seeking the disposition of a high-ranking government official such as Mr. Budish. Even then, Plaintiffs may only seek Mr. Budish's testimony on those limited topics about which he has unique knowledge. Plaintiffs have failed to do so here and the deposition subpoena must be quashed in its entirety.

In the alternative, Defendants and Mr. Budish are entitled to a protective order under Fed.R.Civ.P. 26(b)(2)(C)(1) limiting the scope of any deposition as outlined below.

### II. PROCEDURAL HISTORY

**A. Procedural history and discovery to date.**

Plaintiffs, Tabatha Jackson and Phyllis Davis originally filed this action in state-court in October 2020. (NOR, ECF#1-1 at PageID #5). Defendants timely removed this case and it was assigned to the docket of Judge Pamela Barker.

Jackson and Davis are former inmates who were intermittently incarcerated in the Cuyahoga County Corrections Center ("the County Jail") in late-2018 and early-2019. The women assert both class and individual claims: 1) both Plaintiffs assert individual claims

concerning allegedly substandard medical treatment that they received in the County Jail (FAC, ECF# 20 at ¶¶ 57-82); 2) Jackson asserts an individual claim alleging she was subjected to excessive force in December 2018 (*Id.* at ¶¶ 83-97); and 3) both Plaintiffs allege that they were subjected to some, or all of nine discrete unconstitutional conditions in the County Jail, ranging from substandard food and water to excessive noise (*Id.* at ¶¶ 18-82).  Plaintiffs purport to bring (3), their "conditions of confinement" claims, on behalf of a class of women incarcerated in the County Jail between October 2018 and October 2020.  (ECF# ¶¶ 18-82).

Plaintiffs originally named the County as well as former Sheriff Clifford Pinkney, former Associate Warden Eric Ivey and Former Jail Director Ken Mills.[2]  (ECF # 1-1).  The individual defendants filed motions to dismiss, and the County sought to strike all class allegations.  (ECF ## 6, 10 and 11).  Judge Barker substantially granted Defendants' Motions.  (ECF # 18).  Plaintiffs' allegations against Pinkney, Ivey and Mills were conclusory.  *Id.*  Plaintiffs lacked standing to seek injunctive relief on a class-wide basis under Fed.R.Civ.P 23(b)(2).  *Id.*  Finally, Plaintiffs' proposed class seeking monetary relief under Fed.R.Civ.P. 23(b)(3) was defined as improperly fail-safe.  *Id.*  But the Court permitted Plaintiffs to amend their monetary-relief subclass (*Id.*) and subsequently permitted discovery to proceed on whether a monetary-relief subclass may be certified.  (ECF # 26).

The Court conducted the initial Case Management Conference on September 27, 2021 and approved the parties' proposal to complete discovery on dispositive motions and Plaintiffs' anticipated motion for class certification by the summer of 2022, with briefs to be filed on August 1, 2022.  ECF # 31.  On October 22, 2021, the parties exchanged initial disclosures.

---

[2] Corrections Officer Randy Pritchett is also named as a Defendant.

Defendants served written discovery requests on November 5, 2021, to which Plaintiffs responded on December 10, 2021.

Plaintiffs served their first request for production of documents on December 10, 2021 – or approximately two-and-a-half months after the discovery period opened at the end of September. Defendants responded by providing over 23,000 pages of documents in two productions: first on February 4, 2022 and a second on February 24, 2022.[3]

On February 4, 2022, the parties jointly requested, and the Court granted, a 90-day extension to all case management deadlines. ECF ## 33, 34.

### B. The Budish Subpoena and efforts to resolve the dispute.

Defendants took the deposition of Plaintiffs Tabatha Jackson and Phyllis Davis on April 14 and 19, respectively.

The following morning, on April 20, Plaintiffs' counsel sent the undersigned a one-sentence email indicating a desire to "start" with the deposition of Cuyahoga County Executive Armond Budish.[4] Besides the initial set of document requests, this email was Plaintiffs' first communication requesting any discovery.

The undersigned responded by inquiring into whether: 1) Plaintiffs believed that Mr. Budish possessed unique relevant knowledge; and 2) whether Plaintiffs would be willing to attempt to make progress on other discovery before addressing the obviously contentious issue of Mr. Budish's deposition.

---

[3] Defendants also produced 19 pages of documents concerning Ms. Jackson's 2017 incarceration in the County Jail on April 7, 2022.
[4] The email exchange between counsel is attached as Exhibit 2 and forms the factual basis of this section.

