**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| **TABATHA JACKSON, et al.,** ) | |
| ) | **CASE NO.: 1:20-cv-02649** |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **JUDGE: CHARLES E. FLEMING** |
| ) | |
| **CUYAHOGA COUNTY, OHIO, et al.** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| ) | |

_____

**DEFENDANT CUYAHOGA COUNTY'S**
**RENEWED MOTION TO STRIKE CLASS ALLEGATIONS**
_____

Now comes Defendant Cuyahoga County and respectfully renews its motion to strike Plaintiffs' class allegations for monetary relief from this case.  Plaintiffs Tabatha Jackson and Phyllis Davis seek to represent a class of "all female detainees or prisoners who were held in the Cuyahoga County Corrections Center ("CCCC") from October 23, 2018 until October 23, 2020." (FAC, ECF # 20 at ¶ 23(b)).

After an opportunity to conduct discovery, Plaintiffs cannot sustain their burden of certifying a class under Fed.R.Civ.P. 23.  The remaining class allegations in this case must be permanently stricken.

A Memorandum in Support is attached hereto.

Respectfully submitted,
MICHAEL C. O'MALLEY, Prosecuting
Attorney of Cuyahoga County, Ohio

By:    /s/ *Michael J. Stewart*
Michael J. Stewart (0082257)
mjstewart@prosecutor.cuyahogacounty.us
Phone: (216) 443-6673
Brendan D. Healy (0081225)
bhealy@prosecutor.cuyahogacounty.us
Phone: (216) 698-6447
Matthew Convery (0095704)
mconvery@prosecutor.cuyahogacounty.us
Phone: (216) 443-7763
CUYAHOGA COUNTY PROSECUTOR'S
OFFICE
The Justice Center, Courts Tower
1200 Ontario Street, 8th Floor
Cleveland, OH  44113
Fax: (216) 443-7602

*Attorneys for Defendant Cuyahoga County and Randy Pritchett*

# TABLE OF CONTENTS

I.  ISSUE TO BE DECIDED ................................................................................................ 1

II.  SUMMARY OF THE ARGUMENT ............................................................................. 1

III.  RELEVANT FACTUAL AND PROCEDURAL ISSUES ............................................ 1

   A.  Initial motion practice concerning class issues.............................................................. 1

   B.  Plaintiffs do not pursue discovery with respect to class certification............................. 3

   C.  The evidentiary record relevant to this motion.............................................................. 4

IV.  LAW AND ARGUMENT .............................................................................................. 6

   A.  Standard of Review: either the Plaintiff or the Defendant may request a determination about whether a class action is appropriate at any time, but Plaintiff bears the burden of affirmatively showing certification is appropriate. ............................................................................. 6

   B.  Plaintiffs are inadequate class representatives because they lack valid individual claims to the extent this Court grants Defendants' Motion for Summary Judgement............................... 7

   C.  Plaintiffs fail to satisfy the requirements of Fed.R.Civ.P. 23(a) ..................................... 7

     1.  Numerosity: Fed.R.Civ.P. 23(a)(1) ...................................................................... 8

     2.  Commonality Fed.R.Civ.P. 23(a)(2) and Typicality Fed.R.Civ.P. 23(a)(3). ............... 8

       a)  Noisy conditions. ...................................................................................... 10

       b)  Having to sleep on thin mats on the floor. ............................................... 11

       c)  Spoiled food, moldy trays and food with insects...................................... 11

       d)  Cloudy water............................................................................................ 12

       e)  Environment with human feces and urine ................................................. 13

       f)  Environment infested with insects ............................................................ 14

     3.  Adequacy: Fed.R.Civ.P. 23(a)(4) ........................................................................ 14

       a)  Jackson and Davis demonstrated a serious lack of familiarity with the lawsuit at their depositions. ............................................................................................. 15

       b)  Plaintiffs' counsel does not meet the adequacy requirement................................. 16

   D.  Plaintiffs' proposed class is not maintainable under Fed.R.Civ.P. 23(b)(3)................................ 17

V.  CONCLUSION............................................................................................................. 20

CERTIFICATION OF COMPLIANCE WITH L. R. 7.1(f)....................................................... 21

CERTIFICATE OF SERVICE ............................................................................................... 21

# **TABLE OF AUTHORITIES**

## **CASES**

*American Pipe & Construction Co. v. Utah,*
   414 U.S. 538 (1974) ................................................................................. 6

*Beattie v. CenturyTel, Inc.,*
   511 F.3d 554 (6th Cir.2007) ...................................................................... 14

*Comcast Corp. v. Behrend,*
   589 U.S. 27 (2013) ................................................................................... 18

*Dearduff v. Washington,*
   330 F.R.D. 452 (E.D. Mich. 2019) ............................................................ 19

*Glass v. Tradesmen Internatl., LLC,* N.D.Ohio No. 5:19-CV-01331,
   2020 U.S. Dist. LEXIS 228052 (Dec. 4, 2020) ........................................ 7

*Grissom v. Antero Resources Corp.,* S.D.Ohio No. 2:20cv02028,
   2022 U.S. Dist. LEXIS 140071 (Aug. 6, 2022) ........................................ 9

*Harrison v. Montgomery Cty.,* S.D.Ohio No. 3:19-cv-288,
   2022 U.S. Dist. LEXIS 122525 (July 11, 2022) ....................................... 6

*Hutto v. Finney,*
   437 U.S. 678 (1978) ................................................................................. 18

*Jetter v. City of Cincinnati,* S.D.Ohio No. 1:20cv581,
   2021 U.S. Dist. LEXIS 187839 (Sep. 30, 2021) ...................................... 8

