**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **TABATHA JACKSON, et al.,**   ) | |
| ) | **CASE NO.: 1:20-cv-02649** |
| **Plaintiff,**   ) | |
| ) | |
| **vs.**   ) | **JUDGE: CHARLES E. FLEMING** |
| ) | |
| **CUYAHOGA COUNTY, OHIO, et al.**   ) | |
| ) | |
| **Defendants.**   ) | |
| ) | |
| ) | |

---

**DEFENDANT CUYAHOGA COUNTY'S**
**MOTION FOR SUMMARY JUDGMENT**

---

Now comes Defendant Cuyahoga County, Ohio ("the County") and respectfully moves for summary judgment pursuant to Fed.R.Civ.P. 56.

Plaintiffs cannot prevail on any of their claims against the County because they produce evidence linking their specific situations to any policy or practice as required by *Monell v. New York City Dep't of Social Service*, 436 U.S. 658, 694 (1978).

Plaintiffs experiences concerning nine specific circumstances do rise from the ordinary unpleasantness associated with incarceration to inhumane conditions of confinement under the Eighth and Fourteenth Amendments, particularly when Plaintiffs do not present evidence of objectively serious harm.

Plaintiff Tabatha Jackson's primary medical claim is time barred.  The remainder of Plaintiffs' medical claims fail for lack of supporting medical evidence.

Respectfully submitted,
MICHAEL C. O'MALLEY, Prosecuting
Attorney of Cuyahoga County, Ohio

By:     /s/ *Michael J. Stewart*
       Michael J. Stewart (0082257)
       mjstewart@prosecutor.cuyahogacounty.us
       Phone: (216) 443-6673
       Brendan D. Healy (0081225)
       bhealy@prosecutor.cuyahogacounty.us
       Phone: (216) 698-6447
       Matthew Convery (0095704)
       mconvery@prosecutor.cuyahogacounty.us
       Phone: (216) 443-7763
       CUYAHOGA COUNTY PROSECUTOR'S
       OFFICE
       The Justice Center, Courts Tower
       1200 Ontario Street, 8th Floor
       Cleveland, OH  44113
       Fax: (216) 443-7602

*Attorneys for Defendant Cuyahoga County and Randy Pritchett*

ii

## TABLE OF CONTENTS

I.  ISSUES PRESENTED ...................................................................................................... 1

II.  SUMMARY OF THE ARGUMENT .............................................................................. 1

III.  SUMMARY OF RELEVANT FACTS AND PROCEDURAL HISTORY ...................... 2

IV.  LAW AND ARGUMENT .............................................................................................. 3

   A.  Standard of Review: the Court must grant summary judgment when there are no genuine issues of material facts. ......................................................................................................... 3

   B.  Plaintiffs cannot recover against Defendant Cuyahoga County on their *Monell* claims and any other of their claims because they cannot produce evidence of a policy or practice attributable to the County itself. ................................................................................................. 4

   C.  Plaintiffs "Count I", involving nine discreet "conditions of confinement", fails because Plaintiffs cannot present evidence that any of these conditions rose to the level of cruel and unusual punishment. ................................................................................................................. 7

      1.  Noisy Conditions. ........................................................................................................ 8

      2.  Having to sleep on thin mats approximately two inches wide. ........................................ 9

      3.  Food service: "spoiled food," "moldy trays," and "food containing insects." ............... 11

      4.  Cloudy water ............................................................................................................ 12

      5.  Having to live in an environment with human and feces on the floor and reeking of human urine and feces. ................................................................................................................. 13

      6.  Insects ..................................................................................................................... 14

   D.  Plaintiffs' "Count 2" fails because Jackson's primary claim is time-barred and neither Plaintiff supports their medical claims with expert testimony. ................................................. 15

      1.  Jackson's claim concerning CCCC's treatment of her gunshot wound sustained in 2017 is time-barred. ............................................................................................................... 15

      2.  The remainder of Count II fails for lack of medical evidence. ..................................... 16

V.  CONCLUSION ........................................................................................................... 20

CERTIFICATION OF COMPLIANCE WITH L. R. 7.1(f) ...................................................... 21

CERTIFICATE OF SERVICE ................................................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir.1996) ............................................................... 14

*Ashdown v. Buchanan*, S.D.Ohio No. 2:17-cv-495, 2021 U.S. Dist. LEXIS 20341 (Feb. 3, 2021) ........... 15

*Bennett v. City of Eastpointe*, 410 F. 3d 810 ........................................................................ 3

*Blackmore v. Kalamazoo Cty,* 390, F.3d 890 (6th Cir. 2013) ................................................ 16

*Board of Cty. Comm'rs of Bryan County v. Brown*, 520 U.S. 397 (1997) ............................... 4

*Browning v. Pendleton*, 869 F.2d 989 (6th Cir. 1989) ........................................................ 15

*Burchett v. Kiefer* 310 F.3d 937 (6th Cir. 2002) .................................................................. 3

*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989) .......................................................... 4

*Comstock v. McCrary,* 273 F.3d 693 (6th Cir. 2001) .......................................................... 16

*Coogan v. City of Wixom*, 820 F.2d 170 (6th Cir. 1987) ...................................................... 5

*Correa v. Cullum,* S.D.Ohio No. 1:17cv300, 2018 U.S. Dist. LEXIS 72823 ......................... 12

*Cunningham v. Jones*, 567 F.2d 653 (6th Cir. 1977) ........................................................... 16

*Cutsinger v. Louisville Metro Dep't of Corr.*, W.D.Ky. No. 3:19-cv-P254, 2019 U.S. Dist. LEXIS 120389
   (July 19, 2019) ..................................................................................................................... 11

*Eidson v. Tennessee Dept. of Children's Servs.*, 510 F.3d 631 (6th Cir. 2007) ...................... 15

*Elcock v. Davidson,* 561 F'Appx 519 (7th Cir. 2014) ......................................................... 13

*Ellis v. Mohr*, N.D.Ohio No. 1:13 CV 1058, 2017 U.S. Dist. LEXIS 152059 (Sep. 19, 2017) ......... 8

*Estelle v. Gamble,* 429 U.S. 97 (1976) ......................................................................... 16, 18

*Farmer v. Brennan*, 511 U.S. 825 (1994) ........................................................................... 7

