# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| TABATHA JACKSON, et al., | ) |
| Plaintiff, | ) CASE NO.: 1:20-cv-02649 |
| vs. | ) JUDGE: CHARLES E. FLEMING |
| CUYAHOGA COUNTY, OHIO, et al. | ) |
| Defendants. | ) |

## DEFENDANT RANDY PRITCHETT'S MOTION FOR SUMMARY JUDGMENT

Now comes Defendant Randy Pritchett and respectfully moves the Court for Summary Judgment pursuant to Fed.R.Civ.P. 56. Beyond her own conclusory and self-serving testimony, Plaintiff Tabatha Jackson has no evidence supporting her allegation that she was the victim of excessive force.

At minimum, Pritchett is entitled to qualified immunity with respect to Jackson's claims.

A Memorandum in Support is attached hereto.

i

Respectfully submitted,

MICHAEL C. O'MALLEY, Prosecuting Attorney of Cuyahoga County, Ohio

By: /s/ *Matthew Convery*
Michael J. Stewart (0082257)
mjstewart@prosecutor.cuyahogacounty.us
Phone: (216) 443-6673
Brendan D. Healy (0081225)
bhealy@prosecutor.cuyahogacounty.us
Phone: (216) 698-6447
Matthew Convery (0095704)
mconvery@prosecutor.cuyahogacounty.us
Phone: (216) 443-7763
CUYAHOGA COUNTY PROSECUTOR'S OFFICE
The Justice Center, Courts Tower
1200 Ontario Street, 8th Floor
Cleveland, OH 44113
Fax: (216) 443-7602

*Attorneys for Defendant Cuyahoga County and Randy Pritchett*

ii

**MEMORANDUM IN SUPPORT**

There is no <u>genuine</u> issue of material fact and Jackson's claims against Corporal Randy Pritchett fail as a matter of law. Jackson presents no evidence that her version of events is anything but a complete fabrication. Critically, Jackson is entirely unable to present any evidence that creates a genuine issue of material fact that Corporal Pritchett used anything other than objectively reasonable force in separating Jackson from another inmate that she was fighting while both were waiting in the Cuyahoga County Corrections Center ("CCCC") medical unit. Lastly, Jackson's medical records reveal no injuries, or even complaints of injuries, regarding the purported force Corporal Pritchett is alleged to have used against Jackson when responding to an altercation between her and another inmate.

Therefore, Jackson's claims against Defendant Corporal Pritchett are entitled to summary judgment.

**I.    RELEVANT FACTUAL BACKGROUND**

Jackson alleges Defendant Corporal Randy Pritchett used excessive and unconstitutional force against her on December 10, 2018. (FAC, ECF# 20 at ¶83-97).

Jackson allegations stem from her being separated and then transported to the medical unit following her altercation with another inmate, Fatima Suleiman. Jackson was sitting in a bullpen outside the medical dispensary[1] on the sixth floor of CCCC when she was waiting to see the dentist. (Jackson 95:6-95:12). Jackson and Suliman got into a physical altercation. (Jackson 97:11-98:24). Correction Officers Kimberly Brown-Wiggins and Nancy Muszynec heard the commotion and separated both inmates. (Brown-Wiggins dec at ¶¶ 7-8; Muszynec dec at ¶ 7). After the two

---

[1] At the time, Jackson was housed in Disciplinary Isolation due to a previous incident in which she was disruptive and cursed at another Corrections Officer. (Jackson 93:13-93:16).

1

inmates were separated, Brown-Wiggins handcuffed Jackson. (Brown-Wiggins dec at ¶¶ 7-8; Jackson 100:6-100:8). Corporal Randy Pritchett, a first-line supervisor, responded to the incident. (Jackson 101:10-101:22; Pritchett dec. at ¶ 5).

Jackson alleges Corporal Pritchett handcuffed her and slammed her into a desk and walls. (Jackson 102:2-17; 103:424; 104:1-18).[2] As a result, Jackson contends that her face was swollen and the staples from her previous gunshot wound were pushed in, which caused her to bleed. (Jackson 104:14-18; 103:12-19).

Other than her own implausible and self-serving statement, however, Jackson can present no evidence supporting her claim, which is flatly contradicted by the remainder of the record, including contemporaneous medical records.

