**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TABATHA JACKSON, et al.,** | ) | |
| **Plaintiff,** | ) | **CASE NO.: 1:20-cv-02649** |
| **vs.** | ) | **JUDGE: CHARLES E. FLEMING** |
| **CUYAHOGA COUNTY, OHIO, et al.** | ) | |
| **Defendants.** | ) | |

---

**DEFENDANT CUYAHOGA COUNTY'S**
**REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

---

Now comes Defendant Cuyahoga County and respectfully submits the following reply in support if its Motion for Summary Judgment, ECF# 53.

**A. The Court should grant the County's Motion for Summary Judgment on claims that Plaintiffs abandoned by failing to respond.**

Plaintiffs do not meaningfully respond to the County's argument for summary judgment on several claims, including all of Count Two, the medical claim. See: ECF# 53 at PageID# 1372-1377. In addition, Plaintiffs fail to respond to Defendants' argument to dismiss the *Monell* claims against the County arising from Jackson's allegations of excessive force against Defendant Pritchett. *Id.* at PageID# 1363. The Court should proceed to dismiss these claims.

"[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich.,* 545 F.App'x 368, 372 (6th Cir. 2013), citing *Colston v. Cleveland Pub. Library,* N.D. Ohio No. 1:12cv204, 2012 U.S.Dist.LEXIS 113527 at n.2 (Aug. 13, 2013) (deeming a claim abandoned and when a plaintiff did not respond or even mention claim in her opposition).

Here, the County argues that Plaintiffs' medical claims fail for lack of supporting medical evidence and for failing to identify a policy or practice sufficient to impose liability on the County under *Monell v. New York City Dep't of Social Service,* 436 U.S. 658 (1978). ECF# 53 at PageID# 1363, 1372-1377. In addition, Jackson's medical claim concerning treatment of her gunshot wound in 2017 is time-barred. *Id.* at PageID# 1372-1373. Plaintiffs do not respond and abandon the medical claim in their First Amended Complaint, ECF# 20 at ¶¶ 57-83.

Jackson's *Monell* claim against the County arising from her encounter with Defendant Randy Pritchett fail because Plaintiffs present no evidence of a policy or practice related to excessive force. ECF# 53 at PageID# 1363-1364. Plaintiffs abandon this claim.

**B. Plaintiffs cannot change their theory of the case in their summary judgment response.**

Rather than disputing the facts presented in Defendants' Summary Judgment Motion, Plaintiffs change horses in midstream in their response concerning Individual Count I.

In their initial and amended complaints, Plaintiffs' *Monell* claim against the County focused on nine discrete alleged "unsanitary, inhumane and unconstitutional conditions" including noisy sleeping conditions, food service, sanitation and pest control. See: Cmplt., ECF# 1-1 at ¶¶ 47-50; FAC, ECF# 20 at ¶¶ 47-50. The parties filed briefing about these allegations early in the case. See: Motion to Strike Class Allegations, ECF# 10 at PageID# 170-177; Response, ECF# 14 at PageID# 216-217. The parties conducted discovery with the understanding that Plaintiffs complaint related to these nine conditions. Defendants produced an expert report addressing the same nine conditions. Leach rpt., ECF# 48-1 at PageID# 1127-1144.

Defendants seek summary judgment on this claim because, among other reasons: 1) the Sixth Circuit does not recognize an amorphous "overall conditions of confinement" claim (ECF#

53 at PageID# 1356); and 2) Plaintiffs lack evidence pushing any of their nine conditions over the line from unpleasant to unconstitutional. (*Id.* at PageID# 1365-1371).

Plaintiffs respond by virtually abandoning their nine discrete conditions and introducing new ones.. Specifically, Plaintiffs now point to alleged overcrowding and "red zoning," or confining inmates in their cells for limited periods due to short-term staffing shortages. Response, ECF# 63 at PageID# 2342. Neither overcrowding nor "red zoning" appear in anywhere in the initial or amended complaint. See: ECF# 1-1; ECF# 20. These are entirely new theories raised for the first time in response to a motion for summary judgment.

Plaintiffs may not use their summary judgment briefing to press new claims. *Howard v. Tennessee,* 740 F.App'x 837, 842-43 (6th Cir. 2018). Plaintiffs must amend their complaint to provide a fair opportunity for Defendants to conduct their own investigation and discovery. *Id.* See also: *Bridgeport Music v. WB Music Corp.,* 508 F.3d 394, 400 (6th Cir. 2007) (plaintiff could not assert a new theory of liability or new alleged copyright violations in response to a motion for summary judgment). The Court cannot consider Plaintiffs' newly-raised theory of overcrowding.

