**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| TABATHA JACKSON, *et al.*, | CASE NO. 1:20-cv-2649 |
| Plaintiffs, | JUDGE CHARLES E. FLEMING |
| v. | **MEMORANDUM OPINION AND ORDER** |
| CUYAHOGA COUNTY, *et al.*, | |
| Defendants. | |

## I. Procedural History

On October 23, 2020, Plaintiffs Tabatha Jackson and Phyllis Davis filed a complaint with the Cuyahoga County Court of Common Pleas against Defendants Cuyahoga County, Clifford Pinkney, Kenneth Mills, Eric Ivey, and Randy Pritchett. (ECF No. 1, PageID #6–7). The complaint alleges that Plaintiffs had been detained at the Cuyahoga County Corrections Center ("CCCC") and sought to bring a class action under 42 U.S.C. § 1983 for violations of the eighth and fourteenth amendments, as well as individual claims under 42 U.S.C. § 1983 for violations of the fourth, eighth, and fourteenth amendments. (*Id*. at PageID #9–23). On November 25, 2020, Defendants filed a notice of removal pursuant to 28 U.S.C. § 1331. (*Id*. at PageID #1–2).

On December 28, 2020, Defendant Kenneth Mills filed a motion to dismiss. (ECF No. 6). On January 19, 2021, Defendants Cuyahoga County, Eric Ivey, Clifford Pinkney, and Randy Pritchett filed a motion to strike the class allegations. (ECF No. 10). On January 19, 2021, Defendants Eric Ivey and Clifford Pinkney also moved for judgment on the pleadings. (ECF No. 11).

On May 20, 2021, the Court granted all three motions. (ECF No. 18). Defendants Mills,

1

Pinkney, and Ivey were dismissed from the case. (*Id*.). The Court gave Plaintiffs fourteen days to file an amended complaint. (*Id*.). On June 3, 2021, Plaintiffs filed an amended complaint against remaining Defendants Cuyahoga County and Randy Pritchett. (ECF No. 20). Defendants filed an answer to the amended complaint on March 1, 2023. (ECF No. 62).

On February 1, 2023, Defendant Cuyahoga County filed a renewed motion to strike the class allegations. (ECF No. 52). On February 17, 2023, Plaintiffs filed a notice of dismissal of their class claims. (ECF No. 56). The Court dismissed the class count accordingly and denied Defendant's motion to strike as moot. (Order [non-document] dated 02/21/2023).

On February 1, 2023, Defendant Cuyahoga County moved for summary judgment on all claims. (ECF No. 53). Plaintiffs opposed the motion on March 3, 2023. (ECF No. 63). Defendant Cuyahoga County replied in support of its motions on March 20, 2023. (ECF No. 65).

On February 1, 2023, Defendant Pritchett moved for summary judgment on the one claim asserted against him, an excessive force claim brought by Plaintiff Jackson. (ECF No. 54). On March 3, 2023, Plaintiffs opposed the motion. (ECF No. 64). Defendant Pritchett replied in support of his motion on March 20, 2023. (ECF No. 66).

For the following reasons, the Court **GRANTS** Defendants' motions for summary judgment. (ECF Nos. 53 and 54).

## II. Legal Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if it is "based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party." *Henderson v. Walled Lake Consol. Schools*, 469 F.3d 479, 487 (6th Cir. 2006). A fact is material if "its resolution might affect the outcome of the suit under the

governing substantive law." *Id*. The moving party bears the burden of showing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The court views the facts and draws all reasonable inferences in favor of the non-moving party. *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 628 (6th Cir. 2018). Once the moving party satisfies its burden, the burden shifts to the non-moving party to produce evidence that demonstrates that there is a genuine dispute of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

### III. Randy Pritchett

Plaintiff Jackson raised a single claim (count three) against Defendant Pritchett under 42 U.S.C. § 1983 for excessive and unconstitutional force in violation of the Fourth and Fourteenth amendments. (ECF No. 20, PageID #307–09). She alleges that on or about December 10, 2018, Pritchett grabbed her by the arms, slammed her stomach into a desk, threw her into a steel pole, and then forcefully handcuffed her. (*Id*. at PageID #307). As a result of this incident, Jackson allegedly suffered from anxiety and nightmares and was prescribed Prosasin and Visteral. (*Id*.). The amended complaint notes, "[a]t the time he used the unreasonable force, Defendant Pritchett knew Plaintiff Tabatha Jackson had been shot in the back, stomach and arm and required a wheelchair." (*Id*.).