Plaintiffs' counsel responded by generally requesting available deposition dates and inquiring as to whether the undersigned represented Mr. Budish. The undersigned responded by: 1) indicating that the Cuyahoga County Prosecutor's office generally represents Mr. Budish in his official capacity[5] and that Counsel could communicate with the undersigned about the issue; 2) providing case citations indicating that depositions of high-ranking government officials are generally disfavored, absent extraordinary circumstances; and 3) inviting Plaintiffs' Counsel to further discuss the issue.

Plaintiffs did not take the undersigned up on the suggestion to discuss the matter. Instead, Plaintiffs' Counsel apparently went to Mr. Budish's home and handed his wife a deposition subpoena requiring him to appear at a deposition on May 19. Given Mr. Budish's well-known business address and counsel's willingness to communicate about the matter, this step was unnecessary.

The undersigned responded by again suggesting that the parties consider making progress elsewhere in discovery before turning to the Budish issue. Plaintiffs' Counsel responded by raising (for the first time, and in general terms) a number of disputes regarding Defendants' document production and inquiring (for the first time) about potential depositions of twelve current and former Cuyahoga County officials. Critically, Plaintiffs did not indicate whether they were willing to hold off on the Budish deposition while these new issues were addressed. Moreover, Plaintiffs indicated that "in event that we cannot reach an agreement as to [Mr. Budish], I think it's good that we know that upfront and early so we can have ample time to address it with the Court."

---

[5] Plaintiffs' Counsel apparently believed that this response was evasive as to whether the undersigned represented Mr. Budish. But the simple explanation is that the undersigned had no instructions on this point because the entire issue was new as of the previous day.

Agreement was not reached. Counsel discussed the matter by telephone on April 26, 2022. The call can be fairly described as contentious. Plaintiffs' only substantive suggestion was that the County designate another "final decision maker" with respect to a series of loosely defined policies as a substitute for Mr. Budish.[6] While this concept may have promise after the "policies" in question are sufficiently identified, Plaintiffs have unequivocally refused to withdraw the Budish subpoena unless and until Defendants agree to their demands.

With the May 19 deposition date approaching, Defendants and Mr. Budish believe it is necessary for the Court to decide whether his deposition should go forward and, if so, under what limitations.

### III. LAW AND ARGUMENT

**A. Standard of review: the Court must quash subpoenas that seek irrelevant or unduly burdensome testimony**

A court "must quash or modify a subpoena that . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3). "In addition, while the Rule itself does not list irrelevance or overbreadth as reasons for granting a motion to quash, [c]ourts… have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Plain Local School Dist. Bd. of Edn. v. Dewine*, 464 F.Supp.3d 915, 918 (S.D.Ohio 2020), citing *Duncan v. Husted*, No. 2:13-CV-1157, 2014 U.S. Dist. LEXIS 130266 at *4 (S.D. Ohio Sept. 17, 2014) (internal quotation marks and citation omitted).

---

[6] As set forth below, Plaintiffs' implicit contention that Mr. Budish is the "final decision maker" for the purposes of each and every one of their *Monell* claims is legally and factually inaccurate.

7

Here, Plaintiffs have failed to meet their burden of showing that Mr. Budish possesses unique personal knowledge about this case that cannot be obtained from another, less burdensome, source.

### B. The *Morgan* Doctrine Creates a high legal hurdle for Plaintiffs.

Plaintiffs have not noticed a normal deposition, and this is not a normal protective-order motion. When it comes to deposing someone like a high-level government official such as the Cuyahoga County Executive, the Federal Rules of Civil Procedure and decades of federal precedent impose an overwhelming presumption *against* the deposition. And it is Plaintiff's sole obligation to overcome that presumption by proving "exceptional circumstances."

That rule is called the *Morgan* doctrine. *See United States v. Morgan*, 313 U.S. 409 (1941). In that case, the district court erroneously allowed plaintiffs to depose the Secretary of Agriculture. *Id.* at 421-22. There was no doubt that the Secretary had information that was highly relevant to the dispute: the plaintiffs were challenging the price ceilings that the Secretary imposed on the Kansas City Stockyards. *Id.* at 413. And there was no doubt that the Secretary had unique personal knowledge of the facts central to the legal dispute: the Secretary personally reviewed the market evidence, personally refused evidence favorable to the plaintiffs, and personally set price ceilings that harmed the plaintiffs. *Id.* at 422. So, there is no doubt that, but for the fact that he was a high-ranking government official performing an official government act, the Secretary not only would have been deposable but also would have been the plaintiffs' star witness. Still, the Supreme Court emphatically held "the short of the business is that the Secretary should never have been subjected to this examination." *Id.*

In the 76 years since *Morgan*, high-ranking government officials' immunity from depositions has expanded to a wide variety of federal, state, and local officials.