*Kensu v. Mich. Dep't of Corrections,* E.D.Mich. No. 18cv10175
   2020 U.S. Dist. LEXIS 61590 (Apr. 8 2020) ............................................ 8

*Lossia v. Flagstar Bancorp., Inc.,*
   895 F.3d 423 (6th Cir. 2018) .................................................................... 7

*McNamee v. Nationstar Mtge. LLC,* S.D.Ohio No. 14-1948
   2020 U.S.Dist.LEXIS 229514 (Dec. 7, 2020) .......................................... 16

*Monell v. New York City Dep't of Social Service,*
   436 U.S. 658 (1978) ................................................................................. 19

*Moore v. Morgan,* S.D.Ohio No. 1:16-cv-655,
   2019 U.S. Dist. LEXIS 233063 (Sep. 6, 2019) .... 9, 10, 11, 122019 U.S. Dist. LEXIS 233063 (Sep. 6, 2019) ................................................................. 9, 10, 11, 12, 18

*Phillips v. Sheriff of Cook Cty.,*
   828 F.3d 541 (7th Cir. 2016) .................................................................... 19

*Portis v. City of Chicago,*
    613 F.3d 702 (7th Cir.2010) .......................................................................... 19

*Rikos v. Procter & Gamble Co.,*
    799 F.3d 497 (6th Cir. 2015) ......................................................................... 9

*Russell v. Forster & Garbus, LLP,* E.D.N.Y. No. 17-CV-4274,
    2020 U.S.Dist.LEXIS 45299 (Mar. 16, 2020) ............................................ 16

*Salem v. Mich. Dep't of Corrections,* E.D. Mich. No. 13cv14567,
    2019 U.S. Dist. LEXIS 157460 (Sept. 16, 2019) ....................................... 19

*Sandusky Wellness Ctr., Ltd. Liab. Co. v. ASD Specialty Healthcare, Inc.,*
    863 F.3d 460 (6th Cir. 2017) ....................................................................... 20

*Sawyer v. KRS Global Biotechnology, Inc., S.D.Ohio No. 1:16cv550,*
    2018 U.S. Dist. LEXIS 150586 (Sep. 5, 2018) ............................................. 6

*Schilling v. Kenton Cty,* E.D.Ky No. 10-143
    2011 U.S. Dist. LEXIS 8050 ....................................................................... 19

*Schonton v. MPA Granada Highlands LLC, D.Mass. No. 16-cv-12151,*
    2019 U.S.Dist.LEXIS 56502 (Apr. 2, 2019) .............................................. 16

*Woodall v. Wayne Cty,* 6th Cir. No. 20-1705
    2021 U.S. App. LEXIS 34149 (Nov. 15, 2021) .................................. 8,9, 20

*Zehentbauer Family Land, LP v. Chesapeake Expl., L.L.C.,*
    935 F.3d 496 (6th Cir. 2019) ....................................................................... 18

## RULES

Fed.R.Civ.P. 23 ................................................... 1, 2, 3, 6, 7, 8, 9, 13, 14, 17, 18, 20

Fed.R.Civ.P. 30 ........................................................................................................ 4, 5

## I.     ISSUE TO BE DECIDED

Whether, after a full opportunity to conduct discovery, Plaintiffs can establish that their proposed class of all female inmates incarcerated at the Cuyahoga County Corrections Center between October 2018 and October 2020 can be certified under Fed.R.Civ.P. 23.

## II.    SUMMARY OF THE ARGUMENT

At the outset of this case, Defendants sought to strike Plaintiffs' proposed class allegations concerning nine separate "conditions" at the Cuyahoga County Corrections Center ("CCCC") ranging from noise levels to pest control.  Plaintiffs seek to certify a class consisting of all female inmates incarcerated between October 2018 and October 2020.  Defendants argued that the need to make individual determinations about whether conditions encountered by individual class members rose to the level of constitutional violations, or just the inevitable unpleasantness associated with incarceration.  While the Court expressed doubts about the breadth of Plaintiffs' proposed class, it declined to strike Plaintiffs' proposed "damages" class at the outset.

After a full opportunity to conduct discovery, the record establishes that Plaintiffs' proposed class is hopelessly overbroad in terms of time frame and conditions.  Even if the Court declines to grant Defendants' contemporaneous motions for summary judgment, the class allegation must be stricken.

## III.   RELEVANT FACTUAL AND PROCEDURAL ISSUES

### A.     Initial motion practice concerning class issues.

Plaintiffs originally filed their class action complaint in state court on October 23, 2020. (Cmplt., ECF # 1-1).  In addition to individual claims related to medical treatment (*Id.* at ¶¶ 57-82) and Jackson's allegations of excessive force against a corrections officer (*Id.* at ¶¶ 83-97), Plaintiffs assert class-action claims related to alleged unconstitutional conditions at CCCC (*Id.* at ¶¶ 18-40).

1

In their Complaint and Amended Complaint, Plaintiffs allege nine specific issues related to food, sanitation and other items[1] were consistently constitutionally deficient. (Cmplt., ECF # 1-1 at ¶ 23; FAC, ECF # 20 at ¶ 23). In their Complaint, Plaintiffs sought class certification under two theories: for injunctive relief under Fed.R.Civ.P 23(b)(2) and for monetary relief under Rule 23(b)(3).