*Ganstine v. Buss*, N.D.Fla. No. 4:11cv88, 2011 U.S.Dist.LEXIS 148497 (Dec. 27, 2011) .......... 17

*Garner v. Memphis Police Dep't*, 8 F.3d 358 (6th Cir. 1993) ............................................... 5

*Griffith v. Franklin Cty.,* 975 F.3d 554 (6th Cir. 2020) ...................................................... 17

*Grissom v. Davis,* 55 F. App'x 756 (6th Cir. 2003) ........................................................... 10

*Hartsel v. Keys*, 87 F.3d 795 (6th Cir.1996) ....................................................................... 3

*Hopson v. Daimler Chrysler Corp.*, 306 F.3d 427 (6th Cir. 2002) ......................................... 3

*Howard v. City of Girard, Ohio*, 346 F. App'x 49 (6th Cir. 2010) ......................................... 4

*Ivey v. Wilson*, 832 F.2d 950 (6th Cir. 1987) ...................................................................... 7

*Jones v. Toombs*, No. 95-1395, 1996 U.S. App. LEXIS 6545 (6th Cir. Feb. 15, 1996) ............... 10

*Kimball v. Bur. of Prisons*, N.D.Ohio (June 19, 2013) ......................................................... 9

*Lapine v. Hartzler*, E.D.Mich. No. 2:20-cv-12787, 2021 U.S. Dist. LEXIS 5999 ...................... 10

*Mann v. Helmig*, 289 F.App'x 845 (6th Cir. 2008) .............................................................. 5

*Martin v. Warren Cty.,* 799 F'Appx 329 (6th Cir. 2020) ...................................................... 6

*McGraw v. Sevier Cty,* 715 F.App'x 495 (6th Cir. 2017) .................................................... 16

*Middlebrook v. Tennessee Dept. of Correction*, W.D.Tenn. No. 07-2373, 2010 U.S.Dist.LEXIS 90709
   (Aug. 31, 2010) .................................................................................................................... 14

*Monell v. New York City Dep't of Social Service*, 436 U.S. 658 (1978) ............................... i, 4

*Moore v. Morgan*, S.D.Ohio No. 1:16-cv-655, 2019 U.S. Dist. LEXIS 233063 (Sep. 6, 2019) ......... 7

*Park v. Holdren*, S.D.Ohio No. 1:17cv439, 2018 U.S. Dist. LEXIS 128111 (July 31, 2018) ........... 13

*Phillips v. Roane County, Tenn.*, 534 F.3d 531 (6th Cir. 2008) ............................................. 7

*Porter v. Conant*, E.D.Mich. No. 18-10690, 2020 U.S.Dist.LEXIS 249021 (Dec. 28, 2020) ......... 18

*Rhodes v. Chapman*, 452 U.S. 337 (1981) ........................................................................... 8

*Richmond v. Settles*, 450 F.App'x 448 (6th Cir. 2011) ......................................................... 7

*Richmond v. Settles*, 450 F.App'x 448 (6th Cir.2011) ........................................................ 10

*Santiago v. Ringle,* 734 F.3d 585 (6th Cir. 2013) ......................................................... 16, 20

*Schrader v. Collins*, 6th Cir. No. 97-4471, 1998 U.S.App.LEXIS (Nov. 23, 1998).................................... 8

*Shaw v. Mangione,* 27 F. App'x 407 (6th Cir. 2001) ............................................................... 10

*Sims v. Michigan Dept. of Corr.*, 23 F.App'x 214 (6th Cir.2001) ............................................. 12

*Sneed v. Kentucky State Reformatory Med. in Segregation*, W.D.Ky. No. 3:14cvP571, 2015
    U.S.Dist.LEXIS 30843 (Mar. 12, 2015) ................................................................... 14

*Spell v. McDaniel*, 824 F.2d 1380 (4th Cir. 1987)....................................................................... 5

*Spruill v. Gillis,* 372 F.3d 218 (3d Cir. 2004) ......................................................................... 17

*Theriot v. Maclaren,* 6th Cir. No.  21-2596, 2022 U.S.App.Lexis 6881 (Mar. 16, 2022) .................. 16, 18

*Thigpen v. Reid*, N.D.Ohio No. 1:10CV2260, 2010 U.S. Dist. LEXIS 130359 (Dec. 9, 2010), ............... 14

*Thomas v. City of Chattanooga*, 398 F.3d 426 (6th Cir. 2005)..................................................... 5

*Thompson v. Cty. of Medina*, 29 F.3d 238 (6th Cir.1994) ........................................................ 8

*Tucker v. Rose*, 955 F.Supp. 810 (N.D.Ohio 1997) ................................................................. 14

*Wilson v. Seiter*, 501 U.S. 294 (1991).................................................................................... 8

## I.      ISSUES PRESENTED

1) Whether Plaintiffs can present sufficient evidence linking their situations to an unconstitutional policy or practice of the County to proceed on their *Monell* theory or any theory;

2) Whether Plaintiffs alleged experiences concerning nine specific circumstances rise from the ordinary unpleasantness associated with incarceration to inhumane conditions of confinement under the Eighth and Fourteenth Amendments, particularly when Plaintiffs do not present evidence of objectively serious harm;

3) Whether Plaintiffs' claims that jail officials were deliberately indifferent to their serious medical needs can survive summary judgment without supporting medical evidence.

## II.      SUMMARY OF THE ARGUMENT

To prevail on their *Monell* claims against the County, Plaintiffs must link their own experiences to a widespread policy or practice using legal principles of proximate cause.  Plaintiffs have not, and cannot, do so with respect to any of their three claims.  Plaintiffs' criticisms of nine specific conditions of confinement amount to (at most) no more than complaints about the inconveniences and unpleasantness associated with incarceration.  Without prolonged exposure to severe deprivations, accompanied by serious injury, Plaintiffs cannot survive summary judgment on their constitutional claims.  Instead, Plaintiffs must present evidence that they were deprived of the minimal civilized measure of life's necessities.