As an initial matter, Corporal Pritchett, Correction Officer Brown-Wiggins and Correction Officer Musznyec all deny that Corporal Pritchett slammed Jackson in any manner, or otherwise utilized excessive force. (Brown-Wiggins dec at ¶ 12; Musznyec dec at ¶ 7; Pritchett dec. at ¶ 9). None of the officers observed any physical injuries to Jackson. (Brown-Wiggins dec at ¶ 10; Musznyec dec at ¶ 7; Pritchett dec. at ¶ 6). Correction Officer Brown-Wiggins was with Jackson for the entire time from the beginning of the altercation, while she was seen in the medical unit, and until she was returned to her housing unit. (Brown-Wiggins dec at ¶ 10).

In contrast, the other inmate involved in the incident (Suleiman) suffered injuries sufficiently serious in her altercation with Jackson that she was transport the MetroHealth emergency room by EMS squad. (Pritchett dec. at ¶ 7).

---

[2] Correction Officer Brown-Wiggins attests, both in the attached declaration and in a contemporaneous report of the incident, that she was the first to respond to the altercation and handcuffed Jackson without further incident. (Brown-Wiggins dec at ¶ 7).

2

Critically, and ultimately entirely damning to Jackson's claim, immediately following the incident, Physician Assistant Sean Francis conducted a physical examination of Jackson. (Jackson MetroHealth at Bates No. County 6619) (Filed as Exhibit in Cuyahoga County's Motion for Summary Judgment). PA Francis documented that Jackson had no blunt injury, no injury or facial swelling, and no external signs of facial injury. *Id.* Jackson's sole statement made to medical staff regarding the incident was she was "got slapped in the face.[3]" *Id.* PA Francis progress notes of the incident documents Jackson's only complaint as "I think injured my sciatica." *Id.* Later that day, Jackson was evaluated by a medical profession, again, within two hours of Jackson altercation with Inmate Sulemain, this time by Dental Hygienist Andrea Sitler. *Id.* at Bates 6620. No injuries were documented, nor did Jackson complain of any injuries. *Id.* This is entirely contrary to Jackson's later-stated current narrative involving Corporal Pritchett. *Id.*

Jackson's allegation that Corporal Pritchett's treatment of her following her altercation with Inmate Sulemain resulted in her bleeding from surgical staples used to close her gunshot wound is even more implausible. (Jackson 106:18-25). This bleeding is not recorded anywhere in her medical records. More seriously, Jackson was shot in July 2017, full year before the alleged incident with Corporal Pritchett. (Jackson 50:15-51:6; 55:17-55:20; Jackson MetroHealth at Bates No. County 6619). Worse yet, there is no evidence that Jackson even had surgical stables in December 2018. (See Jackson MetroHealth records generally; Kern rpt. at pp. 4-5).

---

[3] Jackson explains in her deposition that Inmate Sulemain "slapped the hell out of [her] like a Will Smith to Chris Rock kind of slap." (Jackson 98:4-9).

3

Until she filed her complaint in the instant case, Jackson admitted that she never discussed this incident with anybody[4], including inmates, Officers, family, friends, or medical staff[5]. (Jackson 110:16-17). Nor did Jackson file a grievance concerning her allegation of the use of excessive force by Corporal Pritchett. (Jackson 127:4-7). Lastly, Jackson admits she is unable to produce any evidence that her version of events is true. (Jackson 109:22-25; 110:1-20).[6]

Based upon all available evidence, Jackson has no means of proving any of her allegations regarding Corporal Pritchett handcuffing her and shoving her into a desk and wall. Further, based upon her own medical records, even if Jackson were able to prove that Corporal Pritchett shoved her into a desk and wall, Jackson is unable to prove that she suffered any injuries.