**C. The Court cannot consider the hearsay evidence attached to Plaintiffs' opposition pursuant to Fed.R.Civ.P. 56(c)(2).**

Plaintiffs attach four exhibits to their response: 1) testimony from the 2019 criminal trial of former Corrections Administrator Ken Mills (ECF# 63-1); 2) an unauthenticated copy of the 2018 Quality Assurance Review conducted under the auspices of the United States Marshal's Service (ECF# 63-2); 3) an unauthenticated version of a February 2019 report from the Cuyahoga County Inspector's General's Office (ECF# 63-3); and 4) a series of unauthenticated work orders produced by the County in discovery (ECF# 64-3). The County objects to these materials pursuant to Fed.R.Civ.P. 56(c)(2).

As the County has twice argued, these materials are inadmissible hearsay. See: Reply in Support of Motion to Quash, ECF# 42 at PageID# 598-600; MSJ, ECF# 53, PageID# 1362-1363. Plaintiffs nonetheless attach them to their opposition, but provide no argument why the Court should consider them.

"Evidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence… must be disregarded." *Tranter v. Orick,* 460 F.App'x. 513, 514 (6th Cir. 2012), quoting *U.S. Structures, Inc. v. J.P. Structures, Inc.,* 130 F.3d 1185, 1189 (6th Cir. 1997). In *Tranter,* the Sixth Circuit affirmed the decision not to consider an unauthenticated police department investigation report attached to the plaintiff's summary judgment response because both the report itself and the witness statements contained therein were hearsay. *Tranter,* 460 F.App'x at 514-515. See also: *Davis v. Detroit Pub. Sch. Cmty Dist*., 835 F.App'x 18, 22 (6th Cir. 2020) (newspaper articles and information is "generally known in the community" constitutes hearsay and not sufficient to create an issue of fact to survive summary judgment).

**1. <u>The USMS and Inspector General's Reports.</u>**

The 2018 "U.S. Marshal's Report" is unsigned and was not prepared by federal employees at all, but by a private entity: Correctional Management and Communication Group, LLC. USMS Report, ECF# 63-2 at PageID# 3571. Neither the Marshal's Service itself, nor the subcontractor that conducted the inspection, have any legal enforcement authority over jail stamdards. The report draws no conclusions about constitutional minimums.

Much of the report, including sections quoted in Plaintiffs' opposition, rely on anonymous interviews with CCCC staff and inmates. See: Response, ECF# 63 at PageID# 2643. There is nothing in the report itself to suggest that the inmates interviewed were describing

contemporaneous events or any of the areas of CCCC involved here. There is no indication: 1) how many inmates were surveyed; 2) the questions asked; 3) the methodology used in survey.

Similarly, the unauthenticated 2019 Draft Inspector General's Report (ECF# 63-3) is a draft, as it does not represent anyone's conclusions or factfinding. This draft also post-dates: 1) Davis's confinement to CCCC entirely; and 2) any portion of Jackson's confinement to a general population pod. (Christopher dec., ECF# 51 at ¶¶ 8-9). Moreover, the report's discussion of the potential problems of red zoning is taken from inmate grievances and anonymous interviews with inmates. This "hearsay within hearsay" is impossible to cross examine and clearly inadmissible.

Plaintiffs do not explain why the Court should consider these unauthenticated documents at the summary judgment stage. The Second Circuit, however, reversed a jury verdict in which the Plaintiff relied exclusively a similar "Investigative Report" about conditions at the Attica Correctional Facility. *Abascal v. Fleckenstein,* 820 F.3d 561 (2d Cir. 2016). Like here, the report in *Abascal* involved an unidentified author from a quasi-government entity that relied liberally on anonymous interviews and surveys of inmates. Such a report does not qualify under either the Business Records or Public Records exception to the hearsay rule. *Id.* at 565-567.

**2. Testimony from the Kenneth Mills criminal trial.**

Plaintiffs attach excerpts from the three-week criminal trial of former Jail Director Kenneth Mills to oppose summary judgment.[1] (ECF# 63-1). Leaving aside whether any this testimony is relevant, it is not admissible here.