Defendant Pritchett moved for summary judgment as to count three because Plaintiff Jackson did not produce any evidence that any use of force by Defendant Pritchett was not objectively reasonable. (ECF No. 54, PageID #2238). Additionally, Defendant Pritchett asserts he is entitled to qualified immunity. (*Id*. at PageID #2243).

Plaintiff Jackson contends that the Court must accept her version of events for the purposes of summary judgment. (ECF No. 64, PageID #3835). She argues that she did not pose a threat

3

and was not resisting officers at the time of the incident, so "the gratuitous use of force" was a clearly established violation of her constitutional rights. (*Id*.).

Defendant Pritchett replies that Plaintiff Jackson did not address his claim for qualified immunity. (ECF No. 66, PageID #4002). He argues that even without disputing Plaintiff's version of events, Plaintiff fails to establish that any use of force rose to the level of a clearly established constitutional violation. (*Id*).

Defendant Pritchett raises a claim for qualified immunity, so the Court engages in a two-step analysis to determine whether qualified immunity applies: "1) viewing the facts in the light most favorable to the plaintiff, we determine whether the allegations give rise to a constitutional violation; and 2) we assess whether the right was clearly established at the time of the incident." *Coley v. Lucas County, Ohio*, 799 F.3d 530, 537 (6th Cir. 2015). The Court will address the alleged constitutional violation first.

"Excessive force claims can be resolved under the Fourth, Eighth, and Fourteenth Amendments—the applicable amendment depends on the plaintiff's status at the time of the incident: a free citizen in the process of being arrested or seized; a convicted prisoner; or someone in gray areas around the two." *Coley v. Lucas County, Ohio*, 799 F.3d 530, 537 (6th Cir. 2015). Plaintiffs' amended complaint raised fourth and fourteenth amendment claims under count three (ECF No. 20, PageID #307) which could cover from arrest through pretrial detainee. *See Coley*, 799 F.3d at 537–38. Defendant Pritchett's motion for summary judgment assumes that Jackson was a pretrial detainee and applies the test articulated by the Supreme Court in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015) for excessive force claims brought by a pretrial detainee. (ECF No. 54, PageID #2238–43). However, Plaintiff Jackson's opposition exclusively cites to the Eighth Amendment and its protections for convicted prisoners. (ECF No. 64, PageID #3835–38).

4

*See Coley*, 799 F.3d at 537 ("When convicted prisoners bring claims of excessive force, we turn to the Eighth Amendment, which forbids the 'unnecessary and wanton infliction of pain' that constitutes 'cruel and unusual punishment,' and specifically conduct that is malicious and sadistic." (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992))).

The alleged incident with Defendant Pritchett occurred on December 10, 2018. (ECF No. 20, PageID #307). Plaintiff Jackson's booking records from her time at CCCC from October 26, 2018 to January 7, 2019 indicate that she was "confined by not convicted" (ECF No. 51, PageID #1249) and that she was being held on a "probation warrant." (*Id*. at PageID #1271). The Court finds that Plaintiff's Jackson's status was more akin to pretrial detainee than convicted prisoner. As an Eighth Amendment claim was not raised in Plaintiffs' amended complaint, the Court will not consider the Eighth Amendment issues raised in Plaintiff Jackson's opposition briefing.

A pretrial detainee must show that the force purposely or knowingly used against him or her was objectively unreasonable. *See Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). "[O]bjective reasonableness turns on the facts and circumstances of each particular case." *Id*. at 397. The Court makes this determination "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id*. Circumstances relevant to a determination of excessive force include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id*. The Court must "account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained." *Id*.

The Court should not rely on the nonmovant's version of the facts when "that version was so conclusively contradicted by the record that no reasonable jury could believe it." *Chappell v.*

5

*City of Cleveland*, 585 F.3d 901, 906 (6th Cir. 2009) (*citing Scott v. Harris*, 550 U.S. 372, 380–81 (2007)). "The court's duty to view the facts in the light most favorable to the nonmovant does not require or permit the court to accept mere allegations that are not supported by factual evidence." *Id*.