At the federal level, the deposition immunity afforded by *Morgan* doctrine extends down to various staffers and regional administrators at the Labor Department, appeals officers at the Internal Revenue Service, regional directors for the National Labor Relations Board, and a deputy chief of staff at the Environmental Protection Agency. *See Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575 (D.C. Cir. 1985) (Labor Department staff); *Mullins v. United States*, 210 F.R.D. 629 (E.D. Tenn. 2002) (IRS appeals officers); *Ahearn v. Rescare West Virginia*, 208 F.R.D. 565 (S.D. W. Va. 2002) (NLRB regional directors); *Low v. Whitman*, 207 F.R.D. 9 (D.D.C. 2002) (EPA deputy chief of staff).

At the state and local level, the *Morgan* doctrine extends even further to university chancellors and a myriad of local officials like mayors, deputy mayors, sheriffs, police superintendents, and county commissioners. *See Overall v. Oakland Cty,* E.D. Mich 20-12869, 2022 U.S. Dist. LEXIS 21031 (Feb. 4, 2022) (county Sheriff); *Lederman v. New York City Dept. of Parks and Recreation*, 731 F.3d 199 (2d Cir. 2013) (mayor and deputy mayor); *Braga v. Hodgson*, 605 F.3d 58 (1st Cir. 2010) (sheriff); *Bogan v. City of Boston*, 489 F.3d 417 (1st Cir. 2007) (mayor); *Bituminous Materials, Inc. v. Rice County, Minn.*, 126 F.3d 1068 (8th Cir. 1997) (county commissioners); *Olivieri v. Rodriguez*, 122 F.3d 406 (7th Cir. 1997) (police superintendent); *Milione v. City University of New York*, 950 F. Supp. 2d 704 (S.D.N.Y. 2013) (chancellor), *aff'd*, 567 Fed. Appx. 38 (2d Cir. 2014); *Buono v. City of Newark*, 249 F.R.D. 469 (D.N.J. 2008) (mayor).

The rationale is that "high-ranking" officials could be burdened unduly if they were needed to submit to a deposition in the multitude of civil actions that some government agencies and businesses face. *Overall,* 2022 U.S. Dist. LEXIS 21031, at *6, citing *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007) and *In re United States*, 985 F.2d 510, 512-13 (11th

9

Cir. 1993). ("Courts have generally restricted parties from deposing high-ranking officials because (by virtue of their position) they 'are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts.'") *Id.,* citing *Sun Cap. Partners, Inc. v. Twin City Fire Ins. Co.*, 310 F.R.D. 523, 527 (S.D. Fla. 2015).

As recently articulated by a District Court in the Sixth Circuit, a high-ranking government official such as Mr. Budish should be subject to deposition only after: (1) a litigant seeking his deposition has exhausted other sources that might yield the information sought, and (2) a showing by the litigant that the official has first-hand knowledge related to the claim being litigated. *Overall,* 2022 U.S. Dist. LEXIS 21031, at *6, citing *Boudreau v. Bouchard*, E.D. Mich. No. 07-10529, 2008 U.S. Dist. LEXIS 75611 at *2 (E.D. Mich. Sept. 25, 2008); and *Greco v. Livingston Cnty.*, E.D. Mich. No. 12-12212, 2014 U.S. Dist. LEXIS 11906 at *8 (E.D. Mich. Jan. 31, 2014).

Another District Court described the "exceptional circumstances" required to obtain Budish's deposition. Plaintiffs must show (1) the official's testimony is necessary to obtain relevant information that is not available from another source; (2) the official has first-hand information that cannot reasonably be obtained from other sources; (3) the testimony is essential to the case at hand; (4) the deposition would not significantly interfere with the ability of the official to perform his government duties; and (5) the evidence sought is not available through less burdensome means or alternative sources." *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1049 (E.D. Cal. 2010).

However the *Morgan* test is defined, these Plaintiffs fail to justify their present request for Budish's deposition.

1. **<u>Plaintiffs have not exhausted other sources of potential discovery</u>**.