Defendants timely removed the case to federal court and the case was assigned to the docket of Judge Pamela Barker. (Notice of Removal, ECF # 1). Based on the initial pleadings, Defendants sought to strike all class allegations from the case. (Motion to Strike, ECF # 10). Judge Barker substantially granted Defendants' motion. (Memorandum Order, ECF # 18). As former inmates who failed to allege any danger of future harm, Jackson and Davis lacked standing to pursue prospective injunctive relief. (*Id.* at pp. 20-23). Moreover, Plaintiffs' monetary-relief subclass was inappropriate because they initially limited their class definition only to those who encountered "unconstitutional" conditions. (*Id.* at pp. 24-26). As such, the proposed class was improperly "fail safe" because determining membership in the class necessarily also required the Court to adjudicate the merits of each class member's claim. (*Id.*)

However, Judge Barker permitted Plaintiffs an opportunity to amend the proposed class definition to address the "fail-safe" problem. (*Id.* at pp. 26-27). In response, Plaintiffs filed an amended complaint, which proposed a class consisting of "all female[s] *** held in [CCCC] between October 23, 2018 until October 23, 2020." (FAC, ECF # 20 at ¶ 23(b)). Defendants again sought to strike the class allegation, arguing that a class of "all female inmates" was inherently overbroad and included individuals who encountered a wide variety of conditions over a two-year

---

[1] Plaintiffs express dissatisfaction with noisy conditions, thin mats, spoiled food, moldy food, food containing insects, cloudy water, environment contaminated by urine and feces, and an environment contaminated by insects.

period of time.  (2d Motion to Strike, ECF # 21 at pp. 6-7).  Plaintiffs responded by repeatedly suggesting that the entire issue of class certification under Fed.R.Civ.P. 23 was premature and should be resolved only after discovery and with "rigorous analysis."  (Response, ECF # 26, pp. 2-4, 8-9).

Judge Barker agreed with Plaintiffs that any ruling on class certification should be deferred until after discovery.  (Memorandum Order, ECF #26).  While "Plaintiffs proposed amended class definition was indeed broad *** [it] is not irreparably defective."  (*Id.* at p. 5).  That is, Judge Barker found it "premature" to strike class allegations prior to discovery.  (*Id.* at p. 7).

**B.**     **Plaintiffs do not pursue discovery with respect to class certification.**

Judge Barker conducted the initial Case Management Conference on September 27, 2021 and approved the parties' proposal to complete discovery on dispositive motions and Plaintiffs' anticipated motion for class certification by the summer of 2022, with briefs to be filed on August 1, 2022. (ECF # 31).

Plaintiffs served their first request for production of documents on December 10, 2021 – or approximately two-and-a-half months after the discovery period opened at the end of September. Defendants responded by providing over 23,000 pages of documents in two productions: first on February 4, 2022 and a second on February 24, 2022.  Defendants have produced additional documents, mostly Plaintiffs' medical records, in two additional productions in the summer and fall of 2022.

On February 4, 2022, the parties jointly requested, and the Court granted, a 90-day extension to all case management deadlines. (ECF ## 33, 34).  Defendants took the deposition of Plaintiffs Tabatha Jackson and Phyllis Davis on April 14 and 19, 2022 respectively.  Two days later, on April 21, Plaintiffs filed a unilateral motion for a further 90-extension of all deadlines,

citing the death of Plaintiff's counsel's mother in February.[2]  (ECF # 36). The Court granted Plaintiffs' request for an extension on April 28, but indicated that it "[would] not grant future requests for extension without exceptional circumstances"." (ECF # 38).

Meanwhile, on May 19, 2022, Plaintiffs' counsel personally served a deposition subpoena on former County Executive Armond Budish at his home.  (ECF # 39-1).  Defendants, along with Mr. Budish, sought to quash the subpoena on the grounds the Federal Rules of Civil Procedure and decades of federal precedent impose an overwhelming presumption against the deposition of a high-ranking government official such as Mr. Budish absent extraordinary circumstances, including exhausting other means of discovery.  (ECF # 39).  The Court quashed the Budish subpoena without prejudice to revisit the issue after Plaintiff had pursued other discovery means, particularly a deposition of Cuyahoga County pursuant to Fed.R.Civ.P. 30(b)(6).[3]  (ECF # 43).

Beyond responding to a discovery dispute letter in May 2022, Plaintiffs appear to have taken no further action to prosecute this matter.  Plaintiffs have not pursued additional written discovery, requested any additional depositions or prosecuted any of the discovery disputes to which they generally alluded in Spring 2022. (ECF# 39-2).

Other thanthan their own deposition testimony and the November 2018 U.S. Marshals Report, Plaintiffs have not developed any evidence supporting class certification since Judge Barker originally addressed the issue in 2021.

Now that discovery is closed, Defendantsrespectfully request that the putative class allegations should be stricken from the record, with prejudice.

### C.    <u>The evidentiary record relevant to this motion.</u>

---

[2] The April 21, 2022 motion was the first Defendants heard of either the passing of Plaintiffs' Counsel's mother or Plaintiffs' desire to extend the discovery timeline.
[3] The deadline for which had recently been reset to August 13, 2022.

With this motion, Defendants file the deposition transcripts of Plaintiffs Jackson and Davis. Both women repeatedly testified that they do not have any personal knowledge of conditions at CCCC in locations or at times that they did not personally observe. (See, e.g.: Jackson 142:17, 137:3, 147:23, 176:3, 191:15, 203:5; Davis 95:2, 99:5, 104:2, 105:6, 107:12).

Defendants also file the declarations of two Associate Wardens at CCCC, Damara Shemo and Philip Christopher.  Shemo describes how the jail's approach to sanitation, food service, and other "conditions" identified by Plaintiffs evolved between October 2018 and October 2020.  For example, CCCC replaced all of the mattresses and food trays used throughout the facility during this time period.  (Shemo dec. at ¶¶ 7, 8f).  Christopher outlines Plaintiffs' housing classification and a few other critical facts.