Plaintiff Jackson's primary medical claim, concerning Cuyahoga County Corrections Center's ("CCCC's) treatment of her gunshot wound in 2017, is time-barred.  The remainder of Plaintiffs' medical claims fail because they lack supporting medical evidence.  Decisions concerning Jackson's access to a wheelchair were made by qualified medical professionals. Plaintiff Davis never had a valid Xanax prescription and her medical records do not document seizures.  Instead, medical professionals at CCCC, MetroHealth and the Cleveland Clinic all

attributed Davis's seizure-like symptoms to "pseudoseizures," which are characterized by random voluntary muscle movements. The County is entitled to summary judgment on all claims.

### III.  SUMMARY OF RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiffs Tabatha Jackson and Phyllis Davis originally filed their class action complaint in state court on October 23, 2020.  (Cmplt., ECF# 1-1).  Plaintiffs' wide-ranging Complaint addressed three broad issues: 1) a challenge to the "conditions of confinement" that they experienced in the Cuyahoga County Corrections Center ("CCCC"), including nine specific conditions ranging from food service to noise and to sanitation (Count 1); 2) allegations related to the medical care that Davis received concerning her prescription medications and Jackson's access to mobility devices, such as a wheelchair and walker; and 3) allegations that a Corrections Officer, Corporal Randy Pritchett, used excessive force against Jackson in December 2018.  (FAC, ECF# 1-1).  Plaintiffs assert Count 1 as a class action.  Following an initial round of motion practice, the Court struck Plaintiffs' class allegations seeking injunctive relief and dismissed all individual Defendants, except for Pritchett.  (Memorandum Order, ECF# 18).

The parties proceeded to discovery.  Defendants deposed Plaintiffs Jackson and Davis on April 14 and 19, 2022 respectively.  The parties also exchanged paper discovery.  Defendants provided over 23,000 pages of documents.  Beyond their initial document request, Plaintiffs have not undertaken other discovery.  Plaintiffs took no depositions and did not produce expert reports.

In support of this motion, Defendants contemporaneously file the following materials: 1) the transcripts and exhibits from Plaintiffs' depositions in April 2022; 2) the declaration of CCCC Associate Warden Damara Shemo, who describes CCCC's approach to sanitation, food service, and other "conditions" identified by Plaintiff evolved between October 2018 and October 2020; 3) the declaration of CCCC Associate Warden Philip Christopher, regarding Plaintiffs' housing

classification and a few other critical facts based on his review of CCCC's records; 4) certified medical records relevant to Plaintiffs' claims; 5) the declaration and report of Corrections Expert Donald Leach, whose forty-year career in corrections spans from working as a Corrections Officer, to corrections administration and consulting; and 6) the declaration and report of Dr. Donald Kern, a physician who has served as medical director at several correctional institutions, including New York City's Rikers Island, as well as worked for private providers of healthcare services.

Separately, Defendant Cuyahoga County renews it motion to strike all class allegations from this case, and Defendant Randy Pritchett seeks summary judgment on the claims against him with his own declaration and those of two Corrections Officers involved in the use-of-force incident with Jackson in December 2018. Plaintiffs raise three diverse and loosely connected claims. The specific facts relevant to each will be addressed in the appropriate section below.

## IV.    LAW AND ARGUMENT

### A.    Standard of Review: the Court must grant summary judgment when there are no genuine issues of material facts.

A court must grant summary judgment where there remain no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. *Burchett v. Kiefer*, 310 F.3d 937, 941 (6th Cir. 2002); *Hopson v. Daimler Chrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002). While the burden is on the moving party to show that no genuine issue of material fact exists, "that burden may be discharged by 'showing—that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Bennett v. City of Eastpointe*, 410 F. 3d 810, quoting *Celotex Corp.*, 477 U.S. at 325.

The moving party need not support its motion with evidence disproving the opposing party's claims. Rather, the moving party need only point out there is an absence of evidence supporting such claims. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir.1996).

**B.** **Plaintiffs cannot recover against Defendant Cuyahoga County on their *Monell* claims and any other of their claims because they cannot produce evidence of a policy or practice attributable to the County itself.**

Following Judge Barker's ruling on the initial motions directed toward the pleadings (ECF# 18), two Defendants remain in this case: Cuyahoga County and Corrections Officer Randy Pritchett. Corporal Pritchett is pertinent only to Count III, involving allegations of excessive force.

It is well-settled that Cuyahoga County cannot be held liable for the unconstitutional acts of its employees under a theory of *respondeat superior*. *Monell v. New York City Dep't of Social Service*, 436 U.S. 658, 694 (1978). Instead, there is liability "under § 1983 only where the [government entity] itself causes the constitutional violation at issue." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in the original). To prevail on a claim against the government under § 1983, a plaintiff must prove both the deprivation of a constitutional right and the county's responsibility. *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2010) (citation omitted). A plaintiff seeking to subject a municipality to §1983 liability for the actions of its employees must "identify a [governmental] 'policy' or 'custom' that caused the plaintiff's injury." *Board of Cty. Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997).

As addressed in detail below, Plaintiffs cannot present sufficient evidence of constitutional deprivations on any of their claims. With the exception of Jackson's excessive force claim against Pritchett, however, the Court need not even reach these issues. Plaintiffs can present absolutely no evidence linking any policy or practice by the County to their injuries.

The Sixth Circuit has recognized four avenues by which a plaintiff can prove a municipality's policy or custom: (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of

inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

Plaintiffs must also connect the policy or practice to their own injuries. "[P]roof merely that such a policy or custom was 'likely' to cause a particular violation is not sufficient; there must be proven at least an affirmative link between policy or custom and violation; in tort principle terms, the causal connection must be proximate, not merely but-for causation-in-fact." *Mann v. Helmig*, 289 F.App'x 845, 850 (6th Cir. 2008), quoting *Spell v. McDaniel*, 824 F.2d 1380, 1388 (4th Cir. 1987). To satisfy the *Monell* requirements a plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987).