## II. LAW AND ARGUMENT

### A. Standard of Review: the Court must grant summary judgment when there are no *genuine* issues of material facts.

A court must grant summary judgment where there remain no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. *Burchett v. Kiefer*, 310 F.3d 937, 941 (6th Cir. 2002); *Hopson v. Daimler Chrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002). While the burden is on the moving party to show that no genuine issue of material fact

---

[4] When first asked Jackson stated she relayed the encounter with Corporal Pritchett to her friends "Sandra and Terrell."
 (Jackson 110: 23). Upon being provided the audio recordings of her conversation following the incident, see Jackson dep. Ex. 4, however, Jackson admitted that "[Corporal Pritchett] was nothing to talk about because I didn't go to the hole for him." (Jackson 120: 7-11). During the call, Jackson instead admitted that she told Sandra that she jumped up and broke the other lady's nose and fingers. (Jackson 117:8).
[5] Jackson alleged that she relayed the encounter with Corporal Pritchett to Amanda Prince, her psychiatrist with Signature Health. (Jackson 111: 14-15). A review of Jackson's entire medical record, however, reveals a myriad of traumatic experiences in Jackson's life, but makes no mention of any interacts at CCCC.
[6] In Jackson's deposition, Jackson vaguely remembers Correction Officer Brown-Wiggins, but could not remember anybody else involved including: fellow inmates in the bullpen area, other inmates she may have spoken with at the CCCC, or Correction Officers.

exists, "that burden may be discharged by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Bennett v. City of Eastpointe*, 410 F. 3d 810, (quoting *Celotex Corp.*, 477 U.S. at 325).

The moving party need not support its motion with evidence disproving the opposing party's claims. Rather, the moving party need only point out there is an absence of evidence supporting such claims. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir.1996).

To defeat summary judgment, the non-moving party must present a <u>genuine</u> issue of fact. Self-serving statements, without more, are not sufficient to survive summary judgment. *Charles v. Air Enters, LCC,* 244 F.Supp.3d 657, 661 (N.D. Ohio 2017), citing *Wolfe v. Vill. of Brice, Ohio*, 37 F. Supp. 2d 1021, 1026 (S.D. Ohio 1999). Moreover, the Court is free to reject the non-movant's version of events when it is "so utterly discredited by the record as to be rendered a 'visible fiction.'" *Bolson Materials Internatl. Corp. v. 3D Sys. Corp.*, 746 F.App'x 445, 452 (6th Cir.2018), citing *Chappell v. City of Cleveland*, 585 F.3d 901, 906 (6th Cir. 2009).

**B. <u>Jackson has no evidence that Pritchett utilized unreasonable force.</u>**

Jacksons is unable to present any evidence that creates a genuine issue of material fact Corporal Pritchett's use of force was not objectively unreasonably considering Jackson's aggression towards another inmate.

Arguendo, assuming Jackson can provide any evidence that Corporal Pritchett handcuffed her and restrained her against a desk and wall, Jackson cannot present evidence that his conduct was objectively unreasonable. To establish a § 1983 claim for excessive force under the Fourth Amendment, the U.S. Supreme Court has "adopt[ed] a bright line rule that a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Morabito v. Holmes*, 628 F. App'x 353, 357 (6th Cir. 2015), quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). The "objective reasonableness" test established under the Fourth

5

Amendment in *Graham v. Connor*, 490 U.S. 386 (1989), provides the framework for analyzing allegations that corrections officers used excessive force against a pretrial detainee. *See Kingsley*, 576 U.S. at 397; *Coley v. Lucas Cty.*, 799 F.3d 530, 537 (6th Cir. 2015).

In *Kingsley*, the U.S. Supreme Court acknowledged that the Fourth Amendment's "objective reasonableness" standard is incapable of mechanical application when scrutinizing a corrections officer's use of force against a pre-trial detainee. *See Kingsley*, 576 U.S. at 397; *see also Graham*, 490 U.S. at 395. This is because "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (citations and quotations omitted). Rather, reviewing courts must consider the "totality of the circumstances" surrounding the use of force "in light of the facts and circumstances of each particular case." *Id.*, citing *Graham*, 490 U.S. at 397.

Courts must be cognizant of the rate at which events unfold, and the "calculus of reasonableness must embody allowances for the fact that [law enforcement] officers are forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-397.

In determining the reasonableness of an officer's actions, the Court must therefore consider the "perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 576 U.S. at 397. *Kingsley* set forth the following, non-exhaustive considerations that bear on the reasonableness of the force used:

> [1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; [6] and whether the plaintiff was actively resisting.

6

*Kingsley*, 576 U.S. at 397 (2015), citing *Graham*, 490 U.S. at 396. "A court must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.*, citing *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979).