[1] The witnesses from the *Mills* trial quoted in Plaintiffs' brief (union attorney Adam Chaloupka, FBI agents Mark Thevenin and Daniel Eyer, former corrections officers Timothy Dugan and Charles Enoch) do not appear on Plaintiffs initial disclosures under Fed.R.Civ.P. 26 or in response to interrogatories requesting that Plaintiffs identify potential witnesses. See, e.g. ECF# 46-5 at PageID# 888; ECF# 47-2, PageID# 1062. Had Plaintiffs disclosed that they may rely on these specific witnesses, Defendants would have at least strongly considered seeking their

Former testimony is admissible under Fed.R.Evid. 804(b)(1) if, and only if: 1) the declarant is "unavailable;" and 2) the testimony is offered against a party who had (or its predecessor in interest had) an opportunity and similar motive to develop it by direct or cross examination. Here, there is no indication that any of the individuals whose testimony is excerpted and attached to Plaintiffs' opposition is "unavailable" to provide declarations or deposition testimony in this case. Plaintiffs simply chose not to obtain this testimony.

Defendants did not participate in Mr. Mills's criminal trial and did not have an opportunity to develop testimony during this proceeding. "The opportunity to examine the declarant provides safeguards similar to the circumstantial guarantees of trustworthiness found in other exceptions to the hearsay rule." *In re Complaint of Paducah Towing C*o., 692 F.2d 412, 418 (6th Cir.1982). Here, the *Mills'* criminal trial involved resolving the issue of Mr. Mills' culpability for certain criminal conduct, including making false statements to the Cuyahoga County Council and dereliction of duty. No party to the *Mills* trial had motivation to protect to the interests of Cuyahoga County. The State was motivated, in part, to attack the management of CCCC. Mr. Mills was motivated by a desire to shift blame elsewhere. In the end, Mr. Mills's convictions were ultimately reversed on appeal. *State v. Mills,* 8th Dist. Cuyahoga No. 110893, 2022-Ohio-4010.

**D. Even if the Court considers Plaintiffs' attachments, they do not point to any evidence to create a dispute of facts on their "conditions of confinement" claim.**

Even if the Court considers Plaintiffs' hearsay evidence and their new legal theory about "red zoning," it should nonetheless grant the County's motion for summary judgment.

**1. Plaintiffs' Seventh Circuit caselaw regarding qualified immunity is irrelevant.**

depositions about whether they personally observed any of the conditions alleged by Jackson and Davis.

In their response, Plaintiffs cite heavily to caselaw from the Seventh Circuit regarding qualified immunity for individual corrections officers and officials[2] who personally witnessed or imposed "inhumane conditions of confinement." Response, ECF# 63 at PageID# 8, 10-14. Plaintiffs also extensively discuss qualified immunity in their response. *Id.* The caselaw to which Plaintiffs relying upon is inapposite to this case for two fundamental reasons: 1) qualified immunity, which protects individual officers that make good-faith decisions, is not relevant to Plaintiff's remaining claims against the County; and 2) the Seventh Circuit has adopted a "totality of the circumstances" framework that is explicitly rejected in the Sixth Circuit.

The County is the only remaining Defendant with respect to "Count 1." As set forth in Defendants' opening brief, Plaintiffs must offer sufficient evidence of both a constitutional violation and the County's responsibility under *Monell.* MSJ, ECF# 53 at PageID# 1361, citing *Howard v. City of Girard, Ohio*, 346 F.App'x 49, 51 (6th Cir. 2010). Qualified immunity is not directly available to municipalities, but liability can be imposed only if Plaintiffs show that the County failed to prevent harm under the "rigorous requirements of culpability and causation" of a *Monell* claim. *Arrington-Bey v. City of Bedford Hts*., 858 F.3d 988, 995 (6th Cir. 2017) (discussing the interaction between qualified immunity and a *Monell* claim). Seventh Circuit cases discussing circumstances in which individual officers and supervisors "must have been aware" of certain conditions of confinement are simply not relevant to the *Monell* claim presented here.