Here, Plaintiff Jackson's deposition was inconsistent with the facts alleged in her complaint and inconsistent with the record. The facts Plaintiff Jackson alleges in her amended complaint are, "Defendant Pritchett grabbed Plaintiff Tabatha Jackson by the arms and slammed her stomach side down onto a desk" and "Defendant Pritchett threw Plaintiff Tabatha Jackson into a steel pole and then forcefully handcuffed her." (ECF No. 20, PageID # 307). At her deposition, Plaintiff Jackson attested that Defendant Pritchett ran in, picked her up, and slammed her into a desk. (ECF No. 46, PageID #711). She states that he slammed her so hard "that my staples smashed in." (*Id*. at PageID #712). "Then he turned around and he snatched me from there and he threw me up against the wall." (*Id*.). She said, "that man hit my head so hard on that wall, this side of my face was swollen." (*Id*. at PageID #713). She alleged that Defendant Pritchett then put handcuffs on her backwards, so her hands were swollen and bleeding. (*Id*. at PageID #715). Plaintiff Jackson stated that after the altercation, her stomach was bleeding from her staples and that they did not take her to a doctor for that. (*Id*.).

Corrections Officers Nancy Muszynec and Kimberly Brown-Wiggins were present during the alleged incident, and they each filed a "Combination Report" detailing what happened. (ECF No. 54, PageID #2270–73). Officer Brown-Wiggins indicated that she "secured inmate Jackson in handcuffs" before "Cpl. Pritchett responded and took over the situation." (*Id*. at PageID #2270). Her report noted the time of the incident as 2:55 p.m. (*Id*.). Officer Muszynec confirmed that she assisted Officer Brown-Wiggins and that they placed handcuffs on Plaintiff Jackson. (*Id*. at

6

PageID #2276). These reports of the incident in question contradict Plaintiff's assertions because Plaintiff was already detained and handcuffed at the time that Defendant Pritchett arrived on scene.

Medical records from December 10, 2018 at 3:44 p.m. reveal that Plaintiff Jackson requested to be seen because she was slapped in the face and her back hurt. (ECF No. 53, PageID #2214). The records note that she had no head injury or facial swelling. (*Id*.). "No external signs of facial injury" and "no visible signs of injury" were noted. (*Id*). Plaintiff Jackson proceeded to have her teeth cleaned by a dental hygienist on December 10, 2018 at 5:40 p.m. with no notes of bleeding or injury to her person. (*Id*. at PageID #2215). These medical records contradict the assertion that Plaintiff Jackson was harmed during the alleged altercation and contradict that she was denied medical attention after the altercation.

In medical records from September 14, 2017, Plaintiff Jackson had a "midline surgical incision with staples intact; no drainage or signs of infection." (ECF No. 53, PageID #2191). On September 17, 2017, it was noted that the staples were intact at this time and that the abdominal wound was "draining copious amounts of yellow drainage from approximately the umbilical area." (ECF No. 53, PageID #2193). On September 19 and 22, 2017, it was noted that her abdominal staples were intact. (ECF No. 53, PageID #2194). On September 25, 2017, medical records indicate that her abdominal staples are intact and area is healing. (*Id*. at PageID #2195). In medical records from October 10, 2017, it was noted that medical staples in Plaintiff Jackson's abdomen needed removed. (ECF No. 53, PageID #1692). It was noted at that time that her "large midline scar" was "well healed" with "no drainage or erythema noted." (*Id*.). Unlike her medical records from 2017, none of the medical records while Plaintiff Jackson was detained in 2018 make any mention of staples, incisions, or any healing scarring. (*Id*. at PageID #2196–2216). On August 24, 2018, medical records note that Plaintiff's abdomen was soft and non-tender. (*Id*. at PageID

7

#2202). Thus, the last record of the presence of any staples was over a year before the alleged incident took place. Plaintiff's assertion that Defendant Pritchett's actions smashed in her staples is contradicted by the record.

The Court finds that Plaintiff Jackson's allegations regarding the December 10, 2018 alleged incident are "so conclusively contradicted by the record that no reasonable jury could believe it." *Chappell v. City of Cleveland*, 585 F.3d 901, 906 (6th Cir. 2009) (*citing Scott v. Harris*, 550 U.S. 372, 380–81 (2007)). Thus, contrary to Plaintiff Jackson's assertion, the Court does not have to accept Plaintiff Jackson's version of events for the purposes of summary judgment.