Plaintiffs have not even attempted to satisfy their burden of showing that they have explored other potential avenues for obtaining whatever they are looking for. Other than serving a single set of document requests, Plaintiffs have not pursued any other avenue of discovery. Plaintiffs have not served a single interrogatory or taken a single deposition.

Prior to serving a deposition subpoena on Budish, Plaintiff had not even requested to schedule a deposition of any witnesses. On April 22, 2022, the day after gratuitously serving Mr. Budish with a handwritten subpoena at his home, Plaintiff finally proposed a list of a dozen potential deposition witnesses. See Ex. 2. All are current or former County officials who Plaintiffs believe may have knowledge related to their claims. While some former employees may be difficult to locate or pose other challenges, Defendants are committed to working with Plaintiffs to depose as many of these witnesses as possible, consistent with the Federal Rules of Civil Procedure.

Plaintiffs' failure to pursue a party deposition under Fed.R.Civ.P. 30(b)(6) is particularly egregious. This requires Plaintiffs to "name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination." In turn, the County must produce one or more witnesses "knowledgeable about the subjects in the notice and to prepare that witness to testify not just to his own knowledge, but the [organization's] knowledge." *Wicker v. Lawless*, 278 F.Supp.3d 989, 1000 (S.D.Ohio 2017)(citations omitted).

Plaintiffs have provided two reasons for seeking to depose Mr. Budish: 1) his alleged knowledge of the County's broad program to regionalize a number of government services,

11

including corrections; and 2) the decision to invite the U.S. Marshal's Service to conduct a "Quality Assurance Review" of the County Jail in October and November 2018.  See Ex. 2.  Defendants are prepared to designate a witness to testify in response to a properly framed Rule 30(b)(6) notice concerning both topics and respectfully suggest that this is the most efficient way of obtaining information from the County about these topics.

Moreover, the case management plan agreed by the parties and ordered by Court (ECF ## 33, 38) specifically contemplates that the Rule 30(b)(6) would occur relatively early in the discovery process.  At a minimum, a Rule 30(b)(6) deposition (along with other discovery methods), will significantly narrow the scope and burden of any deposition of Mr. Budish, if not eliminate the need entirely.

### 2. **Plaintiffs have not shown that Mr. Budish has unique personal knowledge of any relevant issue.**

As noted, Plaintiffs suggest that Mr. Budish's deposition is necessary because they contend he was "the official with final policy-making" authority with respect to a "regionalization" plan and the decision to invite the U.S. Marshal's Service to visit the County Jail in 2018.  Mr. Budish has no **unique** knowledge of either issue.

In addition to a Rule 30(b)(6) witness, other discovery options are available. For example, the County Sheriff is responsible for the day-to-day operations of the County Jail, including "regulat[ing] the jail according to the minimum standards for jails in Ohio promulgated by the department of rehabilitation and correction."  O.R.C. § 341.01, *Loggins v. Franklin Cty,* 218 F.App'x 466, 474-475 (6th Cir. 2007).

Plaintiffs may respond with the unsubstantiated assertion that Mr. Budish, not the Sheriff, was "really" responsible for this Jail.  But Plaintiffs have not developed, or even tried to develop, evidentiary support.  To the extent that Plaintiffs would seek to point to the County's formal

organizational chart from the period, two officials were between the Sheriff's day-to-day operation of the County Jail and Mr. Budish, the elected County Executive: the Director of Public Safety (Frank Bova, then Bandy Carney) and the County Chief of Staff (Earl Leiken, then Matt Carroll). Plaintiffs could seek to depose any one of these individuals.

Moreover, any number of Corrections Officers and supervisors who actually work in the jail are far more knowledgeable than Mr. Budish about both the specific allegations by Plaintiffs, the general conditions in the jail and the policies and practices that are followed. In addition to a rule 30(b)(6) deposition, there are other more knowledgeable witnesses available.

### C. Even if the Court is not inclined to quash the Budish subpoena in its entirety, Defendants are nonetheless entitled to a protective order under Fed.R.Civ.P. 26(b)(2)(C)(1).

Even if the Court does not quash the Budish subpoena in its entirely under the *Morgan* doctrine (and it should), any deposition must be limited in duration and subject matter.

Pursuant to Fed.R.Civ.P. 26(b)(2)(C)(1), "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less expensive ***."