Defendants also present the unrebutted expert report of Donald Leach, whose forty-year career in corrections spans from working as a Corrections Officer, to corrections administration and consulting.  (Leach rpt. at pp. 1-2).  Leach's report is helpful to this motion for two reasons. First, Leach personally visited and inspected the CCCC as early as February 2019 and did not observe the alleged deficiencies described in the Complaint.  (*Id.* at 41-59).  Moreover, with few exceptions, Leach did not observe many of the specific issues identified in the 2018 "U.S. Marshals' Report" attached to Plaintiffs' First Amended Complaint. (ECF # 20-1).  Second, Leach offers his expert opinion, based on his training and experience in corrections, regarding some of the disputed conditions.

Plaintiffs will likely respond by pointing to the 2018 "U.S. Marshals' Report" and certain testimony from the criminal trial of former Jail Administrator Ken Mills.  Even if this material is admissible at the present stage of this case, and Defendants maintain that it is not, it is irrelevant to the class that Plaintiffs seek to certify.  The "U.S. Marshals' Report" was based on an inspection

on October 30 and November 1, 2018. (ECF # 20-1 at PageID# 314). Ken Mills had nothing to do with CCCC after November 2018. (Christopher dec. at ¶ 3).

## IV.    LAW AND ARGUMENT

### A.    Standard of Review: either the Plaintiff or the Defendant may request a determination about whether a class action is appropriate at any time, but Plaintiff bears the burden of affirmatively showing certification is appropriate.

The party seeking certification of a class action bears the burden of affirmatively demonstrating compliance with Fed.R.Civ.P. 23. *Sawyer v. KRS Global Biotechnology, Inc.*, S.D.Ohio No. 1:16cv550, 2018 U.S. Dist. LEXIS 150586, at *6 (Sep. 5, 2018), citing *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011).

A motion to strike class allegations is authorized by Fed.R.Civ.P. 23(c)(1)(A) and "a defendant may freely move for resolution of the class certification question whenever it wishes." *Harrison v. Montgomery Cty*., S.D.Ohio No. 3:19-cv-288, 2022 U.S. Dist. LEXIS 122525, at *4-5 (July 11, 2022), citing *Pilgrim v. Universal,* 660 F.3d 943, 949 (6th Cir. 2011). "Either plaintiff or defendant may move for a determination of whether the action may be certified under Rule 23(c)(1)," and the court is not "obliged to wait for a motion" for class certification by the Plaintiff in order to decide whether a class may be certified." *Id.*

At the end of discovery, Defendants request an immediate determination of the class questions. Allowing such broad class allegations to continue to hang over Defendants results in manifest prejudice. While the issue is complicated, a future Plaintiff may argue that the unresolved class allegations toll otherwise long-expired statutes of limitations for thousands of former inmates. *See American Pipe & Construction Co. v. Utah,* 414 U.S. 538 (1974) and its progeny.

Based on the allegations in the pleadings, Defendants' expert reports, and controlling caselaw, Plaintiffs cannot meet the requirements of Fed.R.Civ.P. 23 necessary to certify the "all

female inmates" class defined in the first amended complaint.  The deadlines for conducting discovery and amending the class definition have passed.  (ECF # 38).  This case cannot proceed as a class action.

### B.    Plaintiffs are inadequate class representatives because they lack valid individual claims to the extent this Court grants Defendants' Motion for Summary Judgement.

Named plaintiffs must possess a valid individual claim and cannot serve as representatives of a class if they are not members. *Lossia v. Flagstar Bancorp., Inc.,* 895 F.3d 423, 431 (6th Cir. 2018), citing *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). Contemporaneously with this motion, Defendants seek summary judgment on Jackson's and Davis's individual claims.  To the extent that the Court grants this motion, Jackson and Davis cannot serve as class representatives and class certification must be denied.

### C.    Plaintiffs fail to satisfy the requirements of Fed.R.Civ.P. 23(a)

In order to seek monetary relief on a class-wide basis, Plaintiffs must establish that the proposed class meets all four prerequisites of Fed.R.Civ.P 23(a) (numerosity, commonality, typicality and adequacy) as well as that the class is maintainable under at least one provision of Fed.R.Civ.P. 23(b).  *Glass v. Tradesmen Internatl., LLC*, N.D.Ohio No. 5:19-CV-01331, 2020 U.S. Dist. LEXIS 228052, at *31-32 (Dec. 4, 2020), quoting *Dukes*, 564 U.S. at 350.

To pursue monetary relief under Fed.R.Civ.P. 23(b)(3), Plaintiffs must also demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available method[s]" e.g. "predominance" and "superiority."

Each requirement will be addressed in turn.

1.    <u>Numerosity: Fed.R.Civ.P. 23(a)(1)</u>

Pursuant to Fed.R.Civ.P. 23(a)(1), "the class is so numerous that joinder of all members is impracticable." There is no strict numerical test for numerosity, however a class of forty or more members will typically satisfy the numerosity requirement. *Jetter v. City of Cincinnati*, S.D.Ohio No. 1:20cv581, 2021 U.S. Dist. LEXIS 187839, at *27 (Sep. 30, 2021) citing *Dillow v. Home Care Network, Inc.*, No. 1:16cv612, 2017 U.S. Dist. LEXIS 85788, at *2 (June 5, 2017).

Defendants concede that more than forty women were incarcerated at CCCC between October 2018 and October 2020. However, as noted below, such as class is grossly overinclusive because it contains numerous individuals without valid constitutional claims.

2.    <u>Commonality Fed.Civ.P. 23(a)(2) and Typicality Fed.R.Civ.P. 23(a)(3).</u>

Plaintiffs cannot meet the "commonality" requirement of Fed.R.Civ.P. 23(a)(2) and "typicality" requirement of Fed.R.Civ.P. 23(a)(3). These two requirements "tend to merge." *Woodall v. Wayne Cty.*, 6th Cir. No. 20-1705, 2021 U.S. App. LEXIS 34149, at *9 (Nov. 15, 2021), quoting *Dukes,* 564 U.S. at 350.