These Plaintiffs can produce no evidence connecting any widespread policy or practice to anything that happened to them. To be sure, Plaintiffs are likely to continue their pattern of sensationalizing the work of others. See Cmplt. ECF# 1-1 at ¶27-28 (incorporating the 2018 U.S. Marshals' Report into their complaint (¶ 27), then immediately misquoting it (¶ 28); Opp. to Motion to Quash, ECF# 40 at pp. 2-3, 7-8, (relying on dicta from judicial opinions describing allegations in other complaints); *Id.* at pp. 11-12 (relying on testimony from the criminal trial of former jail director Ken Mills). Even if the unauthenticated Marshals' Report[1] and testimony from a criminal trial are appropriate for the Court to consider at the summary judgment stage under

---

[1] In many respects, the 2018 Marshals' Report was critical of CCCC. However, the report evaluated CCCC against contractual "Federal Performance-Based Detention Standards," not constitutional minima. Leach rpt. at p. 42. Moreover, regarding the food service at the CCCC, while the authors were critical of multiple documentation issues and some sanitation issues, they noted that CCCC was consistently serving three meals a day (two hot) and "[t]aste tests of the meals reveal food is seasoned and served at appropriate temperatures." (ECF# 20-1, Page ID# 348-351). The Marshals' Report does not, on its face, describe *per se* unconstitutional conditions.

Fed.R.Civ.P. 56(c), and Defendants respectfully suggest that they are not, Plaintiffs cannot present evidence "connecting the dots" to a constitutional violation (if any) that they incurred.

Plaintiffs' *Monell* evidence is particularly weak with respect to Counts II (medical claims) and Count III (Jackson's allegation of excessive force).  With respect to the medical claims, the Court cannot be left to guess how any overall training, staffing or policy issues contributed to Jackson's claim she was improperly deprived of a wheelchair or Davis's claim that CCCC officials somehow mishandled her prescriptions.  *Martin v. Warren Cty.,* 799 F'Appx 329, 341-42 (6th Cir. 2020).   Plaintiffs must offer affirmative evidence of causation.  *Id.*

Similarly, Plaintiffs are unlikely to produce evidence suggesting Jackson was the victim of excessive force because Corporal Pritchett was poorly trained, or that the County otherwise tolerated excessive force in general, or against wheelchair-bound inmates in particular.  Jackson is not aware of allegations, other than her own, regarding Corporal Pritchett using excessive force. (Jackson 123:6-123:10).  Indeed, Corporal Pritchett has undergone significant formal training in subjects like the use of force, inmate supervision and other topics.  (Pritchett dec. at ¶ 2, ex. 1[2]).

Jackson could only identify one other incident in which a Corrections Officers used excessive force against an inmate named Veronica Williams.[3]  (Jackson 124:14-124:16).  Jackson cannot identify any other such inmate.  (Jackson 125:17-125:18).  Cuyahoga County is entitled to dismissal of all claims because Plaintiffs have failed to produce evidence of the required policy or practice under *Monell.*  To be clear, the Court need not find that CCCC was perfect in 2018 or

---

[2] Attached as an exhibit to Pritchett's Motion for Summary Judgement
[3] During Jackson's deposition she vaguely alleged that she recalled another example of alleged excessive force by a Correction Officer, however, when questioned about the alleged observation, she could not name the alleged Officer or describe the events. (Jackson 124: 14-124:16).

even "satisfactory." However, Plaintiffs have an evidentiary burden at this stage of the litigation to show that they were harmed by unconstitutional policies or practices, and they cannot meet it.

**C. Plaintiffs "Count I", involving nine discreet "conditions of confinement", fails because Plaintiffs cannot present evidence that any of these conditions rose to the level of cruel and unusual punishment.**

In Count I, Davis and Jackson allege that they encountered "unsanitary, inhumane, and unconstitutional conditions while incarcerated at CCCC between October 2018 and Jackson's last release from custody in May 2019." (ECF# 20 at ¶¶ 18-56). However, neither Plaintiff can present evidence that she endured the degree of deprivation giving rise to a constitutional claim. At most, each Plaintiff endured the inevitable unpleasant experiences associated with a correctional environment. Moreover, Defendants can present no evidence that the circumstances about which they complain were the result of any practice or policy attributable to Cuyahoga County itself.

The Eighth Amendment requires Correction Centers to "provide humane conditions of confinement" to inmates serving a sentence following conviction. *Moore v. Morgan*, S.D.Ohio No. 1:16-cv-655, 2019 U.S. Dist. LEXIS 233063 at *18 (Sep. 6, 2019), citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Fourteenth Amendment affords similar protections to pretrial detainees. *Phillips v. Roane County, Tenn.*, 534 F.3d 531, 539 (6th Cir. 2008).

However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Moore,* 2019 U.S. Dist. LEXIS 233063 at *18, citing *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Rather, "[t]he Eighth Amendment is concerned only with deprivations of essential food, medical care, or sanitation, or other conditions intolerable for prison confinement." *Id.,* citing *Richmond v. Settles*, 450 F.App'x 448, 455-56 (6th Cir. 2011). To establish constitutional violation, a plaintiff must first demonstrate objectively the unique deprivation of "the minimal civilized

measure of life's necessities." *Id.,* quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  She then must subjectively show the defendant acted "wantonly," and with "deliberate indifference to the plaintiff's serious needs." *Id.*, citing *Farmer*, 511 U.S. at 834.

Inmates cannot establish an Eighth Amendment violation by pointing to a combination of conditions of confinement that, in themselves, do not rise to the level of a constitutional violation. *Ellis v. Mohr*, N.D.Ohio No. 1:13 CV 1058, 2017 U.S. Dist. LEXIS 152059, at *23 (Sep. 19, 2017), citing *Wilson v. Seiter*, 501 U.S. 294, 304-305 (1991). "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment." *Id.*  See also: *Schrader v. Collins*, 6th Cir. No. 97-4471, 1998 U.S.App.LEXIS at *5 (Nov. 23, 1998) ("This circuit refuses to conduct a totality of the circumstances analysis in Eighth Amendment cases."); *Thompson v. Cty. of Medina*, 29 F.3d 238, 242 (6th Cir.1994) ("Eighth Amendment claims may not be based on the totality of the circumstances, but rather must identify a specific condition that violates the inmates' right to personal safety.")

Here, Plaintiffs point to nine potentially unconstitutional conditions: 1) "noisy" sleeping conditions; 2) having to sleep on mats; 3) eating spoiled food; 4) having to eat off of moldy trays; 5) food containing "dead and alive bugs"; 6) "cloudy" water; 7) having to live in an environment with human feces and urine on the floor; 8) an environment "reeking" of human feces and urine; and 9) an environment "infested" with bugs. (FAC, ECF# 20 at ¶ 23).  Neither Plaintiff, however, can present evidence that she encountered conditions that rose from unpleasant experience to constitutional deprivation.