Where officers are forced to make quick decisions in response to an unruly detainee, the Sixth Circuit is reluctant to find that their actions were objectively unreasonable.

Jackson can point to no document to support that she suffered any injuries, which also tends to show that the force was not excessive. As noted above by PA Francis and Dental Hygienist Andrea Sitler, an immediate evaluation, and again two hours later, revealed that Jackson had no signs of injury to her head, face, or back in the body. (Jackson MetroHealth at Bates No. County 6619-6620). There is no medical evidence that Jackson even <u>had surgical staples</u> more than a year and a half after her gunshot wound and surgery.

Applying the *Kingsley* factors, even if Jackson versions of events were in fact reality, which Defendants maintain they are a factual impossibility, Corporal Pritchett's alleged use of force was not excessive. There was a need, under the circumstances, for CCCC Correction Officers to use force to regain control of a potentially dangerous situation between two inmates fighting in the presence of other inmates.

All parties agree that Correction Staff responded to an altercation between to inmates in a holding cell where there were several other inmates. Jackson alleged that she was handcuffed and shoved against the wall and desk. The need to restrain, and separate both parties was great, as both inmates posed an active threat to each other. Further, since the alleged forced took place in bullpen in the booking section of the CCCC, Jackson and Sulemain needed to be separated as quickly as possible for the safety of the remaining inmates in the bullpen. Lastly, all parties agree that

7

Jackson's physical altercation with Sulemain was severe enough to require that Sulemain be transferred to MetroHealth Hospital system immediately following the altercation. Under these circumstances, an officer in Pritchett's position would reasonably perceive Jackson as a threat not only to Inmate Suleman, but to the other inmates in the "bullpen" awaiting to be in-processed. Furthermore, the use of handcuffs was appropriate considering Jackson's aggressive behavior[7].

The balance of the *Kingsley* factors all favor Defendant. *Kingsley* suggests that the following considerations may prove relevant to a determination of excessive force: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiffs injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id*., citing *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). Jackson cannot show that she suffered injuries, which tends to show that the force used was not excessive. In addition, immediately following her altercation with Inmate Sulemain, and immediately following the period to which she alleges Corporal Pritchett used excessive force claim against her, Correction Staff ensured she was seen by medical. For these reasons, even the purported force used against Jackson was objectively reasonable. Jackson cannot establish a constitutional deprivation and Jackson's claim against Corporal Pritchett fail as a matter of law.

The myriad of case law also supports that even Jackson's purported force used by Corporal Pritchett does not amount to a constitutional violation and was reasonable under the circumstances. see *Ayala-Rosales v. Teal*, 659 Fed. Appx. 316, 321 (6th Cir. 2016) (holding post-*Kingsley* that force used to control a drunken pretrial detainee was entitled to some deference); see also *Smith v.*

---

[7] As documented by medical and by Correction Officers, the injuries Jackson inflicted on Fatima Suleiman required transport to MetroHealth system. (Muszynec dec at ¶ 8).

*Wilson County Sheriff's Office*, 2018 U.S. Dist. LEXIS 119951 at *5 (M.D. Tenn., 2018) (granting motion to dismiss where pretrial detainee alleged that force used to break up fight was excessive).

Even if Jackson's allegations were true, the force claimed would be the minimum force required to put handcuff on someone and separate a person from an altercation. The force alleged is better categorized as de minimis force. Not every touch by a prison guard gives rise to a federal cause of action; the prohibition of cruel and unusual punishment under the Federal Constitution's Eighth Amendment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. *Hudson v. McMillian*, 503 U.S. 1, 4 (1992).