Moreover, as set forth in Defendants opening brief, the Sixth Circuit has explicitly rejected a "totality of the circumstances" test. MSJ, ECF# at PageID# 1365. Instead, Plaintiffs must identify

---

[2] *Vining-El v. Long,* 482 F.3d 923, 923-24 (7th Cir. 2007) (qualified immunity for guards in a segregation unit who personally witnessed the offending condition); *Johnson v. Pelker,* 891 F.2d 136, 137 (7th Cir. 1989) (individual officers who denied request for dry bedding); *Sanville v. McCaugtry,* 266 F.3d 724 (7th Cir. 2001) (individual medical personnel and guards who interacted with a suicidal inmate).

a specific condition that violates the constitution. Instead of clearly identifying such a condition, Plaintiffs cite to cases from the Seventh Circuit, which does allow a totality of the circumstances test in conditions of confinement cases. See, e.g.: *Farmer v. Defendants*, N.D.Ind. No. 3:22cv149, 2023 U.S. Dist. LEXIS 224, at *4 (Jan. 3, 2023); *Wilson v. Morrow*, C.D.Ill. No. 14-1162, 2017 U.S. Dist. LEXIS 190153, at *7 (Nov. 17, 2017). Controlling caselaw from the Sixth Circuit, however, requires a Plaintiff to identify at least one specific constitutional deprivation in order to pursue a "conditions of confinement" claim.

**2. Plaintiffs do not present sufficient evidence that they suffered a constitutional violation.**

Whether Plaintiffs are proceeding under their new "red zoning" theory, or their original nine conditions of confinement, they cannot survive summary judgment. Plaintiffs offer no legal support for their suggestion that confining them to their cells during so-called "red zoning" creates a constitutional problem. Plaintiffs also fail to offer evidence that any of their original nine conditions rose from unpleasant to unconstitutional.

**a. "Red zoning," or confining inmates to their cells in "lockdown," is not an unconstitutional policy.**

Plaintiffs claim that "red zoning", or extended lockdowns, are unconstitutional. (Response, ECF# 63 at PageID# 2341). But courts in the Sixth Circuit have repeatedly held otherwise:

> We also conclude that Argue has not stated an Eighth Amendment claim concerning his twenty-three hour per day confinement to his cell. Argue's confinement to his cell for twenty-three hours per day, Monday through Friday, does not rise to the level of a constitutional magnitude, because the confinement does not impose an atypical and significant hardship.

*Argue v. Hofmeyer*, 80 F.App'x 427, 429-430 (6th Cir.2003), citing *Sandin v. Conner*, 515 U.S. 472, 484-86 (1995). See also: *Govereh v. Pugh*, N.D.Ohio No. 4:12cv697, 2012 U.S. Dist. LEXIS 120321, at **2, 11 (Aug. 22, 2012) (no constitutional problem when inmates in lockdown confined

to their cells with one or two other inmates were denied visitation, recreation, educational programs, use of the law library, and the use of the telephone and were limited to one shower of five-minute duration every six days); *Groomes v. Parker*, W.D.Tenn. No. 08-2028-An/P, 2008 U.S. Dist. LEXIS 75575, at *27 (Aug. 25, 2008) (collecting cases that confining inmates to their cells, even for extended periods, does not create constitutional problems).

Moreover, as a matter of fact, Plaintiffs were not confined to their cells for twenty-three hour per day (as upheld in *Argue*), or twenty-seven hours straight as implied in their response. ECF# 63 at PageID# 2341-2343. Beginning in November 2018, CCCC began systematically tracking instances of red zoning. (Supp. Christopher dec.[3] at ¶ 7, Ex. 1). In addition, the same information is recorded on daily roster sheets. (*Id.,* Ex. 2) Jackson was affected by red zoning 20 or 21[4] times during her incarceration. (*Id.* at ¶¶ 8-10). Davis experienced zoning for one or two shifts. (*Id.* at ¶ 8). Even on days that red zoning occurred on a shift, inmates would be allowed out of their cells into the dayroom for several hours during the morning and evening, unless these shifts were also affected. (*Id.* at ¶ 9). Critically, neither Plaintiff was ever confined to their cell for 27-hours straight as implied in their brief, based on selective quotation of the Marshal's report.[5]

---

[3] Defendants file Christopher's supplemental declaration and additional documents with their reply brief to address a limited issue, red zoning, which first arose in Plaintiff's opposition.

[4] Jackson was incarcerated at CCCC for 114 days during the two-year statute of limitations period. (Christopher dec., ECF # 51 at ¶ 8). Jackson experienced red zoning between 15 and 20 percent of these days. The spreadsheet appeared to contain an erroneous entry for December 17, 2018 and on May 15, 2019 the lockdown was limited to 1.5 evening hours during which inmates would normally be locked in their cells to sleep.