Despite Plaintiff Jackson's allegations being conclusively contradicted by the record, Defendant Pritchett argues that, even without disputing Plaintiff Jackson's allegations, the alleged use of force does not rise to the level of a clearly established constitutional violation. (ECF No. 66, PageID #4002). The Court concurs. Plaintiff Jackson alleges that on December 10, 2018, Defendant Pritchett grabbed her "by the arms and slammed her stomach side down onto a desk." (ECF No. 20, PageID #307). Then Defendant Pritchett threw Plaintiff Jackson "into a steel pole and then forcefully handcuffed her." (*Id.*). Plaintiff Jackson alleges, "[a]s a direct and proximate results of Defendant Pritchett's use of excessive force, [she] suffered from anxiety and nightmares and she was prescribed Prosasin and Visteral." (*Id.*). When considering the factors identified in *Kingsley*, the Court finds that the alleged force used by Defendant Pritchett was not objectively unreasonable. 576 U.S. at 397. The Court will briefly address those factors.

a. **Need for Use of Force and Amount of Force Used**

In documentation that Plaintiff Jackson submitted after the December 10, 2018 altercation, she wrote that she was attacked by an unknown woman while in the medical unit. (ECF No. 46, PageID #876). She states, "[t]his woman had something in her hands that she was using to cut her

8

own face she could have used it on me as a weapon." (*Id*.). She alleges, "that this woman hit me in the face twice and pulled me back as I was trying to get away." (*Id*.). The other woman involved, Fatima Suleiman, also submitted a written request after the altercation where she describes the incident. (*Id*. at PageID #879). Ms. Suleiman stated that she was restrained by a corrections officer during the incident, which left Plaintiff Jackson "free to keep throwing punch after punch my way. My arms are bruised up, my stomach bruised, my mouth bruised, [right] eye bloodied up, nose broke, and my 2 fingers [right] hand broke swollen purple." (*Id*.). The incident report indicates that Ms. Suleiman was transported to the hospital following the incident due to facial injuries. (ECF No. 54, PageID #2250).

While Plaintiff Jackson may not have been the initial aggressor, the record is clear that she did respond by striking Ms. Suleiman. Thus, Plaintiff Jackson and Ms. Suleiman both needed to be restrained for their protection and the protection of everyone else around them. Thus, the alleged use of force by Defendant Pritchett, a supervising officer called to the scene to respond to the altercation, seems to correspond with the nature of the security concern at issue. Plaintiff Jackson alleges that Defendant Pritchett was the individual who handcuffed her, so if the Court accepts that version of events, she still needed to be detained and restrained because she was continuing her assault on Ms. Suleiman. This factor weighs in favor of the alleged force being a reasonable use of force.

### b. Extent of Plaintiff Jackson's Injury

Plaintiff Jackson has not asserted any physical injuries suffered from the incident. She alleged that she suffers from anxiety and nightmares after the incident. (ECF No. 20, PageID #307). The relevant medical records indicate that Plaintiff Jackson was not physically injured following the incident. (ECF No. 53, PageID #2214–15). As Plaintiff Jackson did not suffer any

9

physical injuries following the alleged use of force, the Court finds that this factor weighs in favor of the alleged force being reasonable.

### c. Effort Made by Defendant Pritchett to Temper or Limit the Use of Force

There is not enough information contained in the record to determine whether Defendant Pritchett made any effort to temper or limit his use of force. This factor does not weigh for or against the force being reasonable.

### d. Severity of the Security Problem

The alleged incident occurred in the bullpen at the medical unit where eleven new inmates were awaiting intake. (ECF No. 54, PageID #2249). Plaintiff Jackson asserts that over thirty people witnessed the altercation. (ECF No. 46, PageID #876). She also asserted that Ms. Suleiman had some type of weapon at the time of the altercation. (*Id.*). The location, number of people, potential weapon, and violence involved all lend to the severity of the security problem. The Court finds this factor weighs in favor of the force being reasonable.

### e. Threat Perceived by Defendant Pritchett

Defendant Pritchett was not on scene when the altercation began. (ECF No. 54, PageID #2252). Thus, he likely would not have been aware upon arrival of whether or not Plaintiff Jackson was the initial aggressor in the altercation. Although not documented, it is reasonable to assume that Defendant Pritchett perceived a threat by both inmates involved when he responded. Thus, this factor weighs in favor of the force being reasonable.

### f. Whether Plaintiff Jackson was Actively Resisting

There is no information in the record that establishes whether Plaintiff Jackson was actively resisting being detained or handcuffed during the altercation. However, the incident report indicates that after Ms. Suleiman initially assaulted Plaintiff Jackson, Plaintiff Jackson grabbed

Ms. Suleiman and hit her in the face, which caused Ms. Suleiman to attempt to get past the officers that responded to the scene to retaliate against Plaintiff. (ECF No. 54, PageID #2249). Plaintiff Jackson's actions undermined the officers' attempts to restrain both women to cease the altercation. Thus, this factor weighs in favor of the force being reasonable.