Here, Mr. Budish is the elected County Executive of a county containing over 1.2 million people. Approximately 4,000 employees report to Mr. Budish, ranging from social workers to road construction crews. Budish dec. at ¶ 3. Mr. Budish must be available to respond immediately to urgent inquires and emergencies. *Id.* at ¶ 4. In his position, Mr. Budish is briefed on innumerable issues, large and small. *Id.* at ¶ 7. At present, Mr. Budish is actively involved managing the still-ongoing impacts of the COVID-19 pandemic. *Id.* at ¶ 11a. In addition, Mr. Budish is working to find the most efficient allocation of federal COVID relief

13

funds and emergency rental assistance for the County's residents. *Id.* at ¶¶ 11b-11d. In addition, Mr. Budish in constantly involved in identifying and recruiting candidates to fill vacancies in several senior leadership positions throughout the County. *Id.* at ¶ 11a. These commitments represent only a portion of Mr. Budish's day-to-day responsibilities. Due to nature of Mr. Budish's elected office, most of these functions cannot be delegated to others while he sits for civil depositions.

Moreover, Cuyahoga County is currently party to multiple lawsuits at various stages of litigation. Many involve the *Monell* claims. Many involve the County Jail. Many involve issues that Mr. Budish discussed with subordinates or approved decisions. If Mr. Budish could be compelled to sit for, and prepare for, the kind of seven-hour, first-out-of-the box deposition about County policy that Plaintiffs propose here in every one of these cases, he would do nothing else.

Under the circumstances, the Court should appropriately limit any deposition of Mr. Budish to matters about which he has unique personal knowledge and limited in time. The deposition should take place only after Plaintiffs have reasonably narrowed the scope using other discovery methods.

Other courts in the Sixth Circuit have adopted this approach, even when they did not quash the subpoena in its entirety. For example, in *Plain Local Sch. Dist. Bd. of Educ. V. Dewine,* Judge Watson ordered that Plaintiffs begin with twenty deposition questions to a group of state legislators. 464 F.Supp.3d 915, 924 (S.D. Ohio 2020). Each legislator could either answer the question or "specifically direct Plaintiffs to where the information is available from another source." *Id.* A judge of the Eastern District of Michigan limited the deposition of the Secretary of State in an election dispute to two hours. *Powell v. Benson*, E.D.Mich. No. 20-cv-

11023, 2020 U.S.Dist.LEXIS 210876, at *10 (Aug. 30, 2020). See also: *Turner v. City of Detroit*, E.D.Mich. No. 11-12961, 2012 U.S.Dist.LEXIS 146416, at *6 (Oct. 11, 2012)(limiting deposition of Mayor of Detroit to one hour).

Similarly, if permitted to go forward at all, Mr. Budish's deposition must be similarly limited in duration. Moreover, Plaintiffs should be required to pursue other discovery procedures first, such as completing a Fed.R.Civ.P. 30(b)(6) deposition including topics that they propose to put to Mr. Budish.

### D. The subpoena should be quashed for technical non-compliance.

Plaintiffs' subpoena must also be quashed for technical non-compliance with Fed.R.Civ.P. 45. The subpoena apparently does not contain the text of Fed.R.Civ.P. 45(d) and (e) as required by Rule 45(a)(1)(iv). Budish Dec. at ¶ 8. Attendance fees were apparently not tendered as required by Rule 45(b)(1). *Id.* Defendants and Mr. Budish also do not believe Plaintiffs complied with N.D. Ohio Local Rule 30.1(b)(1), which requires counsel must make a good faith effort to schedule depositions prior to issuing a subpoena. Notwithstanding the above, Defendants are confident that a mutually agreeable date can be identified if this motion is denied (in whole or in part).

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' premature and burdensome subpoena directed to County Executive Armond Budish must be quashed or modified.

**CERTIFICATE OF COMPLIANCE WITH FED.R.CIV.P. 37 AND LOC.R 37.1**

I certify that I have made a sincere effort to resolve this discovery matter without Court intervention and file this motion in order to provide the Court enough opportunity to timely consider it prior to the deposition noticed for May 19, 2022.

                                          */s/ Michael J. Stewart*
                                          Michael J. Stewart (0082257)
                                          Assistant Prosecuting Attorney

**CERTIFICATE OF COMPLIANCE WITH LOC.R 7.1**

I certify this memorandum complies with the page limitations set forth in Local Rule 7.1 for cases assigned to the standard track.

                                          */s/ Michael J. Stewart*
                                          Michael J. Stewart (0082257)
                                          Assistant Prosecuting Attorney