Commonality requires a plaintiff to "identify a 'common contention' that is 'capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Kensu v. Mich. Dep't of Corrections*, E.D.Mich. No. 18cv10175, 2020 U.S. Dist. LEXIS 61590 at *30 (Apr. 8, 2020)*,* quoting *Dukes*, 564 U.S. 338. The Supreme Court has clarified that it is not enough that a class raises common questions. *Id.,* citing *Wal-Mart*, 564 U.S. at 350. "Rather, what matters to class certification is whether a class action would generate common answers apt to drive the resolution of the litigation." *Id*.

8

"Typicality" involves an inquiry whether the "claims of the representative parties are typical of the claims *** of the class." Fed.R.Civ.P. 23(a)(3).  Claims are not typical when "[a] named plaintiff who proved his own claim would not necessarily have proved anybody else's claim." *Woodall,* 2021 U.S.App.LEXIS 34149 at *9 quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).   The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class.  *Id.*

When a court reviews class certification, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Grissom v. Antero Resources Corp.*, S.D.Ohio No. 2:20cv02028, 2022 U.S. Dist. LEXIS 140071, at *6 (Aug. 6, 2022); *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015).

Here, Plaintiffs suggest that a series of nine "inhumane" and "unconstitutional" conditions present sufficient common questions to satisfy Fed.R.Civ.P 23(a)(3).  These "conditions" involve diverse issues such as food, sleeping arrangements and exposure to rodents.  These conditions allegedly violated the Eighth and Fourteenth Amendments.  (FAC, ECF # 20 at ¶¶ 18-20).

As outlined in Defendants' contemporaneous motion for summary judgment, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Moore v. Morgan*, S.D.Ohio No. 1:16-cv-655, 2019 U.S. Dist. LEXIS 233063 at *18 (Sep. 6, 2019), citing *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).  Rather, "[t]he Eighth Amendment is concerned only with deprivations of essential food, medical care, or sanitation, or other conditions intolerable for prison confinement." *Id.,* citing *Richmond v. Settles*, 450 F.App'x 448, 455-56 (6th Cir. 2011).  To establish a constitutional violation, a plaintiff must first demonstrate objectively the unique deprivation of

9

"the minimal civilized measure of life's necessities." *Id.,* quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). She then must subjectively show the defendant acted "wantonly," and with "deliberate indifference to the plaintiff's serious needs." *Id.*, citing *Farmer*, 511 U.S. at 834.

As outlined in Defendants' contemporaneous motion for summary judgment, Jackson and Davis cannot present any evidence suggesting they suffered serious deprivations of life's essentials, as opposed to the inevitable inconveniences associated with incarceration. Even if Plaintiffs survive summary judgment on one or more of their individual claims, certification of a class of all female inmates at CCCC between October 2018 and October 2020 must fail. Plaintiffs have no evidence of conditions at CCCC other than their own experiences, which tend to avary considerably by pod or location. Just as importantly, due to COVID-19, changes in administrative personnel, response to the 2018 U.S. Marshals' Report and other factors, the nine "conditions" identified by Plaintiffs also varied considerably over time. Each "condition" will be addressed briefly.

### a) <u>Noisy conditions.</u>

As Leach observed, jails necessarily involve large numbers of individuals housed together and it is not surprising that Plaintiffs found CCCC to be noisier than they would expect to find at home. (Leach rpt. p. 45). The noise level varies considerably by location. Dormitories, where inmates are housed on bunks, tend to be louder on average than pods with individual cells due to the open housing arrangements. (Leach rpt. p. 44). Medical and psychiatric units tend to be louder due to the needs of the inmates housed there. *Id*. Jails are louder during the day than overnight when most inmates are sleeping. *Id*. Booking areas are quiet during the day, but quite noisy during nights and weekends when new inmates are booked. *Id*. Noise sampling performed in 2021 revealed significant difference in noise level based on location and time of day. (Leach rpt. p. 45).

Women's housing units were considerably quieter than male units. *Id.* Moreover, housing units in Jail 2 (opened in 1994) were considerably quieter than comparable units in Jail 1 (opened 1977) due to the differences in construction materials utilized. *Id.*

Even if Jackson and Davis experienced unacceptably noisy conditions when housed primarily in the Jail 1 medical unit in late-2018 and early-2019, they cannot present evidence that all female inmates at CCCC between 2018 and 2020 experienced the same noisy conditions.

**b)**     **Having to sleep on thin mats on the floor.**

Between 2018 and 2020, CCCC replaced nearly every mattress at the facility through a "mattress exchange" program. (Shemo dec. at ¶ 7b). CCCC regularly purchases new mattresses from a reputable vendor, ICS jail supply. *Id.* at ¶ 7a. Inmates are issued new mattresses during the booking process and is provided periodic opportunities to clean their mattresses during their stay. *Id.* at ¶ 7d-7d.

Leach opines that the mattresses that he observed at CCCC in February 2019 were 30-inches wide and were typical within the industry standard. (Leach rpt. p. 46). Moreover, a typical double-bunked cell at CCCC during Leach's inspections in early 2019 was arranged so that one inmate slept on mattress situated on a bedframe and the second inmate slept on a similar mattress situated on the floor. (Leach rpt., photos, p. 47). Finally, some inmates with medical needs were provided two mattresses. *Id.* Even if Jackson and Davis establish that they slept on an unconstitutionally "thin mattress on the floor" every night during their stay, approximately half of their proposed class members did not.