### 1.  Noisy Conditions.

Regarding Jackson's claim of noisy conditions in the Correction Center asserts that the noise of the televisions could be heard at 6:00 AM, inmates fighting, and administrative searches

of inmates' cell led to a noisy environment to sleep in. (Jackson 137:21-23,140:15,138:16-25). Davis alleges [4] Correction Officers speaking on the phone, and fellow inmates yelling back and forth between the cells, and Correction Officers reprimanding screaming inmates lead to a noisy condition within the CCCC. (Davis 95:11-18). Neither woman is aware of any testing showing high noise levels.  (Jackson 141:17-22).  (Davis 98:15-24).  Neither woman claimed that noise levels at CCCC left them with any residual effects on her hearing.  (Jackson 141:1-4; Davis 99:9-11).  A "noise audit" undertaken by CCCC in 2021 generally showed that noise levels fell below the 70dBA guideline set buy the Ohio Department of Corrections.  (Leach rpt. at pp. 45-46).

There is no doubt that "[e]xcessive noise in a prison can state a valid Eighth Amendment claim."  *Kimball v. Bur. of Prisons*, N.D.Ohio No. 4:13cv225, 2013 U.S. Dist. LEXIS 86149, at *23-24 (June 19, 2013).  To do so, however, the noise must be so excessive and pervasive as to pose a serious risk of injury, pain or sleep deprivation. *Id.,* collecting authority.  The cases finding an Eighth Amendment violation based on "excessive" noise have all involved incessant noise throughout the day and night, which at times was significantly beyond acceptable decibel levels and could have resulted in possible hearing loss.  *Id.,* internal quotations omitted.  Jackson and Davis have no objective evidence that noise levels at CCCC reached this extreme threshold during their stay and they acknowledged that they suffered no ill effects on their health.  Jackson and Davis present no evidence supporting a constitutional claim based on noise levels.

## 2.  <u>Having to sleep on thin mats approximately two feet wide.</u>

_____

[4] Conditions-of-confinement cases are fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount. *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017).  In this sense, Davis's claims are highly problematic.  Davis's total incarceration lasted only portions of six days, from December 15-21, 2018.  (Christopher dec. at ¶ 9). Davis spent much of December 18, 2018, and all of December 21, 2018, at the MetroHealth emergency room.

Plaintiffs complain that they were provided thin, uncomfortable and unsanitary mattresses. (Jackson 128:6-17; Davis 88:18-89:11). However, both women acknowledged that they did not suffer physical injury due to their experiences with the mattresses, beyond temporary general pain and discomfort, which they attributed to the aggravation of pre-existing injuries. (Jackson133:19-22; 134-20; 134:23-135:15[5] (gunshot wound); Davis 89:24-25; 91:21-23 (pre-existing disc injury)). *See Lapine v. Hartzler*, E.D.Mich. No. 2:20-cv-12787, 2021 U.S. Dist. LEXIS 5999, at *15 (Jan. 13, 2021) (inmates claim that the temporary deprivation of a mattress aggravated a long-standing back injury is not sufficient to state constitutional claim.)

In the absence of evidence that a prisoner suffered a physical injury, the deprivation of a mattress and bedding for a fixed period of time does not amount to a constitutional violation. *Richmond v. Settles*, 450 F.App'x 448, 455 (6th Cir.2011); *Grissom v. Davis,* 55 F. App'x 756, 757 (6th Cir. 2003); *Shaw v. Mangione,* 27 F. App'x 407, 407 (6th Cir. 2001); *Jones v. Toombs,* No. 95-1395, 1996 U.S. App. LEXIS 6545, at *1 (6th Cir. Feb. 15, 1996) ("The defendants did not violate [the plaintiff's] Eighth Amendment rights by depriving him of a mattress for a two week period.[6]"). In *Richmond*, the Court determined that the plaintiff failed to present any evidence of injury resulting from his approximately thirty-hour deprivation of a mattress and bedding. Here, both Plaintiffs admit that they were provided mattresses while at CCCC, which they found uncomfortable. However, Leach offers his uncontested expert opinion that the mattresses he observed during his February 2019 inspection of the CCCC generally conformed to industry standards. Leach rpt. at pp. 46-48. Here, neither Plaintiff presents objective medical

---

[5] As noted in section D.1 below, Jackson's claim related to her 2017 gunshot wound is time-barred.
[6] As noted above, Davis's total period in custody included parts of six days, but she spent parts of two of those days at the MetroHealth emergency room.

evidence supporting any injury claim, or any evidence that they suffered a constitutional deprivation due to the mattresses in the CCCC.

3.  **Food service: "spoiled food," "moldy trays," and "food containing insects."**

Jackson and Davis both allege that there were bugs in their food. (Jackson 157:12-21, 161:5-20; Davis 108:12-109:11). Jackson also alleges she was provided spoiled chili. (Jackson). Davis stated she did not know if the CCCC's food menus in the jail were reviewed by any nutritionist or doctors in 2018, if the menus were reviewed currently, or if the CCCC has made change to the way the food is prepared or served. (Davis 111:8-25). Both Jackson and Davis also complain about the food trays at CCCC, alleging that they smelled and speculating that there may have been mold. (Jackson 178:7-10; Davis 106:4-15).  Neither Plaintiff ate all of the meals provided at CCCC.  Jackson relied mostly on snacks purchased through her commissary account. (Jackson 121:8-121:20).  Davis claims she generally ate only the fruit and milk served as part of the meals, as well as shared Jackson's commissary. (Davis 110:5-9).

"The fact that the [prison] food occasionally contains foreign objects or is sometimes served cold, while unpleasant, does not amount to a constitutional deprivation."  *Correa v. Cullum*, S.D.Ohio No. 1:17cv300, 2018 U.S. Dist. LEXIS 72823, at **11-14 (May 1, 2018) (collecting cases for the proposition that unappetizing or contaminated food does not rise to the level of constitutional violations).  The Sixth Circuit has stated that a complaint about the preparation or quality of prison food is "generally far removed from Eighth Amendment concerns" *Id.,* quoting *Cunningham v. Jones*, 567 F.2d 653, 659-660 (6th Cir. 1977);  *See also, Cutsinger v. Louisville Metro Dep't of Corr.*, W.D.Ky. No. 3:19-cv-P254, 2019 U.S. Dist. LEXIS 120389, at *6 (July 19, 2019) (the "mere presence of foreign bodies, even insects, in the food served to prisoners or dirty or moldy food trays do not constitute a Eighth Amendment

violation").