Although no bright line rule exists to whether force used is de minimis, the following cases support a determination that even the alleged force should be considered de minimis: *Jones Bey v. Johnson*, 248 Fed. App'x. 675, 677 (6th Cir. 2007) (finding that the plaintiff's wrist injuries of pain and swelling were so slight that even if true they are de minimis) *Bullocks*, 478 F. Supp. 3d 648 (S.D. Ohio 2020), aff'd, No. 20-3428, 2021 WL 1578198 (6th Cir. Mar. 1, 2021) (finding swelling and bruising to be relatively minor injuries that do not satisfy the objective prong for excessive force); *Goudlock v. Blankenship*, N.D.Ohio No. 1:13-cv-1215, 2016 U.S. Dist. LEXIS 89484, at *18 (July 11, 2016), citing *Rogers v. Shostak*, No. 1:14CV213, 2015 U.S. Dist. LEXIS 73379, 2015 WL 3604057, at *7-*9 (S.D. Ohio June 5, 2015) (plaintiff testified that defendant punched him "hard" in the chest, but summary judgment was appropriate on excessive force claim in the absence of evidence of a discernible injury or evidence that the force used was more than de minimis); 2014 U.S. Dist. LEXIS 41051, 2014 WL 1276153, at *3 (S.D. Ohio Mar. 27, ("[A]s the Magistrate Judge noted, the medical records in evidence show no discernible injury to Plaintiff, and therefore Defendants' actions constituted a *de minimis* use of force. Plaintiff has not provided any evidence which would contradict the medical records, which show that Plaintiff

9

only suffered a small cut and complained of burning in his eyes from the mace."); *c.f. Dixon v. Neubacher*, No. 1:12 CV 1213, 2015 U.S. Dist. LEXIS 41686, at *18 (N.D. Ohio Mar. 31, (distinguishing *Harrison*, 2013 U.S. Dist. LEXIS 136779, at *8 on the grounds that plaintiff presented evidence of injuries).

Applying these concepts here, Jackson cannot escape summary judgment because, even if her account of the incident were accepted as true, a rational jury could not find that Corporal Pritchett's force was anything more than de minimis.

### C. At minimum, Corporal Pritchett is entitled to qualified immunity.

Qualified immunity protects government officials from civil damages unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established' at the time." *Reich v. City of Elizabethtown*, 945 F.3d 968, 977-978 (6th Cir. 2019) citing *D.C. v. Wesby*, 138 S. Ct. 577, 589, (2018).  This doctrine "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Id.,* citing *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009) (citation omitted). Moreover, at the pleading stage, the Court must "determine whether the facts alleged make out a violation of a constitutional right. And also ask whether the right at issue was clearly established when the event occurred so that a reasonable officer would have known that his conduct violated it." *Crawford,* 15 F. 4th at 762-763, quoting *Pearson v. Callahan,* 555 U.S. 223, 236 (2009). The Court may answer these questions in any order.  *Id.*

As noted above, Jackson's claim against Corporal Pritchett fails the first prong of qualified immunity because she cannot survive summary judgment on whether she was subjected to a constitutional violation.

Jackson's claim also does not clear the "clearly established" hurdle with respect to Corporal Pritchett.  Generally, the plaintiff must identify a prior case with a similar fact pattern to defeat a

motion to dismiss based on qualified immunity. *Arrington-Bey v. City of Bedford Hts.*, 858 F.3d 988, 993 (6th Cir. 2017); *White v. Pauly*, 137 S. Ct. 548, 552 (2017).  The Supreme Court has recently reinforced the principle that the prior decision(s) cannot define the "clearly established" right at a high level of generality, but must closely match the legal and factual issues presented. *City of Tahlequah v. Bond*, 142 S.Ct. 9, 12 (2021); *Rivas-Villegas v. Cortesluna*, 142 S.Ct. 4, 8 (2021).

To be sure, the right to be free from excessive force under the Fourth Amendment is well-established in general terms.  Jackson has not (and cannot) point to a case, however, where a Court found in favor of a Plaintiff who was entirely unable to provide any evidence other than the mere allegation of excessive force, nor any injury from the allegation. As Correction Officers Brown-Wiggins and Muszynec, medical staff at the CCCC, and the entirety of Jackson's medical records demonstrate that Corporal Pritchett did not engage in unreasonable or excessive use of force against Jackson, Corporal Pritchett is entitled to summary judgment in his favor.

**CERTIFICATION OF COMPLIANCE WITH L. R. 7.1(f)**

This memorandum is twenty (11) pages long (not including this certificate). This memorandum complies with L.R. 7.1(f).

/s/ *Matthew Convery*
MATTHEW CONVERY (0095704)
Assistant Prosecuting Attorney

**CERTIFICATE OF SERVICE**

I certify that on the February 1, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Matthew Convery*
MATTHEW CONVERY (0095704)
Assistant Prosecuting Attorney