[5] Without context, Plaintiffs also quote testimony from the *Mills* trial that "[i]n 2018 alone *** 'there were 2,797 instances of red zoning.'" ECF# 63 at PageID# 2343. It is not clear how this figure was calculated. However, CCCC runs three shifts per day across 70-78 active Pods. (Sup. Christopher dec. at ¶ 4). This means that that in a particular year, there are between 75,000 and 85,000 Pod-shifts. Plaintiffs' figure represents between 3 and 4 percent of that total. If nothing else, Plaintiffs presentation illustrates the very real practical problems of permitting a party to introduce completely new theories at the summary judgment stage.

Plaintiffs do not provide any legal or factual support for their contention that confining them to their cells during "red zones" is unconstitutional.

**b. Plaintiffs' deposition testimony alone is not sufficient to survive summary judgment.**

Plaintiffs suggest that they can survive summary judgment because the Court must credit their largely subjective description of allegedly sub-par conditions at CCCC. Even if the Court credits every word of Plaintiffs' deposition testimony, they still cannot survive summary judgment on whether they endured any constitutional deprivation.

First, Jackson relies on testimony regarding CCCC's handling of her gunshot wound. (Response, ECF# 63 at PageID# 2337-2338). Whatever happened, this claim is time-barred. (MSJ, ECF# 53 at PageID# 1372-1373). Jackson was shot in July 2017 and was released directly to CCCC from the hospital. Jackson acknowledged as much in her deposition. (Jackson 50:15-51:6; 55:17-55:20). There is no medical evidence that Jackson had staples closing her wound when she returned to CCCC in 2018, over a year after she was shot. See: Kern rpt., ECF# 49-1, Jackson MetroHealth Records, ECF# 53-3). In their response, Plaintiffs continue to rely on issues related to the gunshot wound without pointing to any medical evidence suggesting that she had surgical staples in 2018, attempting to explain the discrepancy, or presenting legal argument related to the expired statute of limitations.

Second, Jackson materially mispresents the record regarding the time-period of her incarceration when she indicates that she was at CCCC for "ten months straight from July 2018 to May 2019." (Response, ECF# 63 at PageID# 2338). In fact, Jackson estimated that she was at CCCC for eight months. (Jackson 130:88). And even this estimate is belied by her own testimony. Jackson acknowledged that she moved between CCCC and various inpatient treatment programs in 2018 and 2019: Hitchcock Center for Women; the Matthew Talbot House and a program in

Cambridge, Ohio. (Jackson 42:5-46:23). And the records from these facilities generally confirm the dates. In fact, Jackson's longest period of incarceration was 73 days, or approximately 2.5 months: from October 26, 2018 until January 7, 2019. (Christopher dec, ECF# 51 at ¶8(d)). The longest period Jackson spent in a general population pod was 37 days: between November 2, 2018 and December 9, 2018. *Id.* Jackson is entitled to her own subjective opinion about conditions at CCCC, but she is not entitled to misrepresent basic facts about when she was incarcerated.

Third, Davis appears to acknowledge that her "conditions of confinement" claim relates to the "but for one day" that she was placed in a general population pod. (Response, ECF# 63 at PageID# 2349). Davis was assigned to a general pod from December 17, 2018 through December 19, 2018. (Christopher dec., ECF# 51 at ¶ 9). Davis spent the night of December 18/19 at the MetroHealth emergency department. Kern rpt., ECF# 49-1 at PageID# 1155-1156. Plaintiffs offer no authority supporting a "conditions of confinement claim" based on such a short period, particularly without any documented physical injury or illness.

Fourth, and most importantly, Plaintiffs' deposition testimony does not push the evidentiary record concerning the conditions that they experienced over the line from unpleasant to unconstitutional. MSJ, ECF#53 at PageID# 1367-1371. claims related to noise, mattresses and moldy trays are barely mentioned in Plaintiffs' response.

Plaintiffs testified that they found the food served at CCCC to be unappetizing and occasionally spoiled. But they are unable to point to any evidence that their basic nutritional needs went unmet. Plaintiffs claim the water was brown and discolored, but have no evidence that it was not safe for human consumption. More importantly, the County's testing did not find dangerous bacteria in the water. Without medical evidence, Jackson suggests that she "kept throwing up" due to the food (or perhaps the water). Response, ECF# 63 at PageID #2339. But even this is not

enough. Occasional episodes of food poisoning or vomiting do not give rise to an Eighth Amendment claim. *Correa v. Cullum*, S.D.Ohio No. 1:17cv300, 2018 U.S.Dist.LEXIS 72823 at **14-16 (June 7, 2018) (collecting authority).