Considering the facts and circumstances of this incident, the force purposely or knowingly used against Plaintiff Jackson was objectively reasonable. Thus, the allegations do not rise to a constitutional violation, which is the first hurdle for overcoming qualified immunity. Thus, the Court **GRANTS** Defendant Pritchett summary judgment as to count three.

### IV. Cuyahoga County

Defendant Cuyahoga County moved for summary judgment on all counts. (ECF No. 53).

#### a. Count One

Plaintiffs assert that Cuyahoga County violated their Eighth and Fourteenth Amendment rights to be held in humane jail conditions. (ECF No. 20, PageID #301). Plaintiffs allege nine unsanitary, inhumane, and unconstitutional conditions at the CCCC:

> (1) having to sleep in noisy conditions; (2) having to sleep on thin mats approximately two feet wide; (3) having to eat spoiled food; (4) having to eat off moldy trays; (5) having to eat food containing dead and alive bugs; (6) having to drink cloudy water; (7) having to live in an environment with human urine and feces on the floors; (8) having to live in an environment reeking of human urine and feces; and/or (9) having to live in an environment infested with bugs.

(*Id*. at PageID #302).

Defendant Cuyahoga County moves for summary judgment against Plaintiffs as to count one because Plaintiffs failed to produce evidence that any of the nine conditions rose to the level of a constitutional violation. (ECF No. 53, PageID #1364). Plaintiffs did not individually address the nine conditions when responding to Cuyahoga County's motion for summary judgment. (ECF No. 63). Rather, Plaintiffs' opposition focused on raising concerns about an alleged policy of "red

zoning" at CCCC that Plaintiffs argue caused the unconstitutional conditions of confinement. (*Id*. at PageID #2342). Cuyahoga County replied that the new theories concerning overcrowding and red zoning do not appear in the initial or amended complaint and cannot be raised for the first time in response to a motion for summary judgment. (ECF No. 65, PageID # 3843). Cuyahoga County argues that the Court cannot consider these new claims. (*Id*.).

The Court has thoroughly reviewed Plaintiffs' amended complaint and individual count one does not raise issues concerning overcrowding or red zoning. (ECF No. 20, PageID #301–03). "[P]laintiffs cannot raise new claims in their summary judgment briefing and should instead request leave to amend their complaint." *Howard v. Tennessee*, 740 F. App'x 837, 843 (6th Cir. 2018); s*ee also Davis v. Echo Valley Condominium Association*, 945 F.3d 483, 496 (6th Cir. 2019) ("Parties who seek to raise new claims at the summary-judgment stage must first move to amend their pleadings under Federal Rule of Civil Procedure 15(a) before asserting the claims in summary-judgment briefing."). Plaintiffs did not request to amend their complaint. The Court will not consider Plaintiffs' new claims of overcrowding and red zoning when ruling on Cuyahoga County's motion for summary judgment.

Defendant Cuyahoga County contests that Plaintiffs' opposition "virtually abandon[ed] their nine discrete conditions" argument and exclusively focused on the new "red zoning" argument. (ECF No. 65, PageID #3843). Plaintiffs' opposition only contains argument concerning why the "red zoning" policy caused unconstitutional conditions of confinement. (ECF No. 63, PageID #2342–51). Thus, the Court construes Plaintiffs' silence as an indication that they have abandoned their argument concerning the nine conditions.

"When a litigant fails to address a claim in response to a motion for summary judgment, that claim is deemed abandoned or forfeited." *Bennett v. Hurley Medical Center*, 86 F.4th 314,

324 (6th Cir. 2023) (citing *Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 564 n.1 (6th Cir. 2021)). For the Court to address an argument, "a litigant must provide minimal argumentation in favor of it." *Id*. (quoting *United States v. Huntington Nat. Bank*, 574 F.3d 329, 331 (6th Cir. 2009)).

Plaintiffs have abandoned count one by not responding to Defendant Cuyahoga County's motion for summary judgment as to that issue. Thus, the Court **GRANTS** Defendant Cuyahoga County summary judgment as to count one.