**c)**     **Spoiled food, moldy trays and food with insects.**

As an initial matter, Jackson testified that they she did not eat the food served at CCCC and instead chose to buy products from the commissary. (Jackson 157:21-25). Davis testified that

she shared Jackson's commissary food during the period that they shared a cell.  (Davis 107:2-107:6).  Davis also testifiedtestified that she refused to eat the food at CCCC.  (Davis 109:24-110:7).  Jackson and Davis cannot have "typical" claims concerning the constitutionality of a food service that they did not use.  Plaintiffs certainly can produce no evidence to this effect.

Moreover, to the foodfood issue, there has been significant variation in food service at CCCC between late 2018 and 2020.  In 2019, CCCC significantly remodeled its kitchen, including the purchase of all new dishwashing equipment and ovens.  (Shemo dec. at ¶ 8b).  Substantially all of the reusable food trays have been replaced.  *Id.* at ¶ 8f.

In 2020, the County contracted with Trinity Services Group ("Trinity") to provide food services at CCCC.  *Id.* at ¶8a.  "Trinity is a reputable company, probably second nationally *** in providing food and commissary services to correctional agencies."  (Leach rpt. at p. 48).  Trinity has implemented entirely new menus and has taken over the responsibility to ensure that they are appropriately reviewed by nutritionists.  (Shemo dec. at ¶ 8a).

Finally, the COVID-19 pandemic temporarily affected food service at CCCC.  (Shemo dec. at ¶ 8c).  Instead of using pre-plated meals on plastic trays, CCCC served food "buffet style" onto plastic trays in each pod.  *Id.*  This procedure minimized the number of individuals outside of each pod who had contact with the food.  *Id.*  Even after the pandemic passed, CCCC retained "buffet style" service in some areas.  *Id.* at ¶8e.

In short, between late 2018 and early 2020, CCCC was serving food from new menus, off new trays, from a new kitchen, and utilized entirely different procedures.

### d)      Cloudy water

12

Even if Jackson and Davis's claims concerning cloudy water survive summary judgement, and they should not, Plaintiffs present no evidence supporting a class-wide problem between 2018 and 2020.

Testing performed between October 2017 and March 2020 showed that the water at CCCC was free of harmful bacteria and safe for human consumption.  (Leach rpt. pp. 51-52). Jackson testified that she was not aware of testing showing otherwise.  (Jackson 176:14-18).  Davis claims that she did not drink the water at CCCC because it was discolored.  (Davis 113:3-8).

Plaintiffs are unable to present evidence of problems with the water at CCCC, beyond their own experiences, sufficient to support the commonality and typicality requirements of Fed.R.Civ.P. 23.

### e)    Environment with human feces and urine

Jackson and Davis have no evidence of widespread problems with urine and feces at CCCC, either their physical presence or odor.  While these problems do sometimes occur at CCCC, like any corrections facility, the policy is to clean them as promptly as possible.  (Shemo dec. at ¶10e).  In addition, these incidents are not evenly distributed.  As Leach notes, these problems are more prevalent in mental health housing units and medical units, due to the inmates housed in these areas.  (Leach rpt. at pp. 52-53).  Both Jackson and Davis spent the majority of their time at CCCC in the female medical pod on the Sixth Floor.  (Christopher dec. at ¶¶ 8-9).

Leach also notes that he did not observe or smell conditions in which inmates were allowed to reside in their own waste during his first site visit in February 2019, or in any subsequent visit. (Leach rpt. at p. 53).

Critically, CCCC has placed additional emphasis on cleaning and sanitation in 2019 and 2020, including the purchase and regular replacement of cleaning equipment and greater

documentation and accountability.  (Shemo dec. ¶ 10).  Moreover, CCCC implemented even more stringent cleaning procedures at the outbreak of COVID-19.  *Id*. at ¶ 10d, Ex. 3.

### f)        Environment infested with insects

CCCC maintains a contract with Orkin Pest Control services to eliminate and control insects and other pests.  (Shemo dec. at ¶ 9a).  Orkin routinely services CCCC every two weeks and is called out for additional visits on an as-needed basis.  *Id*. at ¶ 9b.  In addition, since 2018, CCCC has implemented a practice of more regularly treating drains throughout the jail with foam pesticides to control nits that tend to breed in plumbing.  *Id.* at ¶ 9c

Leach did not observe pests outside of the food service area during his visit in February 2019.  (Leach rpt. at p. 5).  Leach also reviewed multiple pest-control logs maintained at CCCC and opined that "CCCC has taken an acceptable correctional approach to managing pests within the jail."  *Id.* at p. 56.

Plaintiffs have no evidence of the kind of widespread problems with pest control at CCCC between 2018 and 2020 sufficient to support the commonality and typicality requirements in Fed.R.Civ.P. 23(a)(2) and 23(a)(3).

### 3.       Adequacy: Fed.R.Civ.P. 23(a)(4)

The "adequacy" inquiry under Rule 23(a)(4) involves both the proposed class representative and class counsel.  That is, the Court inquires whether: 1) class counsel are qualified, experienced and generally able to conduct the litigation; 2) the representative must have common interests with unnamed members of the class, and 3) it appears that the representatives will vigorously prosecute the interests of the class through qualified counsel. *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 562-563 (6th Cir.2007)(citations omitted).

With respect to (2), and as noted above, Jackson's and Davis's individual claims suffer from significant dissimilarity from many of the absent class members who they seek to represent. Moreover, neither the named Plaintiffs nor counsel meet the adequacy requirement.

### a)  Jackson and Davis demonstrated a serious lack of familiarity with the lawsuit at their depositions.

Jackson and Davis are inadequate class representatives. At their depositions, Jackson and Davis were not familiar with this lawsuit, their lawyers, or their duties as class representatives.