Plaintiffs' claims concerning the food at CCCC fail for two fundamental reasons.  First, beyond their own speculation, Plaintiffs offer absolutely no evidence that the food that they were offered at CCCC failed to meet their basic nutritional needs. *Sims v. Michigan Dept. of Corr*., 23 F.App'x 214, 216 (6th Cir.2001)(a broad allegation of nutritional deficiency, without more detail, is no sufficient to state an Eighth Amendment claim). Second, Jackson and Davis have no evidence that they suffered any serious injury as a result of poor nutrition.  *Correa,* 2018 U.S. Dist. LEXIS 72823 at **11-14.  Jackson claims an upset stomach and vomiting due to the food quality.  (Jackson 163:19-164:9).  Jackson has no objective medical evidence to support this claim.  Even so, occasional episodes of food poisoning and vomiting do not rise to an Eight Amendment claim.  *Id.,* citing *Velhuysen v. Aramark Correctional Servs., Inc*., W.D.Mich No. 2:14cv192, 2017 U.S. Dist. LEXIS 7172 (Jan 19, 2017).  Davis claims to have lost either 18 or 100 pounds due to the food or water at CCCC during her six-day stay.  (Compare: Davis 110:2 with Davis 114:6-7).  Again, Davis has no objective medical evidence to support this claim.

### 4.  Cloudy water

Both Jackson and Davis complain about the quality of the water at the CCCC, however Davis could not identify any specific medial issue associated with the water and Jackson alleged her only damage sustained was that she felt dehydrated. (Jackson 171:7-18; 172:17-21; 174:7-20; Davis 113:1-24; 114:2-14).    Neither Plaintiff is aware of any scientific sampling suggesting the water was safe to drink.  (Jackson 176:14-17; Davis 114:25-115:4).  Periodic water testing at CCCC performed by an outside contractor between October 2017 and March 2020 showed that the water was free of common bacterial contaminants[7] and safe for human consumption.  (Leach

---

[7] Specifically, the water was tested for Legionella Pneumophila, Escherichia (e.coli) and Coliform.

rpt. at pp. 51-52).  In the face of this evidence, Defendants are entitled to summary judgment with respect to Plaintiffs' allegations of unsafe drinking water.  *Elcock v. Davidson,* 561 F'Appx 519, 522-523 (7th Cir. 2014) (plaintiff cannot survive summary judgement in the face of uncontested evidence that drinking water in jail was tested and found safe for human consumption).

### 5.  <u>Having to live in an environment with feces on the floor and reeking of human urine and feces.</u>

Both Jackson and Davis assert allegations regarding plumbing problems at CCCC.  Jackson claims that the toilets overflowed on occasion and they would have to wait for a plumber to come fix the toilet, that in one instance she was left in her cell with an overflowing toilet, and that poor drainage in the shower caused pooling water to her ankles. (Jackson 145:6-10; 83:18-84:6; 149:5-22).  While Jackson was housed in the medical pod,[8] however, Jackson had access to, utilized, and even enjoyed, the bathtub. (Jackson 150:22-23).  Davis recalled a single toilet that leaked soiled water from the drain connection and would periodically overflow due to heavy use.  (Davis 100:17-101:11).  Neither woman has connected any physical injury to sanitation problems at the jail, let alone submitted medical evidence supporting such a claim.[9]

Leach did not observe widespread issues with feces and urine throughout CCCC during his site visits in February 2019 and later.  (Leach rpt. at p. 52-53, including photographs).  While these types of incidents can occur at CCCC, like any corrections facilities, it is the staff's practice to clean these situations when they occur.  (Shemo dec. at ¶ 10e). Temporary exposure to human waste due to a flooding toilet generally does not rise to the level of an Eighth Amendment violation, particularly without evidence of a physical injury.  *Park v. Holdren*, S.D.Ohio No. 1:17cv439,

---

[8] Jackson was housed in the medical pod for significant portions of her stay at CCCC.  (Christopher dec. at ¶ 8)

[9] A search of Plaintiff's medical records produced during discovery reveals that neither Plaintiff has sought or documented medical injuries regarding any of the claims in the Amended Complaint.

2018 U.S. Dist. LEXIS 128111 at **6-9 (July 31, 2018) (collecting cases involving flooding due to overflowing toilets); See also: *Thigpen v. Reid*, N.D.Ohio No. 1:10CV2260, 2010 U.S. Dist. LEXIS 130359, at *5 (Dec. 9, 2010), citing *Newman v. Evans*, E.D.Mich No. 08-11883, 2009 U.S. Dist. LEXIS 25939 (Mar. 27, 2009).

### 6. <u>Insects</u>

Jackson and Davis also both complain that there were bugs at CCCC, however both admit they were never bitten or stung by any bugs while in the CCCC. (Jackson 183:18; 184:2-15; 185:7-9; Davis 101:17-19; 103:15-16). CCCC maintains a contract with Orkin Pest Control services to eliminate and control insects and other pests. (Shemo dec. at ¶ 9a). Orkin services CCCC every two weeks and is called out for additional visits on an as-needed basis. *Id*. at ¶ 9b. Leach did not observe pests outside of the food service area during his visit in February 2019. (Leach rpt. at p. 5). Leach also reviewed multiple pest-control logs maintained at CCCC and opined that "CCCC has taken an acceptable correctional approach to managing pests within the jail." *Id*. at p. 56.

Some courts have held that a prolonged pest infestation, coupled with significant physical harm, may rise to the level of an Eighth Amendment violation. *Sneed v. Kentucky State Reformatory Med. in Segregation*, W.D.Ky. No. 3:14cvP571, 2015 U.S.Dist.LEXIS 30843, at *10 (Mar. 12, 2015), citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir.1996)(allegation of sixteen months of infestation and significant physical harm stated claim for inhuman conditions of confinement). Even at face value, Plaintiffs' complaints do not rise to this level. Moreover, CCCC's reasonable pest-control activities preclude a finding that officials were deliberately indifferent to the problem. *Tucker v. Rose*, 955 F.Supp. 810, 816 (N.D.Ohio 1997); *Middlebrook v. Tennessee Dept. of Correction*, W.D.Tenn. No. 07-2373, 2010 U.S.Dist.LEXIS 90709, at *31 (Aug. 31, 2010), fn. 36.