Plaintiffs rely largely on deposition testimony about sanitation and pest control. However, these conditions generally only rise to constitutional violations when prolonged exposure is coupled with physical injury. MSJ, ECF# 53 at Paged# 1370-1371.

Davis's two-day[6] stay in general population is not "prolonged" under any of the authority.

Jackson's 37 days in a general population pod requires review.[7] Jackson's points to deposition testimony about a single (albeit graphic) incident in which an overflowing toilet supposedly exploded in a "fountain" of sewage. (Response, ECF# 2339-2340, Jackson 83:18-84:10). While this episode (if it occurred) was revolting, it was a single incident. The remainder of Jackson testimony consists of the types of generalized and subjective complaints, unsupported by serious injury, that have been consistently rejected by Courts. Jackson herself never testified that she was placed in cell infested with insects and covered in human waste for "ten months straight" as suggested by Plaintiffs' briefing and the undisputed evidence establishes otherwise.

**3. Plaintiffs present insufficient evidence to impose liability on the County under *Monell*.**

Even if the Court considers all of the hearsay attached to Plaintiffs' opposition and concludes that Plaintiffs' deposition testimony describes unconstitutional, rather than merely

[6] Indeed, Davis' aggregate of six days in custody and most of three days were spent at the MetroHealth emergency room do not qualify.

[7] As noted above, the suggestion in Plaintiffs' brief that Jackson endured identical substandard conditions for "ten months straight" is unsupported to the point of misrepresentation. Response, ECF# 63 at PageID# 2338. First, as noted, Jackson was never actually in custody for such a lengthy period. Second, Jackson acknowledged that her experience in the medical was markedly different where she had access to a bathtub that would "knock your socks off" with its "warm and toasty" comfort. (Jackson 151:17-151:23).

unpleasant, conditions at CCCC, the County is nonetheless entitled to summary judgment. As outlined in Defendants opening brief, the County is only liable for its "policies and practices" under *Monell.* (MSJ, ECF#53 at PageID# 1361-1364).

The Sixth Circuit has recognized four avenues for proving a "policy or custom: 1) legislative enactments; 2) actions taken by officials with final decision-making authority; 3) inadequate training or supervision; or 4) a custom of tolerance or acquiescence to civil rights violations. *Id.,* citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

Plaintiffs do not identify any recognized avenue of imposing liability on the County, or mention *Monell*. Plaintiffs attribute actions[8] to "the County," without providing evidence or legal theory imposing liability on the County as an entity. The Court is left to speculate.

Plaintiffs do not point to official enactments, final decision makers or training/supervision. The only conceivable avenue is "tolerance." Plaintiffs must ultimately show, however, though admissible evidence: 1) a clear and persistent pattern of illegal activity; 2) notice or constructive notice on the part of the defendant; 3) that the defendant's tacit approval of the unconstitutional conduct such that it amounts to an official policy of inanition; and 4) the Defendant's policy was the moving force, or direct causal link, in the constitutional violation. *Thomas,* 398 F.3d at 429.

The similarity between the prior instances and the present conduct must be particularized. *Berry v. Del. Cty. Sheriff's Office,* 796 F.App'x 857, 862 (6th Cir. 2019); *D'Ambrosio v. Marino*,

---

[8] "the County placed [Jackson] in general population" (PageID# 2338); "the County served Jackson food" (PageID# 2339); "the County failed to provide***" (PageID# 2340); "the water the County gave Jackson to drink" (PageID# 2340); "mat that the County had placed***" (PageID# 2341); "the County's intent to make money" (PageID# 2344); "the County locked Jackson in a cell" (PageID# 2346). As a municipal corporation, "the County" cannot directly do any of these things. The County's employees can, but a municipal corporation is not liable under a theory of *respondeat superior,* but only for its policies and practices under *Monell.*

747 F.3d 378, 388 (6th Cir. 2014). Contemporaneous and subsequent conduct cannot establish a pattern of prior misconduct. *Berry,* 796 F.App'x at 862.