### b. Count Two

Count two alleges that Cuyahoga County violated Plaintiffs' right to receive adequate medical care under the Eighth and Fourteenth Amendments. (ECF No. 20, PageID #304). Plaintiff Jackson alleges that at the time she was booked into CCCC, she was in a wheelchair due to surgery after being shot. (*Id*.). She argues that Cuyahoga County was deliberately indifferent to her medical needs because they took away her wheelchair and placed her with the general population. (*Id*.). She also alleges that Defendant did not provide the medication she was prescribed for her wounds. (*Id*.).

At the time Plaintiff Davis was booked at CCCC, she alleges she had been prescribed Xanax for eight years. (*Id*. at PageID #305). Davis alleges the Xanax was to treat anxiety and that she was never given Xanax while detained. (*Id*.). She states she passed out, hit her head on a concrete floor, had a seizure, and bit her tongue in half due to the lack of Xanax. (*Id*.). Davis also alleges that she was prescribed Abilify at the time of her detainment and she was also never provided with this medication. (*Id*.).

Defendant Cuyahoga County moves for summary judgment against Plaintiffs as to count two because Plaintiffs failed to present evidence linking their alleged experiences to any County

13

policy or practice and failed to present evidence that anyone was deliberately indifferent to their medical needs. (ECF No. 53, PageID #1372). Plaintiffs did not address their medical claims in their opposition. (ECF No. 63). Cuyahoga County argues that Plaintiffs' failure to oppose summary judgment as to count two constitutes an abandonment of that claim, so count two should be dismissed. (ECF No. 65, PageID #3841).

As previously stated, "[w]hen a litigant fails to address a claim in response to a motion for summary judgment, that claim is deemed abandoned or forfeited." *Bennett v. Hurley Medical Center*, 86 F.4th 314, 324 (6th Cir. 2023) (citing *Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 564 n.1 (6th Cir. 2021)). For the Court to address an argument, "a litigant must provide minimal argumentation in favor of it." *Id*. (quoting *United States v. Huntington Nat. Bank*, 574 F.3d 329, 331 (6th Cir. 2009)).

The Court has thoroughly reviewed Plaintiffs opposition. (ECF No. 63). While the statement of facts provided by the Plaintiffs contain some medical information, the law and argument section does not address any portion of count two. (*Id*.). Thus, the Court finds that Plaintiffs have abandoned their claims in count two. The Court **GRANTS** Defendant Cuyahoga County summary judgment with respect to count two.

### c. Count Three

Plaintiffs assert that Defendant Pritchett's alleged use of excessive force (discussed above) was pursuant to the policies, practices, and/or customs maintained and implemented by Cuyahoga County. (ECF No. 20, PageID #307). Plaintiffs allege that the use of excessive force at CCCC is so well-settled that it constitutes de facto policy which exists because Cuyahoga County is deliberately indifferent to it. (*Id*. at PageID #308). Plaintiffs additionally allege that this policy is due to a failure to adequately train, supervise, monitor, and discipline CCCC personnel. (*Id*.).

Defendant Cuyahoga County moved for summary judgment as to count three because Plaintiffs failed to produce evidence of a policy or practice that is attributable to Cuyahoga County. (ECF No. 53, PageID #1361). Even if Pritchett's actions were deemed to be unconstitutional, Cuyahoga County is not responsible for any of those actions under a theory of respondeat superior. (*Id*.). Cuyahoga County argues that any deliberate indifference claim fails because Plaintiffs failed to identify other instances of excessive force, specifically excessive force against wheelchair bound inmates. (*Id*. at PageID #1363). Second, Cuyahoga County notes that any failure to train theory fails because there is evidence that Pritchett had undergone significant formal training concerning use of force, inmate supervision, and other related topics. (*Id*.).

Plaintiffs did not address count three in their opposition to Cuyahoga County's motion for summary judgment. (ECF No. 63). Cuyahoga County requested that the Court dismiss count three due to Plaintiffs' abandonment of the claim. (ECF No. 65, PageID #3841). As discussed regarding counts one and two, the Court finds that Plaintiffs have abandoned this claim. The Court **GRANTS** Defendant Cuyahoga County summary judgment as to count three.

## V. Conclusion

Defendants' motions for summary judgment are **GRANTED**. (ECF Nos. 53 and 54).

**IT IS SO ORDERED**.

Dated:  September 30, 2024

	_____
	**HONORABLE CHARLES E. FLEMING**
	**UNITED STATES DISTRICT JUDGE**