 Jackson testified that she believes the class claims revolve around issues involving medical care, conditions of confinement and use of excessive force. (Jackson 8:20-8:25). In her First Amended Complaint, Jackson seeks class treatment only for her "conditions of confinement" claims. ECF# 20.  Jackson could not identify the Court in which the action is pending in or identify the presiding judge. (Jackson 14:22-15:2). At her deposition, Jackson could not remember if she ever met lead class counsel (Mr. Zipkin), nor was she aware that he was one of her attorneys. (Jackson 19:24-20:21). After a break in the deposition (when Jackson had the opportunity to speak with counsel), she testified that she had indeed met Mr. Zipkin on one occasion and "remembered" that he was one of her attorneys. (Jackson 36:7-36:14). In any case, Jackson did not know if lawyers had hired any experts or issued subpoenas. (Jackson 16:17-16:23). Jackson was entirely unfamiliar with two, and only vaguely familiar with one, of the individual defendants against whom she initially asserted class claims at the outset of this litigation. (Jackson 52:8-52:20).

Davis could identify Mr. Zipkin as one of her attorneys, but had only met him on one occasion.  (Davis 84:10-84:20).  Davis had contact with Mr. Gross on approximately three additional occasions. (Davis 84:20-84:23). At the time of her deposition, Davis was also unaware

of Judge Barker's decisions dismissing the individual defendants and striking the subclass seeking injunctive relief.   (Davis 84:6-84:9).

Worse, Jackson initially testified that she was not aware that she may have additional duties beyond that of an absent class member as class representative.  (Jackson 21:13-21:17).  Again, Jackson fared somewhat better after a break when she indicated that she was a kind of "voice" or "spokesperson" for a group of people, but she remained unable to identify any concrete duties, such as attending court proceeding or monitoring her counsel's work. (Jackson 36:15-37:10). Finally, both Jackson and Davis expressed confusion about how the prosecution of her significant class action would be financed, suggesting that she expected to pay attorneys, experts and other expenses out-of-pocket.  (Jackson 15:20-16:7; Davis 83:8-83:22).

Jackson and Davis fail the Rule 23 adequacy test because they demonstrated virtually no familiarity with this action and no understanding of theirtheir role as class representatives. *See Russell v. Forster & Garbus, LLP*, E.D.N.Y. No. 17-CV-4274, 2020 U.S.Dist.LEXIS 45299 at *11-12 (Mar. 16, 2020), citing *Scott v. N.Y.C. Dist. Council of Carpenters Pension Plan*, 224 F.R.D. 353, 356 (S.D.N.Y. 2004) (class representative's deposition testimony showed a lack of familiarity with lawyer, case and duties as class representative); *Schonton v. MPA Granada Highlands LLC*, D.Mass. No. 16-cv-12151, 2019 U.S.Dist.LEXIS 56502, at *25-26 (Apr. 2, 2019), citing *Burton v. Chrysler Grp. LLC*, D.S.C. No. 8:10-00209, 2012 U.S.Dist.LEXIS 186720 at *7 (Dec. 21, 2012) (finding adequacy not met where plaintiffs "on the whole, [did] not understand their duties and obligations as class members").

**b)** **Plaintiffs' counsel does not meet the adequacy requirement.**

To determine the adequacy of class counsel's representation, courts have considered whether counsel is qualified, experienced, generally able to conduct the litigation, free of conflicts

of interest, honest, loyal, and possessed of integrity.  The Court may also consider whether counsel is able to prosecute the action competently, responsibly and vigorously *McNamee v. Nationstar Mtge. LLC*, S.D.Ohio No. 14-1948, 2020 U.S.Dist.LEXIS 229514, at *15 (Dec. ,7, 2020)(collecting authority of circumstances where classes were decertified due to counsel's failure to conduct discovery, failure to send notice to a certified class, and other non-feasance *Id.*)..

As an initial matter, there is no record evidence concerning counsel's overall experience or qualification.  Since Plaintiffs bear the burden of establishing that the requirements of Fed.R.Civ.P. 23 are met, certification must be denied on this basis alone.

Counsel has also failed to vigorously prosecute this action.  Since this case was filed in October 2020, counsel has not sought any discovery beyond a single document request.  In addition, counsel has allowed the entire case management schedule to elapse (ECF # 38) without meeting any deadline or seeking extension.

Finally, counsel has demonstrated an alarming pattern of relying exclusively on sensationalizing the work of others, as opposed to diligently pursuing this matter on their own. See Cmplt. ECF # 1-1 at ¶27-28 (incorporating the 2018 U.S. Marshals' Report into their complaint (¶ 27) then immediately misquoting it[4] (¶ 28); Opp. to Motion to Quash, ECF # 40 at pp. 2-3, 7-8, (relying on dicta from judicial opinions describing allegations in other complaints); *Id.* at pp. 11-12 (relying on testimony from the criminal trial of former jail director Ken Mills).  In the end, counsel has done little to prosecute this case in the past or demonstrate that they will do so in the future.

### D.     Plaintiffs' proposed class is not maintainable under Fed.R.Civ.P. 23(b)(3).

---

[4] The U.S. Marshals' Report never characterizes the CCCC as "one of the worst jails in America." The phrase apparently originated in contemporaneous press coverage, which has been carelessly repeated since.

In addition to the requirements of Fed.R.Civ.P. 23(a), a proposed class must be maintainable under at least one provision of Fed.R.Civ.P. 23(b). Judge Barker has already determined that Plaintiffs lack standing to seek injunctive relief under Fed.R.Civ.P. 23(b)(2). (Memorandum Order, ECF # 18 at pp. 20-23). The only issue left to be determined is whether Plaintiffs' proposed class is maintainable under Rule 23(b)(3), which permits class certification when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods ****," *e.g.*, "predominance" and "superiority." Fed.R.Civ.P. 23(b)(3).