**D.  Plaintiffs' "Count 2" fails because Jackson's primary claim is time-barred and neither Plaintiff supports their medical claims with expert testimony.**

Cuyahoga County is the only remaining Defendant in Count II of the First Amended Complaint, which concerns medical treatment.  As noted in Section II.B, above, the claims against the County (and all of Count II) must be dismissed because Jackson and Davis cannot present evidence linking their experiences to any broader policy or practice as required to impose *Monell* liability on the County.  Plaintiffs' medical claims (Count II) also fails because Jackson and Davis can present no medical evidence that anyone was deliberately indifferent to their medical needs.

**1.  Jackson's claim concerning CCCC's treatment of her gunshot wound sustained in 2017 is time-barred.**

Jackson claims CCCC officials were deliberately indifferent to her medical needs by placing her in general population and denying her needed medication when she was booked into the jail after her arrival the jail from a hospital following surgery for a gunshot wound.  (FAC, ECF# 20 at ¶¶ 59-64).  While the complaint is vague about timeframe, the undisputed evidence shows that these events occurred in July and August 2017. (Christopher dec. at ¶ 8a).  Jackson acknowledged this at her deposition. (Jackson 50:15-51:6; 55:17-55:20). This claim is time-barred.

In Ohio, the statute of limitations for claims arising under § 1983 is two years.  *Ashdown v. Buchanan*, S.D.Ohio No. 2:17-cv-495, 2021 U.S. Dist. LEXIS 20341, at *13 (Feb. 3, 2021), citing *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989).  The date on which the statute of limitations begins to run in a § 1983 action is a question of federal law. *Eidson v. Tennessee Dept. of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007).  Ordinarily, the limitation period starts to run when the plaintiff knows or has reason to know of the injury which is the basis of his action. *Id.*  Here, events surrounding Jackson's gunshot wound occurred

during the summer of 2017.  She filed her initial state-court complaint in October 2020, more than three years later.  The deliberate-indifference claim concerning her gunshot wound is time-barred.

### 2.  <u>The remainder of Count II fails for lack of medical evidence.</u>

Jackson and Davis allege that County officials acted with deliberate indifference to their medical needs during their stay at CCCC.  Jackson alleges that CCCC wrongfully deprived her of her wheelchair "and placed her in general population."  FAC, ECF# 20 at ¶¶ 60-62.  Davis alleges that officials mishandled her Xanax and Abilify "prescriptions," resulting in seizures.  *Id.* at ¶¶ 66-70, 80-82.  However, the undisputed evidence shows that Plaintiffs repeatedly saw medical staff at CCCC and, in Davis's case, two sperate trips to the MetroHealth emergency room.  Plaintiffs present no evidence that they received substandard medical care, let alone that officials were deliberately indifferent to their medical needs.

"A prisoner's Eighth Amendment right is violated when prison doctors or officials are deliberately to the prisoner's serious medical needs."  *Theriot v. Maclaren,* 6th Cir. No.  21-2596, 2022 U.S.App.Lexis 6881 at *6 (Mar. 16, 2022), citing *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2001).  "Deliberate indifference" is a high standard.  "Medical malpractice, negligent diagnosis or treatment, and mere disagreement with medical treatment are inadequate to state a § 1983 claim."  *Id.,* citing *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

In the Sixth Circuit, a plaintiff alleging a deliberate indifference claim related to medical care must generally place medical evidence in the record to support their claim, usually in the form of expert testimony, unless the problem is so obvious that even a layperson would understand the detrimental effect.  *Id.,* citing *Santiago v. Ringle,* 734 F.3d 585, 590 (6th Cir. 2013); *Blackmore v. Kalamazoo Cty,* 390, F.3d 890, 899 (6th Cir. 2013).

Two other principles are relevant to Jackson's and Davis's claims.  First, corrections staff will not be chargeable with deliberate indifference if they defer to the judgment of medical professionals, absent reasons to believe those professionals are mistreating the prisoner.  *McGraw v. Sevier Cty,* 715 F.App'x 495, 498-499 (6th Cir. 2017), citing *Spruill v. Gillis,* 372 F.3d 218 (3d Cir. 2004).  Second, when a plaintiff receives some medical treatment, federal courts are generally reluctant to second-guess medical judgments and constitutionalize claims that sound in state tort law.  *Griffith v. Franklin Cty.,* 975 F.3d 554, 568 (6th Cir. 2020)(citations omitted).  Jackson and Davis can nonetheless establish deliberate indifference by demonstrating that CCCC officials either consciously exposed them an excessive risk of serious harm or provided treatment "so woefully inadequate as to amount to no treatment at all."  *Id.*  Plaintiffs lack any evidence suggesting that any CCCC employee was deliberately indifferent to their serious medical needs.

### a.  Decisions regarding Jackson's wheelchair were made by qualified medical professionals and were not inadequate.

Following her gunshot wound in 2017, Jackson sometimes utilizes a wheelchair to move around.  However, she is not wheelchair bound and is able to move short distances unassisted. (Jackson 49:25-50:3).  Her medical records document periods that she used a cane, used a wheelchair to travel "community distances," used a walker and was able to ambulate without assistance.  (Kern rpt. at p. 5).  Indeed, when she was first booked into CCCC in 2017 following her gunshot wound, she was bracing herself behind a wheelchair and using it as a kind of walker. (Jackson 55:17-20).  There is no available medical evidence suggesting that Jackson's medical condition obviously required a wheelchair throughout her incarceration.

Under these circumstances, Jackson's housing assignment and access to mobility devices become a matter for the sound judgment of the corrections and medical staff.  *Ganstine v. Buss*, N.D.Fla. No. 4:11cv88, 2011 U.S.Dist.LEXIS 148497, at *8 (Dec. 27, 2011) (noting that prison

doctor's decision not to provide a wheelchair was at worst an error in medical judgment, not deliberate indifference, when it was undisputed that the patient could walk, but only for short distances); *Porter v. Conant*, E.D.Mich. No. 18-10690, 2020 U.S.Dist.LEXIS 249021, at *15 (Dec. 28, 2020) (finding corrections officials entitled to rely on nurse's evaluation that inmate did not require wheelchair).