On each point, the Plaintiff has an affirmative duty to direct the Court's attention to a particular part of the record, mark each site, identifying the genuine disputes of fact that preclude summary judgment. *Sumpter v. Wayne Cty*., 868 F.3d 473, 490 (6th Cir. 2017). The Court has no obligation to do Plaintiff's work for them. *Id.*

**a. Plaintiffs have not identified a pattern of prior similar constitutional violations.**

Plaintiffs do not identify a single prior instance of alleged constitutional violations. Even if the Court considers them, the materials attached to Plaintiffs' brief do not establish a prior pattern of misconduct. Testimony from the *Mills* trial was elicited in September 2021 and none of the testimony cited in Plaintiffs' brief describes how "the County" was previously notified of anything. ECF# 63-1 at PageID# 2352. The draft inspector general's report, which Plaintiffs do not directly cite in their brief, post-dates Davis's confinement at CCCC and nearly all of Jackson's.[9]

This leaves the November 2018 U.S. Marshal's report. The report was prepared for the purposes of monitoring CCCC's compliance with contractual obligations related to the housing of federal inmates. Leach rpt., ECF# 48-1, PageID# 1128. These are not constitutional minimums. *Id.* Moreover, prior to November 2018, the U.S. Marshals issued a decade-long string of audit reports without identifying any noncompliance. *Id.*

None of the passages cited by Plaintiffs describe prior instances of constitutional violations, let alone similar violations. Response, ECF#63 at PageID# 2343. Courts in the Sixth Circuit have repeatedly affirmed that lockdowns like the "red zoning" at CCCC pass constitutional muster. A

---

[9] Including her entire time in a general population pod.

single inspection revealing the absence of toiletries in some cells does prove of prior constitutional violations. *Assi v. Hanshaw*, S.D.Ohio No. 1:20cv839, 2022 U.S. Dist. LEXIS 159660, at *47 (Sep. 2, 2022) (collecting authority). And none of these passages discuss the specific problems raised by Jackson and Davis: sanitation caused by unrepair plumbing or insect infestations.

**b. <u>Plaintiffs have no evidence of causation between lockdowns and the alleged conditions.</u>**

Plaintiffs have not presented evidence connecting the lockdowns to their alleged injuries.

As set forth in Defendants' opening brief, "proof merely that such a [*Monell*] policy or custom was 'likely' to cause a particular violation is not sufficient; there must be proven at least an affirmative link between policy or custom and violation; in tort-principle terms, the causal connection must be proximate, not merely but-for causation-in-fact." *Mann v. Helmig*, 289 F.App'x 845, 850 (6th Cir. 2008).

There is no intuitively obvious connection between "red zoning" and overflowing toilets or insect infestations. The first does not necessarily cause the second. Plaintiffs lack any evidence connecting the two issues, beyond speculation that "the County must have known."

**E. <u>Conclusion.</u>**

Defendant Cuyahoga County is entitled to summary judgment on all claims.

Claim 1 (Conditions of Confinement) must be dismissed because Plaintiffs because Plaintiffs introduce new theories, rely on inadmissible hearsay, fail to present evidence of a constitutional violation and fail to present evidence supporting their *Monell* theory.

Claim 2 (medical claim) must be dismissed because Plaintiffs fail to respond, fail to present expert evidence or evidence supporting their *Monell* theory.

Claim 3 (Jackson's excessive force claim against the County) must be dismissed because Plaintiffs fail to respond and fail to evidence supporting their *Monell* theory.

Respectfully submitted,
MICHAEL C. O'MALLEY, Prosecuting
Attorney of Cuyahoga County, Ohio

By: /s/ *Michael J. Stewart*
Michael J. Stewart (0082257)
mjstewart@prosecutor.cuyahogacounty.us
Phone: (216) 443-6673
Brendan D. Healy (0081225)
bhealy@prosecutor.cuyahogacounty.us
Phone: (216) 698-6447
Matthew P. Convery (0095704)
mconvery@prosecutor.cuyahogacounty.us
Phone: (216) 443-7763
CUYAHOGA COUNTY PROSECUTOR'S OFFICE
The Justice Center, Courts Tower
1200 Ontario Street, 8th Floor
Cleveland, OH 44113
Fax: (216) 443-7602

*Attorneys for Defendant Cuyahoga County and Randy Pritchett*

**CERTIFICATION OF COMPLIANCE WITH L. R. 7.1(f)**

This memorandum is nine (15) pages long. This memorandum complies with L.R. 7.1(f).

/s/ *Michael J. Stewart*
Michael J. Stewart (0082257)

**CERTIFICATE OF SERVICE**

I certify that on the March 19, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Michael J. Stewart*
Michael J. Stewart (0082257)