**Predominance.** Rule 23(b)(3) is "[f]ramed for situations in which class-action treatment is not as clearly called for as it is in Rule 23(b)(1) and (b)(2) situations." *Zehentbauer Family Land, LP v. Chesapeake Expl., L.L.C.,* 935 F.3d 496, 503 (6th Cir. 2019). For classes seeking certification under Fed.R.Civ.P. 23, "[r]ule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions." *Id.,* citing *Amchem*, 521 U.S. at 609. The same general analytical principals apply, but "[r]ule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Id.,* citing *Comcast Corp. v. Behrend,* 589 U.S. 27, 34 (2013).

As noted above, Plaintiffs can submit no evidence beyond their own experiences to support their contention that "unconstitutional" conditions prevailed at CCCC between October 2018 and October 2020. And, as noted above, the specific location and time-period that a putative class member was incarcerated at CCCC significantly affects their claim.

So does length of stay. For example, "[a] filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months." *Moore*, S.D.Ohio 2019 U.S. Dist. LEXIS 233063, at *19, quoting *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978).

Some inmates booked into CCCC are released within hours of arriving and never see the inside of a housing pod.  (Christopher dec. at ¶ 4).  Some stay a few days or a few months.  *Id.*  A few pretrial detainees remain for more than a year.  *Id.*

The need to differentiate, on an individual basis, between inmates who incurred conditions rising to the level of constitutional violations from those who merely suffered the inconveniences and unpleasantness of incarceration makes Plaintiffs' proposed class uncertifiable.  See: *Kensu,* 2020 U.S. Dist. LEXIS 61590 at **34-43 (lack of commonality when over deliberate indifference claims concerning adequate nutrition);  *Salem v. Mich. Dep't of Corrections,* E.D. Mich. No. 13cv14567, 2019 U.S. Dist. LEXIS 157460 (Sept. 16, 2019) at **28-30 (individualized issues about whether "unnecessary" individuals were present at strip searches); *Schilling v. Kenton Cty*, E.D.Ky No. 10-143, 2011 U.S. Dist. LEXIS 8050 at **24-26 (striking class allegations due to individual inquiry about whether medical care constituted deliberate indifference);  *Phillips v. Sheriff of Cook Cty.,* 828 F.3d 541, 555 (7th Cir. 2016) (individualized inquiry about the length of delay in providing medical care); *Portis v. City of Chicago*, 613 F.3d 702, 705-706 (7th Cir.2010) (reversing class certification when district court set an arbitrary two-hour limit as "reasonable" for the delay between arrest and the opportunity to post bond).

The *Kensu* court, which was faced with a claim alleging inadequate food and nutrition, noted:

> [T]he same proof cannot be used to determine the sufficiency of any particular prisoners' diet, or whether any of the prisoners' health, has been adversely affected from the standard fare diet in violation of the Eighth Amendment. Rather, the nature of the injuries allegedly suffered by each prisoner in the class and subclass, relative to the purported deficiencies in the standard fare diet, would require individualized inquiries.

*Id.,* citing *Dearduff v. Washington*, 330 F.R.D. 452, 457 (E.D. Mich. 2019).

Moreover, Plaintiffs intend to rely on a theory of liability against Cuyahoga County turning on the demanding standard of "deliberate indifference" under *Monell v. New York City Dep't of Social Service*, 436 U.S. 658, 694 (1978).   To the extent that Plaintiffs rely on an "inaction" theory to impose liability against the County, or an allegation that policymakers knew about "unconstitutional conditions" at CCCC and failed to correct them, individual issues concerning the County's knowledge predominate.   As the Sixth Circuit recently held in a case concerning an alleged practice of unconstitutional strip searches:

> Yet what the County did and did not know and what actions it did or did not take in response will almost certainly vary from year to year, month to month, and even day to day. A class member in, say, 2019, might have a stronger or weaker claim of deliberate indifference than a class member in, say, 2014. *** Deliberate indifference in 2019 is not deliberate indifference in 2014. If anything, these class members have a conflict of interest.

*Woodall v. Wayne Cty*, 6th Cir. No. 20-1705, 2021 U.S. App. LEXIS 34149, at *17 (reversing a District Court's grant of class certification under an abuse of discretion standard).

**Superiority.** Analyzing the "superiority" prong of Rule 23(b)(3) entails balancing the "the desirability" of class treatment with "the likely difficulties in managing a class action." *Sandusky Wellness Ctr., Ltd. Liab. Co. v. ASD Specialty Healthcare, Inc*., 863 F.3d 460, 471 (6th Cir. 2017). Here, for the reasons noted above, the Court would be required to conduct mini-trials to determine if each class member encountered conditions rising to the level of a constitutional violation.   Under these circumstances, Plaintiffs cannot establish that a class action is a superior way to proceed.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs cannot sustain their burden of class certification under Fed.R.Civ.P. 23 and, with discovery now closed, will never be able to do so.   The class allegations must be stricken from this proceeding.

## **CERTIFICATION OF COMPLIANCE WITH L. R. 7.1(f)**

This memorandum is twenty (20) pages long (not including this certificate).  This memorandum complies with L.R. 7.1(f).

/s/ *Michael J. Stewart*
MICHAEL J. STEWART (0082257)
Assistant Prosecuting Attorney


## **CERTIFICATE OF SERVICE**

I certify that on the February 1, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Michael J. Stewart*
MICHAEL J. STEWART (0082257)
Assistant Prosecuting Attorney