At CCCC, Jackson was housed alternatively the women's medical unit (where she had access to assisted mobility devices as recommended by medical personal) and general population (where she did not).  (See Christopher dec. at ¶¶ 8).  As detailed in the report of Defendant's corrections expert, Donald Leach, Jackson had approximately 59 separate contacts with jail medical personnel between September 2017 and May 2019.  (Leach rpt. at p. 39, Jackson Certified MetroHealth Medical Records.[10] ("Jackson MetroHealth"), Bates No. County 6614).  The undisputed evidence shows that Jackson was repeatedly seen and evaluated by medical professionals concerning her placement in the general population or a medical pod, as well as her access to devices such as canes, walkers and wheelchairs.  (Leach rpt. at p. 39, Jackson MetroHealth, Bates No. County 6611-6612; 6614-6621; 6624-6625; 6631-6632; Christopher dec. at ¶ 8).  Defendants offer expert opinion from Leach and Kern that these decisions fell within the appropriate standard of care from both a correctional and medical standpoint.  Plaintiffs offer no contrary medical evidence that she received substandard medical care (let alone, that anyone was deliberately indifferent to her serious medical needs), beyond Jackson's testimony that she disagreed with some of the medical care she received.  But this is not enough to survive summary judgment.  *Theriot*, 2022 U.S.App.Lexis 6881 at *6, citing *Estelle,* 429 U.S. at 106.

---

[10] MetroHealth Medical System provides medical care at CCCC under various arrangements during the relevant time period and medical records concerning treatment at CCCC are contained in the patient's/inmate's MetroHealth chart.

b. **There is no evidence that Davis suffered seizures, let alone seizures attributable to CCCC's handling of her medication.**

Davis alleges that she had a prescription to Xanax (alprazolam) when she was booked into CCCC in December 2018.  (FAC at ¶¶ 65-66).  Davis claims CCCC officials denied her Xanax and she "passed out and hit her head on the concrete floor" and "bit her tongue in half" as a result. *Id.* at ¶¶ 67-68.  However, the medical evidence shows that: 1) Davis did not have a current Xanax prescription when she was booked into CCCC; 2) corrections officers repeatedly and appropriately sought medical assistance when Davis displayed seizure-like symptoms; 3) medical providers in CCCC and in two local emergency rooms never diagnosed Davis with seizures caused by withdrawal from Xanax; and 4) Davis was nonetheless prescribed Clonazepam, a benzodiazepine similar to Xanax.  As Kern opined, Davis received appropriate medical care at the CCCC.  (Kern rpt. at p. 7).

Between December 17, 2018 and December 20, 2018 CCCC corrections staff document thirteen incidents in which their staff responded to Davis's seizure-like behavior, including calling ten separate medical emergencies, which are summarized in Leach's report.  (See: Christopher dec. ex. 8; Leach rpt. at pp. 32-35).  MetroHealth medical records document 24 separate interactions with medical staff at CCCC.  (Davis MetroHealth at Bates No. County 1698-1730; Leach rpt. at pp. 30-32).  On the evening of December 18, 2018, and the afternoon of December 21, 2018, medical personnel directed that Davis be transported to the MetroHealth emergency room.  (Davis MetroHealth at Bates No. County 1727, 1722; Leach rpt. at 32-33).

No provider, at CCCC or at MetroHealth, who examined Davis detected any disruption of normal brain activity that characterize true seizures.  (Kern rpt. at p. 8).  Instead, Davis suffered from "pseudoseizures" or "psychogenic non-epileptic seizures."  *Id.*  As Dr. Kern opines, "[p]atients may also exhibit random muscle movement that is done on a volitional [voluntary]

basis, to give the appearance of epileptic seizures." *Id.*  As MetroHealth emergency room Physician Lauren Gustafson noted on December 18, 2018, Davis's "history and exam [are] not consistent with seizures."  (Davis MetroHealth at Bates No. County 1773).

Davis was released from custody when she was at the MetroHealth emergency room on December 22, 2018, and left the hospital against medical advice (AMA).  (Davis 58:16-18).  Davis then went to the emergency room at the Cleveland Clinic Main Campus.  (Davis 58:19-25).  At the Clinic, Davis was seen by neurology and cleared with the diagnosis of pseudoseizures.  (Kern rpt. at p. 7).  Medical personnel, at CCCC, at MetroHealth and at the Cleveland Clinic, repeatedly determined that Davis's "seizure-like" behavior were caused by voluntary muscles movements.

Leach and Kern opine that CCCC's handling of Davis's "seizure" symptoms was appropriate from both a correctional and medical perspective.  Kern also offers two additional medical opinions of note.  First, Davis was prescribed Clonazepam, a benzodiazepine similar to Xanax, on December 18, 2018.  "[E]ven if Davis had been taking [Xanax] immediately prior to her arrest [on December 15, 2018], the absence of a benzodiazepine for three days should not cause long term effects." (Kern rpt. at p. 8).  Second, the decision to adjust Davis's dose of another drug, Abilify was "very unlikely" to cause seizures or any long-term effects.  *Id.*

Against this medical record, Davis fails to establish that anyone at CCCC did anything wrong.  Without expert medical testimony establishing some detrimental effect, the County is entitled to summary judgment on Davis's claim.  *Santiago,* 734 F.3d at 590.

## V.    CONCLUSION

For the foregoing reasons, Defendant Cuyahoga County is entitled to summary judgment with respect to all claims asserted against it.

## **CERTIFICATION OF COMPLIANCE WITH L. R. 7.1(f)**

This memorandum is twenty (20) pages long (not including this certificate).  This memorandum complies with L.R. 7.1(f).

/s/ *Michael J. Stewart*
MICHAEL J. STEWART (0082257)
Assistant Prosecuting Attorney


## **CERTIFICATE OF SERVICE**

I certify that on the February 1, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Michael J. Stewart*
MICHAEL J. STEWART (0082257)
Assistant Prosecuting Attorney